**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DANIEL B. O'KEEFE and
CELESTE A. FOSTER O'KEEFE,
and THE DANCEL GROUP, INC.**                                                    **PLAINTIFFS**

**VS.**                                                    **Civil Action No. 1:08cv600 HSO-LRA**

**STATE FARM FIRE AND CASUALTY
COMPANY and MARSHALL J. ELEUTERIUS**                                          **DEFENDANTS**

**PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

COME NOW THE PLAINTIFFS, Daniel B. O'Keefe, Celeste A. Foster O'Keefe, and The Dancel Group, Inc., by and through undersigned counsel of record, and file their *Motion for Leave to Amend*, and, in support thereof, would show the Court has follows:

1. Plaintiffs are seeking leave of this Honorable Court to file the Amended Complaint attached hereto as "Exhibit 1".

2. On or about January 19, 2007, Plaintiffs filed an amended *Complaint* in the Circuit Court of Harrison County by and through their former counsel, Sessums, Dallas & Morrison, PLLC, arising from denial of Plaintiffs' insurance claims as a result of Hurricane Katrina. (See "Exhibit 2"). Since the filing of that Complaint, Plaintiffs original counsel withdrew, and Plaintiffs retained the law firm of Corban, Gunn & Van Cleave, PLLC, as new counsel to represent their legal interests in regards to the above referenced cause.

3. After new counsel entered their appearance on behalf of the Plaintiffs, Plaintiffs sought leave of the Circuit Court of Harrison County, Mississippi to file an amended Complaint substantially similar to that they are currently seeking to file with this Honorable Court. (See Motion for Leave to Amend (and supplement thereto) filed in State Court, attached as "Cumulative Exhibit 3"). Therein, new counsel for the Plaintiffs sought to more clearly define

the claims alleged against existing defendants State Farm Fire and Marshall Eleuterius, and to join State Farm Mutual Automobile Insurance Company as an additional Defendant in this cause.

4. State Farm Fire removed this cause to this Honorable Court on September 11, 2008, approximately two months after Plaintiffs filed their Motion for Leave to File Amended Complaint, and prior to the time the Circuit Court ruled on that motion. Plaintiffs filed a Motion to Remand, resulting in a stay of proceedings. Plaintiffs' Motion to Remand was denied by this Court on January 13, 2009.

5. The Honorable Magistrate Judge entered a Case Management Order in this case on March 4, 2009, which [57] Order set the deadline for filing motions for joinder of parties or to amend pleadings as April 15, 2009. This Motion for Leave to Amend is being timely filed, within the time frame Ordered by this Honorable Court.

6. The Complaint under which Plaintiffs are currently traveling states, in part,

> [A]t present, Mr. and Mrs. O'Keefe and/or Dancel do not know the full extent of State Farm's handling of their claims. Mr. and Mrs. O'Keefe and/or Dancel assert that State Farm engaged in a scheme to wrongfully deny or limit coverage and payment under policies of insurance. State Farm failed to adequately investigate Plaintiffs' claims prior to denying same. State Farm actions amount to fraud, fraudulent misrepresentation, and/or bad faith conduct toward an insured.

(See ¶22 of "Exhibit 2".) Plaintiffs contend justice will be served by allowing them to amend their prior Complaint to more fully define their claims against the Defendants, and to add an additional party (which Plaintiffs first sought to add through a Motion filed in State Court on July 1, 2008), State Farm Mutual, whose conduct subjects it to liability to the Plaintiffs, and whose presence Plaintiffs contend is necessary to a full and complete adjudication of all the parties' rights and responsibilities.

7. The Plaintiffs seek to join State Farm Mutual Automobile Insurance Company as an additional party Defendant based on new counsel for the Plaintiffs knowledge and belief in

2

discovering evidence and eliciting sworn testimony in other Hurricane Katrina related litigation involving State Farm, that State Farm Mutual Automobile Insurance Company was directly involved in the conduct addressed in Plaintiffs' currently filed Complaint; which involvement is more specifically described in the proposed amended Complaint attached hereto as "Exhibit 1". Plaintiffs also seek to add State Farm Mutual Automobile Insurance Company based upon Counsel for Plaintiffs' review of a certain contract by and between State Farm Fire and State Farm Mutual whereby State Farm Mutual assumed multiple duties related to the sale, administration and claims handling under the policies of insurance that are the subject of this litigation, which contract, paired with the other facts discovered through similar litigation by Counsel for Plaintiffs, demonstrates State Farm Mutual is the co-principal with State Farm Fire with regard to duties owed to the Plaintiffs under the subject policy of insurance. (See Master Services and Facilities Agreement, attached as "Exhibit 4"). Facts discovered by Counsel for Plaintiffs related to State Farm Mutual's involvement in Katrina claims in Mississippi, including the Plaintiffs', include but are not limited: (1) State Farm Mutual Automobile Insurance Company, parent company of Defendant State Farm Fire and Casualty Company, through its agents, representatives, and/or employees was responsible for drafting and implementing the policies and procedures, including but not limited to, the contract altering claims instructions set forth in the Wind / Water Protocol, written by State Farm Mutual and adopted by State Farm Fire Casualty Company post-Hurricane Katrina to deny the Plaintiffs' claims and the claims of other similarly situated State Farm insureds; (2) Many of the individuals who made or participated in the ultimate denial of Plaintiffs' claims were agents, representatives, and/or employees of State Farm Mutual Automobile Insurance Company; and (3) State Farm Mutual Automobile Insurance

Company has been in charge of post-litigation decisions involving this case, and similarly situated cases.

## Standard

8. As the Fifth Circuit has stated repeatedly, the policy of the Federal Rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. The Rule "evinces a bias in favor of granting leave." *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) [reversing denial of leave to file second amended complaint]. There must exist 'substantial reason' to deny leave to amend, and none of the factors cited by the Fifth Circuit Court of Appeals as acceptable justification for denying leave to amend are present in this case. *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).

9. Although the proposed, amended Complaint does clarify existing theories against State Farm Fire and Eleuterius, add some additional causes of action, and add timely causes of action against State Farm Mutual, there can be no prejudice to State Farm Fire or Elueterius (the existing Defendants) from allowing the amendment in this case. New Counsel for the Plaintiffs have filed the Motion within the time frame specifically approved (without objection from the Defendants) by the Court; after Defendants removed this case to this Court while a motion for leave to file a substantially similar amended complaint was pending in State Court. No depositions have been taken in this cause, and discovery is in its early stages.

### The Proposed Amended Complaint Contains
### Specific , Viable Allegations Against State Farm Fire and State Farm Mutual

10. This case is not simply a claim for contract damages on policies of Homeowners Insurance and Business Insurance, and "bad faith" denial thereof. The Plaintiffs sue not only for contract damages, but for actual and punitive damages for alleged intentional fraud, conspiracy and tortious conduct by both State Farm Fire and State Farm Mutual in adding *after Katrina* a

4

new requirement of proof of "discernable wind damage," not required by the terms of the policy of insurance, for the purpose of wrongfully denying Hurricane Katrina claims, including the Plaintiffs'; and forcing insureds with significant damage claims, including the Plaintiffs, into protracted and expensive litigation. The Plaintiffs sue also for State Farm Fire's, and State Farm Mutual's manipulation and misuse of federal guidelines for responding to Hurricane Katrina NFIP claims, that was intended to result and did result in wrongful denial of the Plaintiffs' claims, a wrongful shifting of liability to the federal government and/or the Plaintiffs; and a wrongful attempt to shift of the burden of proof on coverage issues (after Plaintiffs proved direct accidental physical loss caused by Hurricane Katrina, a windstorm) to the Plaintiffs. The requested amendment is necessary to bring before the Court a party, State Farm Mutual, alleged to be a <u>direct wrongdoer</u>.

11. Both State Farm Fire and State Farm Mutual adjusters and claims personnel admit in depositions in other cases that:

a. State Farm Fire utilized the "wind water protocol" to govern its handling of <u>all</u> Hurricane Katrina claims in Mississippi (See Excerpt from <u>30(b)(6) Deposition of State Farm Fire</u> in *Guice vs. State Farm, et al.*, Civil Action No. 1:06-cv-1-LTS-RHW, pp. 105-106; 121, 142-143, 153-154, and. 226-227, respectively, attached as "Cumulative Exhibit 5");

b. The subject "wind water protocol" included a new requirement of proof of discernable, independent wind damage "to separate portions of the property" that is <u>not contained in the State Farm Fire Homeowners Policy</u>, and which conflicts with the burden of proof under the State Farm "accidental direct physical loss" policy (See Excerpt from Deposition of <u>State Farm Mutual Employee</u> Stephan Hinkle in *Guice* pp. 6, 55, and 116-122, attached as "Cumulative Exhibit 6");

5

 c. There were at least twelve (12) individuals (other than Mr. Hinkle) involved in the editing of the Wind Water Protocol that resulted in the addition of the extra-contractual requirement of demonstrating discernible wind damage to "separate portions of property" (See Excerpt of from State Farm Fire's response to Interrogatories in *Guice*, pp. 3-4, attached as "Exhibit 7");

 d. At least eight (8) of the individuals involved in the editing of the Wind Water Protocol to have it include extra-contractual requirements expected to be utilized in the handling of <u>all</u> State Farm Fire Hurricane Katrina claims in Mississippi were employees of State Farm Mutual (See State Farm Fire's Response to Supplemental Interrogatory in *Guice*, attached as "Exhibit 8").

12. Issues in this case include whether State Farm Mutual modified the burden of proof for determining coverage under Hurricane Katrina slab cases under State Farm Fire's "accidental direct physical loss" policy and required and/or assisted State Farm Fire to implement same; and whether these modifications were made for the purpose of denying legitimate claims, including the Plaintiffs'. Plaintiffs' proposed amended Complaint ("Exhibit 1") does not refer to State Farm Fire and State Farm Mutual "collectively". Rather the proposed amended Complaint makes <u>direct allegations of actionable misconduct by State Farm Mutual</u>, including <u>but not limited to</u> allegations that State Farm Mutual:

 a.  "directly participated in torts against the Plaintiffs, and/or committed individual torts for which recovery may be had against it, individually, under controlling Mississippi law." (See ¶ 4 of "Exhibit 1");

 b.  "State Farm Mutual assumed the position as a co-principal with State Farm Fire for the purpose of marketing, selling and adjusting claims under State Farm Fire insurance

6

policies, including but not limited to the subject homeowner's and business policies" (See ¶ 10 of "Exhibit 1");

    c.    "State Farm Mutual assumed virtually all duties related to the subject policies, including but not limited to responsibility to provide underwriting advice and services, policy issuing and billing services, actuarial services, internal auditing and record retention services, collection of premiums, provision of policies and other printed supplies used in the conduct of the specific insurance business, office space and accommodations, qualified personnel to perform the services and their salaries and expenses, marketing services, and legal services." (See ¶ 11 of "Exhibit 1") (see also "Exhibit 4");

    d.    "Pursuant to the terms of the Agreement, State Farm Fire is prohibited from making any claim against State Farm Mutual for alleged errors in judgment or acts or omissions of State Farm Mutual, and from objecting to any expenditure by State Farm Mutual (which State Farm Fire must also reimburse under the Agreement), so long as State Farm Mutual's conduct and expenditures were "made in good faith." Upon information and belief, the ultimate control and authority on how to adjust the subject Hurricane Katrina claims lay with State Farm Mutual, not State Farm Fire." (See ¶ 12 of "Exhibit 1") (see also "Exhibit 4");

    e.    ". . . State Farm Fire did not have or exercise insurmountable control over State Farm Mutual's operations and obligations under the contract. Rather, State Farm Mutual enjoyed considerable autonomy in devising the means to adjust, and overseeing the actual adjustment of Plaintiffs' Hurricane Katrina claims. Under controlling Mississippi law, State Farm Mutual acted in the capacity of co-principal with State Farm Fire with regard to the

subject policies of insurance and the adjustment of claims thereunder, and thus may be held individually liable to the Plaintiffs for simple negligence." (See ¶ 13 of "Exhibit 1");

  f. ". . . State Farm Mutual, individually and/or as co-principal, intentionally and deliberately set forth on a course of action, concealed from the Plaintiffs and other homeowners, designed to reduce the companies' exposure for losses by abandoning State Farm Fire's, and State Farm Mutual's as co-principal, duty to fully investigate individual Katrina significant damage claims, and to shift the financial burden of responding to the Hurricane to the Federal Government." (see ¶ 40 of "Exhibit 1");

  g. "State Farm Mutual, individually and/or as co-principal drafted; and State Farm Fire, pursuant to State Farm Mutual's instructions, adopted; new claims handling procedures <u>after</u> the hurricane to be "used for determination of coverage" in Mississippi Katrina claims where insured property was contacted by hurricane driven storm surge. State Farm Mutual and State Farm Fire were both directly involved in the course of conduct that led to the denial of the Plaintiffs' claims" (see ¶ 47 of "Exhibit 1");

  h. "During the time when Plaintiffs were being advised by State Farm Fire's, and State Farm Mutual's as co-principal, agents and/or representatives that damage to their home included losses caused by covered perils, and that further investigation would be required, State Farm Mutual, individually and/or as co-principal, had already written procedures which required the denial of Plaintiffs' claim." (See ¶ 52 of "Exhibit 1");

  i. "State Farm Mutual knew that decisions made by it as a result of consulting and claims services performed on Hurricane Katrina claims would impact the rights of Plaintiffs and other State Farm policyholders. State Farm Mutual participated in the claims conduct of State Farm Fire and knew that said conduct constituted a breach of the duties owed to

Plaintiffs. State Farm Mutual wrote the wind water protocol that included an extra-contractual requirement of discernible wind damage for coverage, and gave substantial assistance and encouragement to State Farm Fire in the claims processes that led to the denial of Plaintiffs' claims, including but not limited to the promulgation of the wind/water protocol." (see ¶ 98 of "Exhibit 1");

j. "State Farm Mutual's actions caused and contributed to the damages to Plaintiffs, as set forth throughout this Complaint." (See ¶ 100 of "Exhibit 1").

13. Other issues in this case include whether in fact State Farm Mutual was acting as the "co-principal" of State Farm Fire, such that State Farm Mutual may be found liable to the Plaintiffs for simple negligence in addition to gross negligence. Plaintiffs contend that the facts set forth above, and the Master Services Agreement by and between State Farm Fire and State Farm Mutual demonstrate that State Farm Fire did NOT exercise sufficient control over State Farm Mutual, with regard to State Farm Mutual's assumed duties of administrating and handling claims under the subject policy of insurance, to give rise to an agency relationship. Under controlling Mississippi law,

> 'The determination of whether an agency relationship exists is a question of fact for the jury,' and not a question of law.

*Fonte vs. Audubon Ins. Co.*, 2009 WL 468584, ¶ 10 (Miss. 2009) (quotations omitted). If its determined that State Farm Mutual is acting in an agency relationship, it may be held liable only if its conduct constitutes "gross negligence" (which is clearly alleged by Plaintiffs in the proposed amended Complaint). *Id.*, at ¶ 11. However, if State Farm Mutual is found to have been acting as the co-principal of State Farm Fire, which is a question of fact for the Jury in this cause, it may be held liable to the Plaintiffs for conduct amounting to only simple negligence:

> [the Mississippi Supreme Court] . . . plainly stated that an insurance adjuster, agent, or other similar entity may be held independently liable for its work on a claim only "if its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the rights of the insured." (citations omitted) Thus, if a jury determines that [an entity charged with administering and adjusting claims sold by an insurance company] was a co-principal with [the insurance company] rather than an agent of [the insurance company], [the entity charged with administering and adjusting claims sold by the insurance company] can be liable for both negligence and gross negligence [with regard to its involvement in handling said insurance company's claims].

*Fonte*, at ¶ 11.

14. The proposed amended Complaint identifies State Farm Mutual as an active participant, and the moving force in the top-down, post-catastrophe fraudulent claims handling scheme alleged by Plaintiffs, as set forth above. Plaintiffs understand this Court already denied efforts to certify a class to address these type allegations on a class basis in *Guice*, and <u>are not asking the Court to re-visit that issue here</u>. The Plaintiffs' proposed claims of institutional, intentional misconduct and fraud are not dependant on class relief; nor is class relief the only vehicle under which such claims can be made. Indeed, the United States Supreme Court recently confirmed the right of an **<u>individual plaintiff</u>** pursuing punitive damages **to demonstrate institutional fraud** to demonstrate the degree of reprehensibility of the Defendant. *Philip Morris USA vs. Williams*, 127 S.Ct. 1057, 166 L.Ed.2d 940, 75 USLW 4101 (2007); 127 S.Ct. 1062-1064.

15. As this Court stated in *McFarland v. State Farm Fire and Casualty Company*, Civil Action No. 1:06cv932-LTS-RHW, "This Court has no intention to limit Plaintiffs' claims or remedies, so long as they are asserted in a procedurally correct manner (*see, e.g.*, Fed. R. Civ. P. 9(b)) and can be supported by admissible evidence." Restricting Plaintiffs from pursuing critical claims against the existing Defendants, and State Farm Mutual in this litigation will effectively restrict Plaintiffs from fully developing their claims of bad faith – and simultaneously shield State Farm Mutual from full accountability and liability for its conduct. The Supreme Court

acknowledges a litigant's right to have equal and full access to the Court, and has noted that this right is grounded in the Article IV *Privileges and Immunities Clause*; the First Amendment Petition Clause; the Fifth Amendment Due Process Clause; and the Fourteenth Amendment Equal Protection provisions of the *United States Constitution*. *Christopher vs. Harbury*, 122 S.Ct. 2179, 536 U.S. 403, 153 L.Ed.2d 413 (2002), 122 S.Ct. at 2187, n. 12.

16. Plaintiffs' proposed amended Complaint alleges an "injury in fact" that is directly "traceable to the challenged action of the [new] defendant" –denial of full coverage under their homeowner's claim pursuant to State Farm Mutual's promulgation of the Wind Water Protocol and requiring and assisting State Farm Fire to use same, and pursuant to both State Farm Defendants' manipulation and mis-use of amended guidelines for resolving NFIP Katrina claims, in violation of and in interference with the contractual rights of the Plaintiffs.

17. Plaintiffs clearly have standing to sue State Farm Mutual. Plaintiffs' claims that State Farm Mutual directly and knowingly participated in the wrongful denial of Plaintiffs' State Farm Fire insurance claims, and claims that State Farm Mutual acted as the "co-principal" of State Farm Fire, give rise to actionable claims under Mississippi law.

18. State Farm Mutual has routinely argued in other cases that any actions its employees undertook with regard to Hurricane Katrina claims services for State Farm Fire were provided pursuant to its Master Service Agreement ("Exhibit 4"), which is a contract, by and between State Farm Fire and State Farm Mutual. In other words, State Farm Mutual would assert it was merely acting as a claims "contractor" for State Farm Fire, and thus can't be held liable for State Farm Fire's misconduct. Under controlling Mississippi law, it is clear that an insurance "adjuster, agent or other similar entity" can incur individual liability when its "conduct constitutes gross negligence, malice or reckless disregard for the rights of the insured."

*Gallagher Basset Services, Inc. vs. Jeffcoat*, 887 So.2d 777, ¶ 25 (Miss. 2004). Moreover, as set forth above, and entity acting as the insurer's "co-principal" may be found liable to the insured for simple negligence. The claims in Plaintiffs' proposed Second Amended Complaint allege such conduct by State Farm Mutual.

19. There is no question but that Plaintiffs' proposed Second Amended Complaint also includes a claim for civil conspiracy against State Farm Mutual. In *Blades vs. Countrywide Home Loans, Inc.*, 2007 WL 2746678 (S.D. Miss. 2007) the Honorable Louis Guirola, Jr. concluded that a claim for civil conspiracy **can** be made against a parent and subsidiary corporation under Mississippi law:

> Defendants argue that Plaintiff's civil conspiracy claims should be dismissed pursuant to *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). In *Copperweld,* the Court held:
>
> [T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If a parent and a wholly owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for § 1 scrutiny.
>
> *Copperweld,* 467 U.S. at 771. The Court reasoned that "[a]ntitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary." *Id. at 772.* The Court further explained that the Sherman Act "contains a basic distinction between concerted and independent action," in that concerted activity is judged more sternly than unilateral activity.[FN1] *Id. at 767-68.* As a result of this reasoning, the Court held that the officers of a single firm are not separate economic actors and therefore are legally incapable of conspiring with each other pursuant to Section 1 of the Sherman Act. *Id. at 769.* The Court also held that a wholly owned subsidiary and its parent company are not considered separate actors who can conspire with each other pursuant to Section 1 of the Sherman Act. *Id. at 771.* The doctrine set forth in *Copperweld* is commonly referred to as the intra-corporate conspiracy doctrine. The Fifth Circuit has arguably extended the ruling set forth in

*Copperweld,* holding that wholly owned subsidiaries of the same parent corporation cannot conspire with each other in violation of the Sherman Act. *Hood v. Tenneco Tex. Life Ins. Co.,* 739 F.2d 1012, 1015 (5th Cir.1984).

> FN1. Concerted activity is judged under Section 1 of the Sherman Act, while unilateral activity is judged pursuant to Section 2 of the Act. *Copperweld,* 467 U.S. at 767-68. "In part because it is sometimes difficult to distinguish robust competition from conduct with long-run anti-competitive effects, Congress authorized Sherman Act scrutiny of single firms only when they pose a danger of monopolization." *Id.* at 768.

The parties do not dispute that Mississippi law applies in this lawsuit. "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.' " *Gallagher Bassett Servs., Inc. v. Jeffcoat,* 887 So.2d 777, 786 (Miss.2004) (quoting *Levens v. Campbell,* 733 So.2d 753, 761 (Miss.1999)). **The Mississippi Supreme Court has never discussed or applied the intra-corporate conspiracy doctrine**. Plaintiffs point to one case, *MIC Life Insurance Co. v. Hicks,* in which the Mississippi Supreme Court reversed a directed verdict against a parent company on a plaintiff's conspiracy claim, holding that while there was evidence of a conspiracy between a parent company and subsidiary, the evidence was not sufficient to warrant taking the issue out of the province of the jury. *MIC Life Ins. Co. v. Hicks,* 825 So.2d 616, 621 (¶ 11) (Miss.2002). The intra-corporate conspiracy doctrine was apparently never asserted in the *Hicks* lawsuit, since the Supreme Court did not address the doctrine in its opinion. *See id.* Defendants assert that the United States District Court for the Southern District of Mississippi, while applying Mississippi law, has applied the intra-corporate conspiracy doctrine to civil conspiracy claims. *See Frye v. Am. Gen. Fin., Inc.,* 307 F.Supp.2d 836, 843-44 (S.D.Miss.2004). In *Frye,* the Court held: "Under the intra-corporate conspiracy doctrine, '[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of agents are the acts of the corporation.' " *Frye,* 307 F.Supp.2d at 843. Similarly, in *Cooper v. Drexel Chemical Co.,* the Court held that "[w]hen individual defendants are not shown to have acted outside of their employment capacities, they are incapable of conspiring with their corporate employer." *Cooper v. Drexel Chem. Co.,* 949 F.Supp. 1275, 1285 (N.D.Miss.1996). **The Courts in *Frye* and *Cooper* did not address whether wholly owned subsidiaries can conspire with parent companies under Mississippi law**, and only held that a group of employees could not conspire with their employer. *See id.; see also Frye,* 307 F.Supp.2d at 843. Therefore, the issue of whether two wholly owned subsidiaries are legally capable of conspiring with each other under Mississippi law has never been directly addressed.

***3** Courts in other jurisdictions disagree regarding whether the intra-corporate conspiracy doctrine should be extended beyond the scope of the Sherman Act. *See, e.g., Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994) (applying the intra-corporate conspiracy doctrine to a civil rights claim against a school board); *Seeco, Inc. v. Hales,* 22 S.W.3d 157, 173 (Ark.2000) (refusing to apply the doctrine to civil conspiracy

13

claims against wholly owned subsidiaries of the same parent company); *Shared Commc'n Serv. v. Bell Atl. Prop.,* 692 A.2d 570,574 (Pa.Super.Ct.1997) (holding that the closer the relationship between corporate parent and subsidiaries, the more likely it is that they cannot be capable of conspiracy to tortiously interfere with contractual relations); *Golden v. Daiwa Corp.,* No. 3:96CV0776L, 2000 WL 251736 at *3 (N.D.Tex. Mar. 6, 2000) (noting that the Texas courts are divided on the issue of whether a parent company can conspire with its subsidiary); *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1281 (7th Cir.1989) (holding that the intra-corporate conspiracy doctrine does not apply to RICO claims); *Stathos v. Bowden,* 728 F.2d 15, 20-21 (1st Cir.1984) (refusing to apply the intracorporate conspiracy doctrine in a gender discrimination case); *Fogie v. THORN Am., Inc.,* 190 F.3d 889, 899 (8th Cir.1999) (holding that the intra-corporate conspiracy doctrine applies to RICO claims); *O .H. v. Oakland Unified Sch. Dist.,* No. C-99-5123 JCS, 2000 WL 33376299 at *8 (N.D.Cal.2000) (refusing to apply the intra-corporate conspiracy doctrine to a sexual harassment claim). Nevertheless, it is not necessary for the Court to determine whether the intracorporate conspiracy doctrine should be applied to all civil conspiracy claims under Mississippi law, due to the facts asserted in this lawsuit.

Plaintiff asserts that CHL purchased an insurance policy from Balboa on her destroyed home and required her to pay for the policy. **The separate, corporate status of these subsidiaries enabled this transaction between the defendants, and it was this transaction that allegedly harmed the Plaintiff. If CHL was capable of purchasing an insurance policy from Balboa, it was capable of entering a civil conspiracy with Balboa.** *See Hales,* **22 S.W.3d at 173 ("It seems logical to us that if the corporate subsidiaries were separate enough to contract with each other, as appellants maintain, they were sufficiently separate to engage in a civil conspiracy.")** Furthermore, the separate nature of these subsidiaries prevents the Court from holding that CFC, the parent company, should be considered the same entity as both subsidiaries. Specifically, if CFC, CHL, and Balboa were considered the same entity under Mississippi law, CHL could not purchase insurance from Balboa or enter into a contract with Balboa. There would be no need for such insurance, as CHL would be protecting its interest in Plaintiffs' property by purchasing insurance from itself. Therefore, under these specific facts, Balboa, CFC, and CHL were separate entities, capable of engaging in a civil conspiracy. Therefore, Defendants' Motions to Dismiss Plaintiff's civil conspiracy claims are denied. [FN2]

> FN2. Since the Court has found that Plaintiff has stated a claim of civil **conspiracy**, it is not necessary to address CFC's argument that Plaintiff's conversion, fraud, and unjust enrichment claims should be dismissed because a **parent** company cannot be held liable for the acts of its **subsidiary**. Specifically, co-conspirators are held liable for the acts of other co-conspirators under Mississippi law. *See S. Bus Lines, Inc. v. Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees,* 38 So.2d 765, 769 (Miss.1949) ("where two or more persons conspire together the conspiracy makes the wrongful acts of each the joint acts of all of them.").

At ** 2-3 (emphasis added). In the case at hand, the "Master Service Agreement" the State Farm entities routinely argue governed State Farm Mutual's involvement in Katrina claims handling proves that the State Farm Defendants are separate enough entities to be able to contract with one another. Similarly, as recognized by this Court, they are "sufficiently separate to have engaged in a civil conspiracy." *Blades*, at *2.

20. The claims alleged in Plaintiffs' proposed Second Amended Complaint are not based on "speculation and conjecture". Rather, Plaintiffs' claims against State Farm Mutual (that State Farm Mutual created and implemented ["promulgated"] the extra-contractual wind water protocol, and required and assisted State Farm Fire to implement it do deny Plaintiffs' claims, with knowledge that such conduct would be contrary to the terms of the subject contract of insurance and the rights of the Plaintiffs), are based on the un-refuted testimony of a State Farm Fire 30(b)(6) representative and a State Farm Mutual "Claims Consultant", as well as the sworn interrogatory responses of State Farm Fire, as noted above. Plaintiffs' claims that State Farm Mutual acted as State Farm Fire's "co-principal" are likewise supported by facts, including the plain language of the Master Services Agreement (which agreement gave State Farm Mutual similar authority to that found by the Mississippi Supreme Court to create a jury question on the issue of whether Audubon was a "co-principal" with the MWUA in *Fonte*).

21. Plaintiffs' proposed amended Complaint sets forth actionable claims under what this Court has recognized to be, or likely be, Mississippi law. The Plaintiffs' claims of post-Katrina, top-down fraudulent, intentional and tortious claim handling practice and post-litigation bad faith alleged in the proposed amended Complaint are clearly alleged with specificity as required by Fed.R.Civ. P. 9(b). The claims at issue in Plaintiffs' proposed Amended Complaint are distinguishable from the claims plaintiffs sought to assert in cases where this Court denied

motions to add State Farm Mutual as a party defendant in Katrina litigation. In those cases, unlike the case at bar, this Court noted that the proposed claims against State Farm Mutual were made only "collectively" with claims against State Farm, and that there were no factual allegations regarding alleged misconduct of State Farm Mutual. (*Abney vs. State Farm, et al.*, Civil Action No. 1:07-cv-0711-LTS-JMR ["Plaintiffs have framed the allegations of their Complaint to treat State Farm and Mutual collectively . . . and the complaint does not allege any specific misconduct unique to Mutual"]; *Perkins vs. State Farm, et al.*, 2007 WL 43765208, *2 (S.D. Miss. 2007) [". . . there are no specific allegations of actionable misconduct by . . . State Farm Mutual" and "The Court will not allow Plaintiffs to allege misconduct by two defendants not in privity with them by the mere expedient of treating them collectively in framing their pleadings . . . .", and *Bridewater vs. State Farm, et al.*, Civil Action No. 1:07-cv-1278-HSO-RHW [". . . the Complaint contains no specific factual allegations of actionable misconduct by State Farm Mutual . . ." and "Plaintiff cannot support alleged misconduct by a defendant not in privity with him by naming both State Farm Defendants collectively in his pleadings."])

22. Importantly, this Court made each of its ruling in the cases noted above "without prejudice", and specifically held Plaintiffs would be permitted to seek leave to file an amended pleading that set forth valid causes of action against State Farm Mutual. For example, in *Bridgewater* Judge Senter held:

> This dismissal [of State Farm Mutual] will be without prejudice to the right of Plaintiff to seek the Court's leave to file an amended complaint stating a valid cause of action against State Farm Mutual, if there are facts in this case later shown with particularity to support a claim against it. It will not be acceptable for Plaintiff to treat "State Farm" collectively in any future pleadings, and with respect to the dismissed State Farm Defendant, in any future Complaint in this case, Plaintiff will require to make allegations against State Farm Mutual with reasonable specificity.

(See pg. 6 of opinion in *Bridgewater*). Counsel for Plaintiffs in the case at bar followed Judge Senter's recommendations in drafting the proposed amended Complaint that is the subject of the pending Motion. As set forth above, the proposed amended Complaint the Plaintiffs are seeking to file herein <u>contains multiple, specific factual allegations against State Farm Mutual, including allegations (supported by sworn testimony from other cases) that State Farm Mutual directly participated in the adjustment of Plaintiffs' claims by drafting, and requiring State Farm Fire to implement "extra-contractual" claims procedures for the purpose of denying claims, including the Plaintiffs'</u>.

23. When addressing claims similar to those set forth in Plaintiffs' proposed Amended Complaint herein, this Court has **Granted** motions for leave to amend complaints to add State Farm Mutual as a party Defendant. In *Guice vs. State Farm, et al.*, Civil Action No. 1:06-cv-1-LTS-RHW, this Court entered its Order GRANTING a similar motion to amend and add State Farm Mutual as a party through assertion of claims similar to those in Plaintiffs' proposed Amended Complaint – even though the motion in that case was filed *after* the expiration of the deadline for filing amended pleadings set forth in the Court's Scheduling Order. Therein, considering a proposed Complaint containing very similar allegations to the Complaint in the case at bar, this Court concluded "the Court reserves judgment on whether State Farm Auto would be liable under Plaintiffs' theory of the case, as that issue is best explored in a Motion to Dismiss or for Summary Judgment." (See Court's [193] *Order Granting Leave to File Second Amended Complaint* in *Guice,* attached as "Exhibit 9"). This Court likewise granted Plaintiffs' Motion for Leave to file an amended complaint to add State Farm Mutual, and to assert claims substantially similar to those Plaintiffs are currently seeking to assert, in *Marion vs. State Farm,* Civil Action No. 1:06-cv-969-LTS-RHW. (See TEXT ONLY ORDER Granting Motion to

Amend, attached as "Exhibit 10").[1]   Indeed, this Court expressly acknowledged that the Marion's case "involve[d] more than a simple breach of contract between policyholders and their insurance company.  Plaintiffs also allege institutional fraud and a top-down corporate conspiracy to deny payment of insurance proceeds to policyholders." (See Magistrate Judge's [116] Order in *Marion,* attached as "Exhibit 11"). Similar allegations are made in the attached, proposed Amended Complaint; and under the liberal requirements of F.R.C.P. 15(a), Plaintiffs' Motion for Leave to Amend should be granted.

24. Plaintiffs ask that they be excused from the necessity of filing a separate Memorandum of Authorities, in light of the concise nature of this Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the Court enter an Order Granting Plaintiffs' leave to file their Amended Complaint, attached hereto as "Exhibit 1", and granting any and all additional relief in favor of the Plaintiffs deemed appropriate by this Honorable Court.

Respectfully submitted, this the 15th day of April, 2009.

                              **DANIEL B. O'KEEFE, CELESTE A. FOSTER O'KEEFE, AND THE DANCEL GROUP, INC., PLAINTIFFS**

                              By: */s/ Christopher C. Van Cleave*
                                  CHRISTOPHER C. VAN CLEAVE (MSB #10796)

CLYDE H. GUNN, III (MSB #5074)
CHRISTOPHER C. VAN CLEAVE (MSB #10796)
W. CORBAN GUNN (MSB #101752)
DAVID N. HARRIS, JR. (MSB #100790)
CORBAN, GUNN & VAN CLEAVE, P.L.L.C.
P.O. Drawer 1916

---

[1] Although the TEXT ONLY ORDER does not specifically acknowledge the requested amendment was to add State Farm Mutual as a party, the Motions filed on behalf of Plaintiffs' confirm that was the case. (See [9] Motion for Leave to File Second Amended Complaint and [13] Supplemental Motion for Leave to File Amended Complaint, without exhibits, attached as "Cumulative Exhibit 10").

Biloxi, MS 39533-1916
Telephone: (228) 432-7826
Facsimile: (228) 456-0998
Email: christopher@cgvclaw.com

**CERTIFICATE OF SERVICE**

I, undersigned counsel of record, hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the EFC system which sent notification of such filing to the following:

B. Wayne Williams, Esq.
Dan W. Webb, Esq.
Roechelle R. Morgan
Paige C. Bush, Esq.
Webb, Sanders, & Williams, PLLC
363 North Broadway
Post Office Box 496
Tupelo, Mississippi 38802
(662) 844-2137 (off)
wwilliams@webbsanders.com
RRM@webbsanders.com

**Attorneys for State Farm Fire & Casualty Company
And Marshall J. Eleuterius**

Respectfully submitted, this the 15th day of April, 2009.

                                    DANIEL B. O'KEEFE, CELESTE A. FOSTER
                                    O'KEEFE, AND THE DANCEL GROUP, INC.,
                                    PLAINTIFFS

                        By:*/s/ Christopher C. Van Cleave*
                            CHRISTOPHER C. VAN CLEAVE (MSB #10796)