**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DANIEL B. O'KEEFE and**
**CELESTE A. FOSTER O'KEEFE,**
**Individually and d/b/a THE DANCEL GROUP, INC.;**
**and THE DANCEL GROUP, INC.**                                    **PLAINTIFFS**

**VS.**                                          **Civil Action No. 1:08cv600 HSO-LRA**

**STATE FARM FIRE AND CASUALTY**
**COMPANY and MARSHALL J. ELEUTERIUS**                          **DEFENDANTS**

<u>**AMENDED COMPLAINT**</u>
**(JURY TRIAL REQUESTED)**

COME NOW the Plaintiffs, Daniel. B. O'Keefe, Celeste A. Foster O'Keefe, and The

Dancel Group, Inc. ("Mr. and Mrs. O'Keefe" and/or "Dancel") and file this, their Amended

Complaint against the Defendants, as follows:

<u>**PARTIES**</u>

1.  Mr. and Mrs. O'Keefe are adult resident citizens of Jackson County, Mississippi.

2.  The Dancel Group, Inc., formerly known as Dancel Visual Communications, Inc., is a

Mississippi Corporation, solely owned by Danny and Celeste O'Keefe, with its principal place of

business located in Harrison County, Mississippi at 10265 Rodriguez Street, D'Iberville,

Mississippi 39540.

3.  The Defendant, State Farm Fire and Casualty Company, (hereinafter referred to as "State

Farm Fire"), is a foreign insurance company doing business within the State of Mississippi, with

its corporate headquarters located at 1 State Farm Place, Bloomington, Illinois 61710.  State

Farm Fire may be served with process by service on its agent for service of process, Mr. William

E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi 39232-7644; or on the

Mississippi Insurance Commissioner.

**EXHIBIT 1**

4.   Defendant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm Mutual"), is a foreign insurance company doing business within the State of Mississippi, with its corporate headquarters located at 1 State Farm Place, Bloomington, Illinois 61710.  State Farm Mutual may be served with process by service on its agent for service of process, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi 39232-7644; or on the Mississippi Insurance Commissioner.  State Farm Mutual served as a co-principal with State Farm Fire with regard to the sale of the subject policy of insurance, and the adjusting of claims thereunder.  State Farm Mutual directly participated in  torts against the Plaintiffs, and/or committed individual torts for which recovery may be had against it, individually, under controlling Mississippi law.

5.   Defendant, Mr. Marshall J. Eleuterius is an agent for State Farm.  Mr. Eleuterius, individually, and as an employee/agent of State Farm Insurance can be served with process at 414 Security Square, Gulfport, Mississippi 39507-1952.  Mr. Eleuterius directly participated in torts against the Plaintiffs, and/or committed individual torts for which recovery may be had against him, individually, under Mississippi law.

6.   Defendants, John and Jane Does A, B, C, D, E, F, G, and H are individuals, corporations or other entities who caused or contributed to the injuries and damages of the Plaintiffs, but whose true identity and/or liability have not been ascertained at this time. These Defendants may include representatives or employees of the State Farm Agency that sold the subject policy of insurance, and/or other persons and entities, including but not limited to agents, engineers, or adjusters who are affiliated with the Defendants and/or who acted in concert with Defendants, and who participated in the torts of those Defendants to such a degree as to make them individually liable to the Plaintiffs under Mississippi law, but whose identities and liability are

currently unknown. All allegations and claims asserted herein against "State Farm", "State Farm Fire", "State Farm Mutual", "Mr. Eleuterius", "Defendant" and/or "Defendants" are incorporated herein by reference against John and Jane Does A-H. Said John and Jane Does, when their true identities are known and their liability ascertained, will be identified by name and joined in this action, if necessary, pursuant to the Mississippi Rules of Civil Procedure

## VENUE AND JURISDICTION

7. Plaintiffs maintain that jurisdiction is proper in the First Judicial District of Harrison County Circuit Court. State Farm Fire removed this cause to this Honorable Court on the basis of alleged Federal Question Jurisdiction, and this Court denied the Plaintiffs' Motion to Remand and assumed jurisdiction over this cause.

## INSURANCE POLICIES

8. The following insurance policies provided coverage to Mr. and Mrs. O'Keefe and/or Dancel, all of which are subject to this litigation.

- State Farm Business Policy No. 98-33-7526-2 covering Dancel's property and operations in New Orleans, Louisiana;

- State Farm Business Policy No. 99-B5-9935-5 covering Dancel's property and operations in D'Iberville, Mississippi;

- State Farm Homeowner's Policy No. 24-CD-9277-6 covering the O'Keefes' property at 12901 Hanover Drive, Ocean Springs, Mississippi

Copies of each of these policies should be in the possession of the Defendants.

## DANCEL HISTORY

9. Dancel was formed in 1984, by Daniel O'Keefe and Celeste Foster O'Keefe. Initially, the company was located in New Orleans, Louisiana. All operations of Dancel were originally conducted out of the New Orleans' location. In 1995, Dancel opened an office in D'Iberville, Harrison County, Mississippi. At that time, all insurance coverage of Dancel was provided by

State Farm Insurance Company and its agent, Steve Barrios in New Orleans, Louisiana. As Dancel began its Mississippi operations, Mrs. O'Keefe contacted Mr. Barrios and asked that he provide coverage for the Mississippi business. Mr. Barrios indicated that he was unable to provide coverage in Mississippi, but he would have a local agent contact her. Subsequently, Mr. Eleuterius contacted Mrs. O'Keefe. Between 1995 and August 30, 2005, Mr. Eleuterius provided Mr. and Mrs. O'Keefe and/or Dancel with all of their State Farm insurance coverage in Mississippi. At all times associated with this Complaint, Mr. Eleuterius was responsible for providing advice and assistance regarding applicable and necessary coverages, and renewing coverage, based on the particular needs of Mr. and Mrs. O'Keefe and Dancel. Mr. and Mrs. O'Keefe and/or Dancel relied on Mr. Eleuterius to provide competent, professional, and accurate advice regarding coverage and to procure appropriate and adequate insurance coverage for their particular needs.

### STATE FARM MUTUAL IS A CO-PRINCIPAL WITH STATE FARM FIRE

10. State Farm Mutual and State Farm Fire entered into, and were governed at all times relevant to this Complaint, by a "Master Services and Facilities Agreement" whereby State Farm Mutual assumed the position as a co-principal with State Farm Fire for the purpose of marketing, selling and adjusting claims under State Farm Fire insurance policies, including but not limited to the subject homeowner's and business policies.

11. Under the Agreement, State Farm Mutual assumed virtually all duties related to the subject policies, including but not limited to responsibility to provide underwriting advice and services, policy issuing and billing services, actuarial services, internal auditing and record retention services, collection of premiums, provision of policies and other printed supplies used in the conduct of the specific insurance business, office space and accommodations, qualified

personnel to perform the services and their salaries and expenses, marketing services, and legal services.

12. Although the Agreement states State Farm Fire is to retain "ultimate control and responsibility" over the services provided by State Farm Mutual, and gratuitously asserts it is not meant to "create a joint venture or partnership," these purported restrictions on State Farm Mutual's ability to act with regard to issues pertaining to the subject policies of insurance are illusory. Pursuant to the terms of the Agreement, State Farm Fire is prohibited from making any claim against State Farm Mutual for alleged errors in judgment or acts or omissions of State Farm Mutual, and from objecting to any expenditure by State Farm Mutual (which State Farm Fire must also reimburse under the Agreement), so long as State Farm Mutual's conduct and expenditures were "made in good faith." Upon information and belief, the ultimate control and authority about how to adjust the subject Hurricane Katrina claims lay with State Farm Mutual, not State Farm Fire.

13. Pursuant to the terms of the Agreement, and in actual operation, State Farm Fire did not have or exercise insurmountable control over State Farm Mutual's operations and obligations under the contract. Rather, State Farm Mutual enjoyed considerable autonomy in devising the means to adjust, and overseeing the actual adjustment of Plaintiffs' Hurricane Katrina claims. Under controlling Mississippi law, State Farm Mutual acted in the capacity of co-principal with State Farm Fire with regard to the subject policies of insurance and the adjustment of claims thereunder, and thus may be held individually liable to the Plaintiffs for simple negligence.

## FACTS

14. On August 29, 2005, Mr. and Mrs. O'Keefe's residence located at 12901 Hanover Drive, Ocean Springs, Mississippi 39564 was insured by a policy of insurance issued by State Farm Fire,

and State Farm Mutual as co-principal. The insurance contract was Policy No. 24-CD-9277-6. A copy of the subject policy of insurance, which was not provided to the Plaintiffs in a timely manner, should be in the possession of the Defendants.

15. Under the terms and conditions of the homeowners' policy, State Farm Fire, and State Farm Mutual as co-principal, insured the Plaintiffs for damage caused by Hurricane Katrina to the O'Keefes' dwelling and personal property, as well as other benefits referenced in the contract of insurance. State Farm Fire, and State Farm Mutual as co-principal, failed to pay all of the benefits to which the O'Keefes are entitled under the homeowner's policy.

16. Mr. Eleuterius was consulted regarding coverage on Mr. and Mrs. O'Keefe's principal dwelling. Mr. Eleuterius instructed Mr. and Mrs. O'Keefe to purchase a State Farm Homeowners' policy, but advised against purchasing a federal flood insurance policy, insisting that the O'Keefes' dwelling was not located in a flood zone.

17. Mr. Eleuterius further indicated to Mrs. O'Keefe that, to the extent the O'Keefes elected to purchase Federal flood insurance, the State Farm homeowner's policy would be supplemental to the Federal flood coverage, and the State Farm Homeowner's policy would pick up where the Federal flood coverage ended, and provide coverage for any damage to the O'Keefes' dwelling above and beyond the limits of the federal flood coverage in the event of a catastrophic Hurricane loss involving both wind and storm surge.

18. Mr. Eleuterius further advised the Plaintiffs that it was not possible to obtain excess flood insurance, from any source, beyond the limits available through the federal government. Under his agency agreement with State Farm Fire, Mr. Eleuterius was prohibited from offering excess flood insurance to State Farm insureds through the private market. At the time Mr. Eleuterius advised the Plaintiffs no "excess" flood insurance was available, he knew or should have known that this

representation was not true. Mr. Eleuterius expected the Plaintiffs to believe this false representation, and to rely on it, however, with the intended result that Plaintiffs would not seek quotes on excess flood insurance from other agents and insurance companies, which contacts may lead Plaintiffs to place all of their substantial insurance business with an agent other than Eleuterius, and with an insurance company other than State Farm.

19. The O'Keefes, despite Mr. Eleuterius' advice regarding the federal flood insurance, purchased such a policy. However, they did not purchase any excess flood coverages based upon their reasonable reliance upon Mr. Eleuterius' representations and assurances that the State Farm Fire homeowner's policy would provide coverage for any and all losses caused by a Hurricane, and that excess flood insurance was not available. Mr. and Mrs. O'Keefe did rely on Eleuterius' false representation, and did not seek to obtain excess flood insurance, which conduct was detrimental to the Plaintiffs as State Farm Fire denied coverage for a large part of Plaintiffs' substantial losses at their home following Hurricane Katrina based upon the allegation that damages were caused by flood and not covered. The O'Keefe's reliance on Mr. Eleuterius' representations was reasonable, in that the State Farm Homeowner's policy did not include an exclusion for Hurricane driven "storm surge", although it did include exclusions for "tsunamis" and "seiche's", other water events which, like "storm surge", are spawned by specific natural disasters. The State Farm Fire Homeowner's Policy is an "accidental direct physical loss" policy of insurance (commonly known as an "all risk" policy) drafted by the Defendants. The State Farm Fire Policy expressly states on its cover: "This policy is one of the broadest forms available today and provides you with outstanding value for your insurance dollars."

20. Mr. Eleuterius had actual and apparent authority to act as State Farm Fire's representative with regard to explaining the coverage provided by State Farm Fire's homeowner's policy.

21. Subsequent to the Hurricane Katrina losses discussed below, Mr. Eleuterius confirmed the representations and warranties noted above to Mrs. O'Keefe. To the extent, if any, that the hurricane damage to the O'Keefes' dwelling and personal property is not covered by the State Farm Homeowners' policy, Mr. Eleuterius is liable to the O'Keefes for his misrepresentations, and his failure to provide accurate advice regarding necessary coverage, and/or for his failure to procure adequate insurance coverage for all risks of loss to the O'Keefes' dwelling and personal property.

22. On August 29, 2005, Mr. and Mrs. O'Keefe and Dancel, and/or Mr. and Mrs. O'Keefe d/b/a Dancel, were covered by business insurance contracts issued by Defendant State Farm Fire, and State Farm Mutual as co-principal. The insurance contracts were issued under policy numbers 98-33-7526-2 and 99-B5-9935-5. All premiums for these policies were paid through Dancel. The business insurance contract provided Mr. and Mrs. O'Keefe and Dancel, and/or Mr. and Mrs. O'Keefe d/b/a Dancel, with coverage for various risks or perils including coverage for the business premises identified on the Dec Page, and loss of income resulting from interruption of the business operations conducted from those premises. State Farm Fire, and State Farm Mutual as co-principal, agreed to pay Mr. and Mrs. O'Keefe and Dancel and/or Mr. and Mrs. O'Keefe d/b/a Dancel for loss of business income, as well as other benefits referenced in the insurance contracts. A copy of the Business Policy for Dancel's New Orleans' Business Policy issued for Dancel's Mississippi (primary) location should be in the possession of the Defendants.

23. State Farm Fire, State Farm Mutual as co-principal, and Mr. Eleuterius represented to the Plaintiffs that said business policies were being issued to protect against a loss of business income suffered as a result of the interruption of Dancel's business activities at the premises described on the policy Declarations in the event of a loss, such as Hurricane Katrina. Plaintiffs

relied upon these representations to their detriment.  State Farm Fire, and State Farm Mutual as co-principal, are equitably estopped from asserting that loss of income from the business activities of Dancel conducted out of  10265 Rodriguez Street, necessitated due to a loss at those premises, were not insured under the subject insurance contract.

24. Business coverage policy 98-33-7526-2 was issued through State Farm agent Mr. Barrios and covered business operations conducted out of a premises located in New Orleans, Louisiana. Initially following Hurricane Katrina, a claim representative for State Farm Fire, and State Farm Mutual as co-principal, confirmed to the Plaintiffs that the State Farm Fire business policies provided interruption business coverage, and that they could expect to receive payment under these policies of insurance for loss of income caused by the interruption of Dancel's business operations.

25. Subsequently, State Farm Fire and State Farm Mutual, acting as co-principal, advised the Plaintiffs that the business policy on Mr. and Mrs. O'Keefe and Dancel's and/or Mr. and Mrs. O'Keefe d/b/a Dancel's operations in Harrison County, Mississippi (No. 99-B5-9935-5), did not provide coverage for loss of income caused by the interruption of Dancel's business operations. Plaintiffs subsequently informed State Farm that it was providing such coverage under Policy No. 98-33-7526-2.  Caught in 'the horns of its own dilemma,' State Farm Fire,  and State Farm Mutual as co-principal, subsequently declared that no coverage existed under either Policy NO. 98-33-7526-2 or 99-B5-9935-5 for loss of income suffered as a result of the necessary interruption of Dancel's business activities.

### State Farm Increased Premiums and/or Required Increased Deductibles For Its Homeowner's Policy Based on Projections of Hurricane Damage

26. State Farm Fire, and State Farm Mutual as co-principal, knew that Plaintiffs, like many other residents on the Mississippi Gulf Coast, purchased the homeowner's policy for protection

from accidental direct physical loss from hurricanes.

27. During the time Plaintiffs' policy was in effect, and during the 1990's, State Farm Fire, and State Farm Mutual as co-principal, requested and received premium rate increases for Plaintiffs' policy from the Mississippi Department of Insurance.  Said increases were justified by State Farm Fire, and State Farm Mutual as co-principal, by the hurricane risks associated with Coastal properties. State Farm Fire, and State Farm Mutual as co-principal, utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate demands for such rate increases.

28. During the late 1990's, State Farm Fire, and State Farm Mutual as co-principal, informed the Plaintiffs and similarly situated insureds that it had a mandatory modification of the policy, which raised the deductible for hurricane-caused losses covered by the policy. The increased deductible, commonly called the "hurricane deductible," was automatically applied unless the homeowner paid a higher premium for increased protection in the case of damage caused by a hurricane. The Plaintiffs' action in agreeing to purchase the subject homeowner's policy under these amended terms was based on State Farm Fire, and State Farm Mutual as co-principal, representation that maintaining the State Farm homeowner's policy would secure insurance coverage in the case of loss(es) caused by a hurricane.

29. The subject policy was underwritten, marketed, sold, and issued to Plaintiffs by State Farm Fire, and State Farm Mutual as co-principal, which acted by, through, and/or in conjunction with, its agents, representatives of the Marshal Eleuterius Agency.  In selling the subject policy of insurance to the Plaintiffs, and collecting premiums under the policy, State Farm Fire, and State Farm Mutual as co-principal, by and through its agents, expressly and impliedly represented to Plaintiffs that they would have full and comprehensive coverage for any

and all accidental direct physical losses, including those resulting from hurricanes, and including any and all damage proximately, efficiently, and typically caused by hurricanes, including but not limited to damage caused by hurricane driven winds and "storm surge".

30. Based upon the representations of coverage made by State Farm Fire, and State Farm Mutual as co-principal, and its agents, and the express and implicit policy coverages, the Plaintiffs reasonably relied upon said representations and purchased the subject policy of homeowner's insurance from State Farm Fire, and State Farm Mutual as co-principal, with a reasonable expectation and understanding that State Farm Fire, and State Farm Mutual as co-principal, would pay for all losses caused by hurricanes. State Farm Fire, and State Farm Mutual as co-principal, intended for the Plaintiffs to rely upon the representations that they would be covered for Hurricanes, and to accept and pay higher premiums based upon that reliance.

### Plaintiffs' Home and Contents Were Significantly Destroyed by Hurricane Katrina

31. On or about August 29, 2005, within the subject policy period, the Plaintiffs' home and personal contents therein suffered an accidental direct physical loss from, and were significantly destroyed by, a windstorm - Hurricane Katrina. The accidental direct physical loss to the Plaintiffs' dwelling and personal property, caused by a windstorm, triggered all coverages under Plaintiffs' homeowner's contract with State Farm Fire, and State Farm Mutual as co-principal, in accordance with the terms of the policy and Mississippi law.

32. The Plaintiffs timely placed State Farm Fire, and State Farm Mutual as co-principal, on notice of their devastating losses. The Plaintiffs paid all the premiums due under the subject policy of insurance, and have performed all their obligations with regard to the subject claim.

**Dancel was Significantly Damaged by Hurricane Katrina**
**Resulting in Significant Property Losses and Significant Loss of Business Income**

33. On or about August 29, 2005, within the subject policy period, the Plaintiffs' business structures at 10265 Rodriguez Street, D'Iberville, Mississippi, and the contents therein suffered an accidental direct physical loss from, and were significantly destroyed by, a windstorm - Hurricane Katrina.  The accidental direct physical loss to the Plaintiffs' business property also necessitated interruption of the primary business activities conducted out of those premises, those of Dancel; and resulted in a substantial loss business income by the Plaintiffs.  These losses, caused by Hurricane Katrina, a "windstorm", triggered all coverages under Plaintiffs' Business Policy with State Farm Fire, and State Farm Mutual as co-principal, in accordance with the terms of the policies and Mississippi law.

34. The Plaintiffs timely placed State Farm Fire, and State Farm Mutual as co-principal, on notice of their devastating losses. The Plaintiffs paid all the premiums due under the subject policies of insurance, and have performed all their obligations with regard to the subject claims.

**Defendants Failed to Conduct an Adequate Investigation, And**
**Refused to Follow Their Own Claims Procedures or Controlling Law and Public Policy**

35. State Farm Fire, and State Farm Mutual as co-principal, failed to conduct an adequate investigation of Plaintiffs' losses.

36. State Farm Fire, and State Farm Mutual as co-principal, had a duty to conduct a thorough investigation of the Plaintiffs' claims.  That duty specifically included gathering all relevant facts.  State Farm Fire's, and State Farm Mutual's as co-principal, own policies and procedures required claims personnel to canvass the neighborhood for eyewitnesses, and to consider the damage to the surrounding area in determining the cause of loss to Plaintiffs' home and property. State Farm Fire's, and State Farm Mutual's as co-principal, own written policies and procedures

utilized for training adjusters to become certified to adjust claims such as the Plaintiffs confirm the burden lay with State Farm Fire to either pay the accidental direct physical losses suffered by the Plaintiffs as a result of Hurricane Katrina, or prove specific losses for which no payment is made were caused by a peril expressly excluded under the subject policies, and to resolve all doubts regarding coverage, including questions regarding cause of loss, in favor of the insured. State Farm Fire, and State Farm Mutual as co-principal, also were required to follow, and adopted, Mississippi Insurance Department Bulletins 2005-6 and 2006-2 as its own claims procedures, and directed and expected its claims representatives to comply therewith. Mississippi Department Bulletin 2005-6, issued on September 7, 2005 and adopted by State Farm Fire, and State Farm Mutual as co-principal, mandated that "where there is any doubt [about whether damage was caused by wind or water], that doubt will be resolved in favor of finding coverage on behalf of the insured."

37. State Farm Fire, and State Farm Mutual as co-principal, failed and refused to follow its own claims procedures with regard to its investigation and handling of Plaintiffs' claim.

38. State Farm Fire, and State Farm Mutual as co-principal, failed and refused to follow controlling Mississippi law and public policy with regard to its investigation and handling of Plaintiffs' claim.

39. State Farm Fire, and State Farm Mutual as co-principal, concealed from Plaintiffs and others, including the Mississippi Department of Insurance, their post-Katrina scheme designed to deny legitimate claims such as Plaintiffs'.

**<u>Defendants Wrongfully and Fraudulently Denied Plaintiffs' Claims</u>**

40. After assessing the magnitude of the State Farm-insured Katrina losses, State Farm Fire, and State Farm Mutual, individually and/or as co-principal, intentionally and deliberately set

forth on a course of action, concealed from the Plaintiffs and other homeowners, designed to reduce the companies' exposure for losses by abandoning State Farm Fire's, and State Farm Mutual's as co-principal, duty to fully investigate individual Katrina significant damage claims, and to shift the financial burden of responding to the Hurricane to the Federal Government. Unbeknownst to the Plaintiffs, and concealed from the Plaintiffs and other State Farm insureds, State Farm Fire and State Farm Mutual as co-principal embarked during the period of August 29, 2005 and thereafter, on a calculated course of corporate conduct designed to deny Plaintiffs' claims, and the claims of all Mississippi Gulf Coast homeowners like them whose State Farm-insured homes had been substantially damaged by Hurricane Katrina.

1. __Manipulation of NFIP Claims Handling Guidelines__

41. State Farm Fire, and State Farm Mutual as co-principal, drafted "amended", "streamlined" claims handling procedures for handling Hurricane Katrina NFIP claims, and urged the Federal Government to accept and implement these guidelines. The application and effect of the amended guidelines proposed by State Farm Fire, and State Farm Mutual as co-principal, was that there would be no requirement to prove the cause of loss as a prerequisite to paying policy limits under NFIP claims where the home and its contents were significantly damaged, and where FEMA supplied information showed significant storm surge inundated the property prior to the end of the Hurricane. Additionally, State Farm Fire, and State Farm Mutual as co-principal, urged the Federal Government to allow it to use a "short-cut" program for determining whether policy limits could be paid, called XACT TOTAL. Additionally, State Farm Fire, and State Farm Mutual acting as co-principal, induced the Federal Government to waive the requirement that State Farm reimburse to the Federal Government any NFIP claims payment that was later determined to be an "over-payment" (because, for example, it was later

proven that loss was not caused by flood); and to waive the requirement that insureds sign a sworn proof of loss, admitting the cause of loss to covered property, as a pre-requisite to receiving policy benefits under NFIP policies.

42. Upon information and belief, State Farm Fire's, and State Farm Mutual's as co-principal, goals associated with its proposal of amended NFIP Guidelines were two-fold.  As a WYO insurance company, State Farm Fire receives a percentage of every dollar paid out on an NFIP claim serviced by State Farm Fire, and State Farm Mutual as co-principal, as compensation for alleged "administration" fees.  The percentage paid to State Farm Fire for its administration of Hurricane Katrina NFIP claims would not be reduced under the amended guidelines; however, State Farm Fire, and State Farm Mutual as co-principal, would spend far less time and expense handling and paying NFIP claims under the amended guidelines proposed by State Farm Fire, and State Farm Mutual as co-principal.  The net result would be that State Farm Fire, and State Farm Mutual as co-principal, would make a healthy profit from administering payments on NFIP claims, while doing less work that what would ordinarily be required to administer such claims.

43. State Farm Fire, and State Farm Mutual as co-principal, convinced the Federal Government to adopt, and the Federal Government did adopt, amended guidelines for handling Hurricane Katrina NFIP claims that were nearly identical to the proposed plans submitted by State Farm.  State Farm Fire, and State Farm Mutual as co-principal, also "sold" the Federal Government on allowing State Farm, and the Government did allow State Farm to utilize the XACT TOTAL program for determining whether policy limits should be paid.  State Farm Fire, and State Farm Mutual as co-principal actually began utilizing their form of adopted guidelines for responding to Hurricane Katrina NFIP claims before they were even formally approved by the Federal Government.  As a result the manner in which State Farm Fire, and State Farm

Mutual as co-principal elected to utilize the "amended guidelines" for handling NFIP claims, State Farm Fire, and State Farm Mutual as co-principal were able to obtain substantial compensation from the Federal Government for doing considerably less work than was contemplated in setting the percentage of payouts that would be paid to State Farm Fire in the form of administrative fees. Use of the XACT TOTAL program to determine amount of loss, standing alone, reduced time involved with this step in the process by approximately 65%, according to State Farm's own calculations. Upon information and belief, State Farm Fire was paid hundreds of millions of dollars by the Federal Government in the form of "administrative fees" for handling Hurricane Katrina NFIP claims – which claims were paid without the requirement of performing an inspection to determine actual cause of loss, and without any determination actually having been made about the cause of loss. Indeed, in a change of procedure that was unique to Hurricane Katrina, the Federal Government agreed not to seek reimbursement from State Farm Fire, and State Farm Mutual as co-principal, in the event it was subsequently determined State Farm paid more than it really should have under federal flood insurance policies. In short, State Farm Fire, and State Farm Mutual as co-principal, were given an open pass to mis-use taxpayer dollars in a fashion that allowed State Farm Fire to get paid for it, and then allowed State Farm Fire, and State Farm Mutual as co-principal, to avoid coverage under State Farm Fire's own policies through strained arguments that insureds had already "admitted" losses were caused by "flood" by virtue of accepting NFIP payments made by State Farm Fire and State Farm Mutual, individually and/or as co-principal, under their mis-use use of the amended procedures for adjusting NFIP Katrina claims.

44. The net effect of the Federal Government's adoption of amended guidelines proposed by State Farm Fire, and State Farm Mutual as co-principal, and of the manner in which State Farm

actually applied those guidelines to Katrina claims in light of the Federal Government's waiver of any requirement that State Farm Fire reimburse it for over-payment of NFIP benefits, in addition to being a profit generator for State Farm, was that the terms of coverage under the standard NFIP policy were significantly broadened for the purpose of responding to Hurricane Katrina claims.  The standard NFIP policy, as written, only provides coverage for damage caused by flood, and contains an exclusion for damage caused by wind.  Through State Farm Fire's, and State Farm Mutual's as co-principal, mis-use and application of the amended guidelines adopted for Hurricane Katrina, there was no requirement to prove loss was caused by flood – and not by wind – for paying NFIP claims, and State Farm was held harmless in the event it were later discovered State Farm paid an NFIP claim on a loss that was caused by wind, or one where the cause of loss was not objectively determinable.  Rather, the only requirement was a showing that the property was inundated with significant storm surge prior to the end of the Hurricane – regardless of whether the winds of the Hurricane may have significantly damaged or destroyed the home and property prior to the arrival of storm surge.

45. The second prong of State Farm Fire's, and State Farm Mutual's as co-principal, strategy with regard to utilization of amended NFIP Guidelines has played itself out through litigation of Hurricane Katrina cases in Mississippi Courts.  When insureds with significant losses who had coverage under both State Farm Fire homeowner's policies and State Farm Fire sold and administered NFIP policies pursue litigation against State Farm Fire and/or State Farm Mutual for bad faith failure to pay proceeds due under the homeowner's insurance policies, State Farm Fire alleges the insureds are not entitled to proceeds or some percentage thereof under their homeowners' insurance policy, because, State Farm Fire alleges, the insureds admitted losses were caused by "flood" by virtue of accepting benefits under their NFIP policies.  Of course,

State Farm Fire, and State Farm Mutual as co-principal, have systematically concealed the fact and effect of its encouragement that the Federal Government adopt, and the Federal Government's ultimate adoption of, the amended guidelines discussed above, and the manner in which State Farm Fire and State Farm Mutual, individually and/or as co-principal, manipulated those procedures to pay claims such as the Plaintiffs without proving cause of loss, and without requirement Plaintiffs to sign sworn proof of loss forms, or even acknowledge cause of loss as a pre-requisite to receipt of NFIP benefits.

**2.   State Farm Fire, and State Farm Mutual as co-principal, Devised and Employed Fraudulent Claims Handling Guidelines**

46. In accordance with a top-down policy, adopted by State Farm Fire, and State Farm Mutual as co-principal, *post*-Katrina, after deliberation and calculation; and fraudulently concealed from the Plaintiffs, State Farm Fire, and State Farm Mutual as co-principal: changed their claims handling procedures for losses contacted by storm surge; canceled their adjusters' requests for engineer reports, failed to timely obtain engineer reports, replaced unfavorable engineer reports with favorable engineer reports and/or used engineers who were willing to fabricate reports; ignored engineer reports and other evidence, including eyewitness testimony, that proved homes in the community were destroyed by hurricane force winds before the storm surge arrived; required "revisions" and/or "modifications", including deletions and supplementations to exclude reference to "wind damage" of unfavorable engineer reports; directed engineer's to conclude storm surge was the cause of loss in their reports, and fired and/or threatened to fire engineers who would not conform their reports to State Farm Fire's and State Farm Mutual's pre-investigation directions regarding cause of loss; ignored findings in engineer reports that demonstrated coverage; adopted requirements for finding coverage that had not been utilized on pre-Katrina claims, and that were not contained within, nor supported by the

subject policy of insurance; and issued across the board denials of full and complete coverage to policyholders whose homes were substantially damaged by the hurricane, including the Plaintiffs.

47. State Farm Mutual, individually and/or as co-principal drafted; and State Farm Fire, pursuant to State Farm Mutual's instructions, adopted; new claims handling procedures <u>after</u> the hurricane to be "used for determination of coverage" in Mississippi Katrina claims where insured property was contacted by hurricane driven storm surge.  State Farm Mutual and State Farm Fire were both directly involved in the course of conduct that led to the denial of the Plaintiffs' claims.

48. The coverage provisions of the new wind/water procedure written and/or required by State Farm Mutual, and implemented by State Farm Mutual, individually and/or as co-principal, and State Farm Fire, including but not limited to the requirement of finding "discernible wind damage" (also called distinguishable wind damage to "separate portions of property") as a prerequisite for coverage on substantial losses, were not supported by the terms of the subject insurance contract or Mississippi law.  The procedures were intentionally designed to result, and did result, in denials of legitimate claims, including the Plaintiffs', and to save State Farm from the magnitude of payments that were rightfully due Plaintiffs and others under the form of policy issued to the Plaintiffs, and hundreds of other Mississippi insureds.

49. The actions of State Farm Mutual, individually and/or as co-principal, and State Farm Fire, concealed not only from State Farm Fire policyholders but also from the Mississippi Department of Insurance, were designed to, and did in effect shift the burden of establishing in significant damage cases the cause of the accidental direct physical loss under the Defendants' all risk policy from the Company to the policyholder.  Said actions and conduct were also

designed to enable State Farm Fire, and State Farm Mutual as co-principal, to deny coverage for "indivisible" losses, where State Farm could not objectively prove the cause of loss, and where it was known that the property was subjected to both Hurricane force winds and storm surge. Under the terms and conditions of the State Farm Fire homeowner policy, and MDI Bulletin 2005-6 which was expressly adopted by State Farm Fire, State Farm Fire, and State Farm Mutual as co-principle, were required to provide coverage for "indivisible" losses, because they were required to resolve doubt about cause of loss in favor of coverage for the insured.

50. State Farm Fire's, and State Farm Mutual's as co-principal, actions resulted in an intentional and deliberate abandonment of the duty to fully, timely and competently investigate the claims of the Plaintiffs,; and an intentional and deliberate abandonment of the duty to interpret and apply coverage in line with the terms and conditions of the subject policy of insurance, and Mississippi law.

51. Based on the above conspired actions, and contrary to the express and implicit representations of State Farm Fire, and State Farm Mutual as co-principal, and their agents that the Plaintiffs were purchasing coverage for losses and damages caused by hurricanes, and contrary to the express and implicit policy provisions, State Farm Fire, and State Farm Mutual as co-principal, refused to pay for all the losses and damages the Plaintiffs suffered at their home, which losses were all caused by Hurricane Katrina – a windstorm.

52. During the time when Plaintiffs were being advised by State Farm Fire's, and State Farm Mutual's as co-principal, agents and/or representatives that damage to their home included losses caused by covered perils, and that further investigation would be required, State Farm Mutual, individually and/or as co-principal, had already written procedures which required the denial of Plaintiffs' claim.

53. The acts and omissions of the State Farm Fire, and State Farm Mutual as co-principal, with regard to "investigation" of the cause of the loss incurred by the Plaintiffs, and Defendant's outright denial of coverage for large portions of Plaintiffs' claims, constitute intentional, deliberate conduct accompanied by fraud or deceit as alleged specifically herein.

54. The conduct of Defendants, on information and belief, was motivated, in part, by State Farm Fire's and State Farm Mutual's, as co-principal, desire to (1) save money on substantial damage claims in violation of its duties to the Plaintiffs and similarly situated State Farm insured homeowners and (2) shift liability for a large portion of the enormous Katrina losses from State Farm's Homeowners Policies to NFIP flood program policies and/or the policyholders.

55. When State Farm Fire, and State Farm Mutual as co-principal,, on March 31, 2006, responded in writing to the March 24, 2006 demand from the Insurance Department for a "detailed written explanation concerning State Farm Fire's interpretation and application of the concurrent causation policy provision as same is being applied to Hurricane Katrina victims, particularly those with substantial damage claims," Defendants failed to disclose that their new written wind/water coverage procedure, adopted just 13 days after the Hurricane, provided: "Where wind acts concurrently with flooding to cause damage to the insured property, coverage for the loss exists only under flood coverage, if available."  Likewise, Defendants failed to disclose that the edited, final version of the wind/water coverage procedure omitted an entire category contained in the original draft (which category applied to Plaintiffs' claim), the category for "Damage to the Property that May Have Been Caused by Either Windstorm or Flood or a Combination of the Two and it is difficult to conclusively determine Causation."  State Farm Fire, and State Farm Mutual as co-principal, further concealed from the Mississippi Department of Insurance the fact that they made a decision, expressed through omission of this entire

category, to likewise ignore their duty under the law (expressly set forth under the referenced category in the original draft of the wind water procedure) to "prove that the excluded damage (flood) caused the loss."

56. Pursuant to the terms of the contract of insurance and Mississippi law, State Farm Fire, and State Farm Mutual as co-principal, was obligated to pay Plaintiffs' claims unless it established that "loss would not have occurred in the absence of water." Since Defendants did not meet that burden, the denial of benefits is contrary to the terms of the insurance contract and Mississippi law.

### **Certain Provisions of State Farm's Policy are Ambiguous, Void and/or Unenforceable**

57. Certain provisions of the subject policies of insurance, which State Farm Fire, and State Farm Mutual as co-principal, utilized to exclude coverage for the Plaintiffs' losses caused by Hurricane Katrina, when viewed in connection with the policy's intent to provide coverage for hurricane losses, are ambiguous as a matter of law. The subject policies of insurance could have, but did not contain an exclusion for Hurricane related "storm surge", although they did expressly exclude "tsunami" and "seiche", two water events which, like "storm surge", are triggered by other natural disasters.

58. The "anti-concurrent cause clause" is likewise ambiguous, as demonstrated by the multiple interpretations of the language by various Courts, and by various national insurance companies with similar language, and contrary to the law and public policy of the State of Mississippi, and must not be enforced. The question of the enforceability of the ACC clause is currently pending before the Mississippi Supreme Court, which accepted an interlocutory appeal to firmly announce the law in this State on this important issue, in *Corban vs. United Services*

*Automobile Association*, Cause No. 2008-IA-00645-SCT.  State Farm Fire filed an *amicus* brief

in this matter, which has been set for oral argument on June 9, 2009.

### Defendants Cut Off ALE Under the HO Policy in Violation of Policy Terms

59. Coverage Part C of the State Farm homeowners' policy provides coverage for, among

other things, "Additional Living Expense".  The policy provides, in pertinent part

> When a Loss Insured causes the **residence premises** to become uninhabitable, we
> will cover the necessary increase in cost you incur to maintain your standard of
> living for up to 24 months. . . .

60. Unlike other coverage parts described in the policy, Coverage C does not incorporate, nor

make coverage subject to, any exclusions set forth in *Section 1 – Losses Not Insured*.  Rather,

Coverage C is available to the Plaintiffs so long as a "***Loss Insured*** causes the [home] to become

uninhabitable."  The policy clearly describes "Loss Insured" as including "accidental direct

physical loss."  Plaintiffs sustained an "accidental direct physical loss" of their home when

Hurricane Katrina caused their home to become uninhabitable on August 29, 2005, and caused

Plaintiffs to incur substantial increases in their costs of living.  State Farm Fire, and State Farm

Mutual as co-principal, knew the Plaintiffs were incurring significant monthly expenses in

additional living expenses.

61. After wrongfully denying Plaintiffs' claim for the substantial loss of their home and

personal contents, State Farm Fire, and State Farm Mutual as co-principal, advised the Plaintiffs

they was going to arbitrarily cut off their entitlement to additional living expenses, in violation of

the terms of the policy.  Defendants failed to pay the Plaintiffs additional living expenses since

that date, despite the fact they knew Plaintiffs were continuing to incur these expenses, and

despite the fact both State Farm Defendants knew these expenses were covered, and not subject

to any exclusions under the policy.

## NEGLIGENCE, FAILURE TO PROCURE, MALPRACTICE, MISREPRESENTATION
## MARSHAL ELEUTERIUS

62. Since 1995, Mr. and Mrs. O'Keefe and/or Dancel have relied on Mr. Eleuterius to procure for them adequate and appropriate insurance coverage for all perils and/or risks associated with both their dwelling and their business operations. Mr. and Mrs. O'Keefe and/or Dancel trusted and relied on Mr. Eleuterius to provide competent and professional information and advice regarding their insurance coverage needs, and to insure they were provided all relevant and accurate information pertaining to their coverages, as well as the limits and/or limitations of their coverage.

63. With regard to the subject business policy covering the premises at 10265 Rodriguez Street, Mr. Eleuterius took charge of the application process, and filled out the application for the Plaintiffs. Plaintiffs provide truthful answers to all questions posed by Mr. Eleuterius in relation to their attempt to secure the subject business policy, and specifically advised Mr. Eleuterius they were seeking to obtain coverage for loss of income suffered as a result of interruption of the business activities of Dancel in the event of a loss to the premises at 10265 Rodriguez Street.

64. Mr. Eleuterius breached the duties and obligations owed to Mr. and Mrs. O'Keefe and/or Dancel and was negligent in his failure to procure adequate coverages in the event of a hurricane, windstorm, and/or storm surge. Specifically, and without limitation, Mr. Eleuterius was negligent in the following respects:

a.  He failed to procure appropriate coverages for Mr. and Mrs. O'Keefe's dwelling;

b.  He failed to procure additional flood coverage over and above the maximum amount of coverage available through the NFIP, and misrepresented to the Plaintiffs that excess flood insurance was not available;

c.   He represented to, and assured, Mr. and Mrs. O'Keefe that their home and personal property was adequately insured based on the fact their homeowners' policy would pay in addition to, or on top of, applicable flood coverage for any losses sustained;

d.   He represented the State Farm Homeowner's policy would, in conjunction with the NFIP policy, provide comprehensive coverage for Hurricanes,

e.   He failed to offer or procure appropriate and adequate insurance for the 10265 Rodriguez Street operations;

f.   He represented that the State Farm Fire business policy he sold the Plaintiffs would provide coverage for loss of income suffered as a result of interruption of the business activities of Dancel in the event of a loss to the premises at.

g.   Based on State Farm's denial of business interruption coverage, he failed to procure adequate and complete coverage regarding the business operations of Dancel; and

h.   Multiple other breaches of the applicable standard of care and/or negligence, as will be identified during discovery.

65. Plaintiffs expressly requested that Eleuterius procure insurance to cover their home, and personal property; and to cover the premises at 10265 Rodriguez Street, as well as loss of income suffered as a result of the interruption of business activities conducted out of those premises, principally including the business activities of Dancel, in the event of a loss, such as a Hurricane. Eleuterius agreed to procure the coverage requested by the Plaintiffs.   At all material times, Plaintiffs paid all premiums Eleuterius told them was necessary for the policies he agreed to procure.  After the subject losses, Plaintiffs were assured their losses would be covered.

66. Plaintiffs relied upon Eleuterius to procure the coverage requested, and Eleuterius knew, or should have known, Plaintiffs were relying on him to procure the coverage requested.

67. Eleuterius had a duty to procure the coverage requested by the Plaintiffs. If there is no coverage provided under the subject policies for the losses for which coverage has been denied to the Plaintiffs by State Farm Fire, and State Farm Mutual as co-principal, Eleuterius breached his duty to procure the insurance coverage he agreed to procure, and accepted premiums from the Plaintiffs to procure. It was foreseeable to Eleuterius that, if he failed to procure the insurance requested by Plaintiffs, and if Plaintiffs suffered losses such as those sustained in Katrina, the Plaintiffs would suffer a terrible and ruinous financial loss.

68. Eleuterius failed his duty, and failed to procure the insurance requested by the Plaintiffs.

69. As a direct, proximate and foreseeable result of Eleuterius' negligence and/or gross negligence, and failure to procure insurance requested by the Plaintiffs, Plaintiffs have been denied coverage for their significant personal and business losses, including significant loss of business income.

70. Eleuterius was contacted to provide insurance services on behalf of the Plaintiffs, including but not limited to the procurement of insurance to protect the Plaintiffs' home, personal property, business and business income in the event of a loss, such as a Hurricane. Eleuterius expressly represented to the Plaintiffs, that he had procured insurance through State Farm Fire to cover their home, personal property and business activities, including the business activities of Dancel conducted out of the premises at 10265 Rodriguez Street, and directly and/or constructively represented to the Plaintiffs, by accepting insurance premiums and insurance commissions thereon, that he would perform the requested insurance and professional services in a reasonable, competent, fair, diligent, ethical, and legal manner.

71. Eleuterius intended for the Plaintiffs to rely upon, and the Plaintiffs did rely upon, to their detriment, Eleuterius' representations that he would perform the requested insurance services in a reasonable and diligent manner. At all times herein, Eleuterius owed the Plaintiffs a duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the

insurance profession similarly situated in the performance of the tasks he was asked to perform on behalf of the Plaintiffs. Eleuterius breached the requisite standard(s) of care required of insurance agents, breached his duties to the Plaintiffs, and committed professional malpractice, by various acts and/or omissions, including but not limited to his failure to procure the insurance requested by the Plaintiffs, and other acts or omissions to be shown at the trial of this matter.

72. It was foreseeable to Eleuterius that failure to procure the requested coverage would result in Plaintiffs not having the coverage they requested, and paid for, in the event of a loss.

73. As a direct, proximate and foreseeable result of Eleuterius' malpractice, the Plaintiffs did not receive insurance benefits for their significant losses after Hurricane Katrina, when State Farm denied the Plaintiffs' claims under the subject policies on the allegation that said policies did not provide coverage for many of Plaintiffs' personal and business losses.

## FRAUD, FRAUDULENT INDUCEMENT

74. Eleuterius, State Farm Fire, and State Farm Mutual, as co-principal, induced the Plaintiffs to purchase homeowners insurance from State Farm Fire; to agree to a higher deductible and/or higher premiums; to pay premiums to State Farm Fire; and to not seek to place their insurance business with other insurance companies; based upon the express and implicit representations that the Plaintiffs were purchasing coverage for losses caused by hurricanes. At the time that State Farm Fire, and State Farm Mutual as co-principal, sold the subject policy of homeowner's insurance and the subject policies of business insurance to the Plaintiffs, accepted premiums for said policies, and required the Plaintiffs to pay higher premiums for hurricane coverage or accept a higher deductible for hurricane coverage, State Farm Fire, State Farm Mutual as co-principal and/or Mr. Eleuterius, (1) made express or implied representations that the Plaintiffs did not need to purchase excess flood insurance, because the State Farm Fire homeowner's policy would combine with the NFIP policy to provide comprehensive damage for any and all loss caused by

Hurricanes; (2) made express and implied representations that the Plaintiffs were purchasing homeowner's coverage for hurricanes, (3) made express or implied representations that the Plaintiffs would be covered for any and all loss of income necessitated by interruption of business activities due to a loss to the premises at 10265 Rodriguez Street caused by a Hurricane loss, including loss of income caused by necessary interruption of the business activities of Dancel; (4) made express and implied representations that State Farm Fire, and State Farm Mutual as co-principal, would use competent professionals to investigate and adjust hurricane claims in an unbiased and fair manner, (5) made express and implied representations that State Farm Fire, and State Farm Mutual as co-principal, would adjust and pay the Plaintiffs' claims in a fair and timely manner, and in a manner consistent with the way all other hurricane claims in Mississippi were handled, (5) made express and implied representations that any doubts regarding cause of loss would be resolve in favor of coverage, and that any loss whose cause was indivisible between a covered and non-covered peril would be covered; and (6) made express and implied representations that State Farm Fire, and State Farm Mutual as co-principal would not deny coverage for an accidental physical loss in absence of reasonable proof that the loss was caused by an excluded loss, as set forth in the "losses not insured" section of the policies sold to the Plaintiffs.  State Farm Fire, State Farm Mutual as co-principal, and Eleuterius made these implied and/or express representations to the Plaintiffs with the intention that the Plaintiffs would rely upon the representations, would pay premiums to State Farm Fire, and would not purchase coverage from other insurance carriers to secure coverage for their home, property, and business activities against potential hurricane losses. The Plaintiffs reasonably relied on State Farm Fire's express and/or implied representations, and the Plaintiffs purchased the subject

insurance policies from Defendants instead of placing their insurance with another carrier, and paid premiums thereon, in reliance on those representations.

75. State Farm Fire's, State Farm Mutual's as co-principal, and Eleuterius' representations to the Plaintiffs, set out in the preceding paragraph, were false, and Defendants either knew they were false, and recklessly misrepresented the true facts by not making any effort to ensure that the representations would be complied with in the event of a catastrophic hurricane such as Katrina. State Farm Fire's, State Farm Mutual's as co-principal, and Eleuterius' acts and omissions, as set forth in all the preceding paragraphs, were contrary to the representations on which the Plaintiffs relied in purchasing the policy and to the benefit and financial gain of Defendants, which still have not paid the Plaintiffs' legitimate claims despite receipt of premium payments and commissions therefrom, and to the detriment of the Plaintiffs.

76. As a direct and proximate result of State Farm Fire's, State Farm Mutual's as co-principal, and Eleuterius' fraudulent misrepresentations, and Plaintiffs' reliance thereon, Plaintiffs were prevented from purchasing insurance from other insurance company(s) to cover losses in the event of a catastrophic hurricane, and have not been compensated for their losses, and have suffered the other damages and injuries discussed throughout this Complaint.

**ADDITIONAL CLAIMS AGAINST STATE FARM FIRE and STATE FARM MUTUAL**

77. State Farm Fire, and State Farm Mutual as co-principal, breached the Plaintiffs' homeowner's policy and business policy by failing to pay all policy benefits for the covered losses caused by Hurricane Katrina.

78. State Farm Fire, and State Farm Mutual as co-principal, was negligent in handling Plaintiffs' claims.

79. State Farm Fire, and State Farm Mutual as co-principal, misrepresented and/or fraudulently concealed the terms of its policy and its improper claims handling.

80. State Farm Fire, and State Farm Mutual as co-principal, negligently, willfully and/or intentionally failed to conduct an adequate investigation of Plaintiffs' claims.

81. State Farm Fire, and State Farm Mutual as co-principal, negligently, willfully and/or intentionally abandoned its duty to investigate Plaintiffs' claims.

82. State Farm Fire, and State Farm Mutual as co-principal, engaged in improper claims handling with regard to Plaintiffs' claims.

83. State Farm Fire, and State Farm Mutual as co-principal, breached the implied covenant of good faith and fair dealing with regard to its handling of and response to Plaintiffs' claims.

84. State Farm Fire, and State Farm Mutual as co-principal, negligently, willfully and/or intentionally adopted a "wind/water protocol" that created an additional burden on policyholders, including Plaintiffs, of proving discernible wind damage, contrary to the terms of the policy.

85. State Farm Fire, and State Farm Mutual as co-principal, negligently, willfully and/or intentionally attempted to enforce policy provisions that are void, unenforceable, and/or contrary to Mississippi law.

86. State Farm Fire, and State Farm Mutual as co-principal, negligently, willfully, and/or intentionally misconstrued policy provisions, including but not limited to its provisions relating to coverage for accidental direct physical loss, coverage for accidental direct physical loss caused by windstorm, additional living expense, calculation of the inflation factor, utilization of Option ID, application of the jewelry and furs provision, construction of the anti-concurrent cause clause, and coverage for loss of business income.

87. State Farm Fire, and State Farm Mutual as co-principal, fraudulently induced Plaintiffs to purchase the subject policies, as set forth in the preceding paragraphs

88. State Farm Fire, and State Farm Mutual as co-principal, negligently, willfully and/or intentionally utilized engineers and/or other consultants and contractors, and coerced them to give biased reports in order to manipulate the claims decision.

89. State Farm Fire's, and State Farm Mutual's as co-principal, actions were intentional wrongs, were malicious and/or were committed with reckless disregard for the rights of Plaintiffs and rise to the level of independent torts. State Farm Fire's, and State Farm Mutual's as co-principal, conduct constitutes the tort of "bad faith" or tortious breach of contract under Mississippi law.

90. State Farm Fire's, and State Farm Mutual's as co-principal, actions have continued post-litigation up to the present time and are expected to continue in the future.

91. State Farm Fire's, and State Farm Mutual's as co-principal, actions, including their denials of Plaintiffs' claims and/or portions thereof, had no legitimate or arguable basis.

92. State Farm Fire's, and State Farm Mutual's as co-principal, acts and omissions have proximately caused Plaintiffs' damages.

93. State Farm Fire, and State Farm Mutual as co-principal, are also seeking to deny substantial contractual rights to the Plaintiffs, and other Mississippi insureds, in violation of the clear and unambiguous terms of the subject policy of insurance, and contrary to its duty of good faith and fair dealing. Like many other insureds, the Plaintiffs purchased "inflation protection" from the Defendants. The Plaintiffs' policy states:

> The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, where applicable, Option ID will be increased at the same rate as the increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a **<u>given date</u>**:

1. Divide the Index on that date by the Index as of the effective date of this Inflation Coverage Provision; then
2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately

(underlined emphasis added). In sworn testimony given in Katrina litigation, State Farm Fire and State Farm Mutual, as co-principal, explained that the numerator in the equation used to determine the appropriate factor by which to multiply the amounts of Coverage A, Coverage B and Option ID shown on the Declarations Page is the Inflation Index on a "given date", and the denominator is the Inflation Coverage Index shown on the Declarations Page. The term "given date" is not defined in the policy, and State Farm Fire and State Farm Mutual, as co-principal, admitted the policy does not state anywhere that the numerator is to be determined by the inflation index on the "date of loss". The policy does not identify the source of determining the inflation "Index" on a given date, and State Farm Fire and State Farm Mutual, as co-principal, admitted in corporate testimony that the only source of such information of which it is aware is the Consumer Price Index – the official source of the inflation index for the United States Government.

94. Although the policy specifically states the index on a "given date" will be utilized, and says nothing about using the index available as of the "date of loss", State Farm Fire and State Farm Mutual, as co-principal, have represented that inflation protection for the Plaintiffs' claim, and the claims of similarly situated insureds, must be calculated based upon dividing the "inflation index" on the Dec Page into the "inflation index" that allegedly existed as of August 29, 2005 (which State Farm Fire and State Farm Mutual, as co-principal, represent would result in only an approximately 2% increase in coverage). In fact, State Farm Fire and State Farm Mutual, as co-principal, calculated Plaintiffs' inflation coverage in late October, 2005, and again

in 2006 based upon an alleged inflation index that existed on the date of loss. These calculations, which were put into writing in the Plaintiffs' claims file, were outright misrepresentations of fact about the amount of coverage available under Plaintiffs' State Farm Fire homeowner's policy.

95. State Farm Fire's and State Farm Mutual's, as co-principal, calculation of inflation coverage based upon an inflation index that existed on the date of loss defies the language of the subject policy, and the logical intent and purpose of the inflation index – to make sure that the amount of coverage available when a claim is paid is adjusted for inflation to give the insured the benefit of the value of coverage he acquired when the policy was purchased, based upon then existing market conditions. The net result is that State Farm Fire and State Farm Mutual, as co-principal, are improperly misrepresenting the amount of coverage available to the Plaintiffs, and hundreds of other Mississippi insureds, by tens of thousands of dollars, all to the financial benefit of State Farm and the extreme detriment of the Plaintiffs, and similarly situated State Farm insureds.

96. By issuing the subject policies to the Plaintiffs, and accepting premium payments from them, State Farm Fire and State Farm Mutual, as co-principal, contractually agreed to pay for losses covered by the policy under Mississippi law. State Farm Fire, working in concert with and/or at the direction of State Farm Mutual as co-principal, refused and continues to refuse to pay these legitimate claims, and thus breached its contracts of insurance with the Plaintiffs. Fire and State Farm Mutual, as co-principal, are liable to the Plaintiffs for failure to conduct a proper and timely investigation, breach of duty of good faith and fair dealing, and breach of contract; and owe the Plaintiffs damages under the terms of the subject contracts of insurance and Mississippi law, together with interest on said amounts for from the date of denial through the

date of payment in amount not less that 10% per year. Plaintiffs are seeking the entire amounts of their losses spawned by Hurricane Katrina, up to the limits of all inflation adjusted coverages offered under the subject policies of insurance.

97. Plaintiffs demand payment of the above, plus all other contractual benefits owed to them under the terms of the State Farm Fire policies, as well as and extra-contractual damages recoverable under Mississippi law.

## ADDITIONAL CAUSES OF ACTION AGAINST STATE FARM MUTUAL

98. State Farm Mutual knew that decisions made by it as a result of consulting and claims services performed on Hurricane Katrina claims would impact the rights of Plaintiffs and other State Farm policyholders. State Farm Mutual participated in the claims conduct of State Farm Fire and knew that said conduct constituted a breach of the duties owed to Plaintiffs. State Farm Mutual wrote the wind water protocol that included an extra-contractual requirement of discernible wind damage for coverage, and gave substantial assistance and encouragement to State Farm Fire in the claims processes that led to the denial of Plaintiffs' claims, including but not limited to the promulgation of the wind/water protocol.

99. State Farm Mutual employed, supervised and directed individuals who were involved in decisions impacting the claim of Plaintiffs.

100.      State Farm Mutual's actions caused and contributed to the damages to Plaintiffs, as set forth throughout this Complaint.

## WAIVER AND ESTOPPEL

101.       State Farm Fire and State Farm Mutual, as co-principal, are estopped from denying the subject business contracts provide coverage for loss of income suffered as a result of

the necessary interruption of Dancel's business activities due to Hurricane Katrina's destruction of the premises at 10265 Rodriguez Street, D'Iberville, Mississippi 39540, as set forth above.

102.     State Farm Fire and State Farm Mutual, as co-principal, are also estopped from denying coverage under the subject homeowner's policy, because they waived their right to conduct a full and adequate investigation in accordance with the terms of the subject policy, and Mississippi law.

## FRAUDULENT CLAIMS PRACTICES AND CIVIL
## CONSPIRACY OF STATE FARM DEFENDANTS

103.     The massive number of homes destroyed by Hurricane Katrina left State Farm Fire facing huge losses after Hurricane Katrina. State Farm Mutual, individually and/or as co-principal, and State Farm Fire made an initial assessment of the magnitude of the loss. Defendants then conceived, conspired, and instituted a fraudulent course of claims practices to be applied to Katrina "substantial damage claims", including that of the Plaintiffs.

104.     State Farm Fire and State Farm Mutual combined for the purpose of accomplishing an unlawful purpose, namely the wrongful denial of Hurricane Katrina claims such as Plaintiffs.

105.     Defendants utilized their separate corporate statuses as a means to enable the accomplishment of the unlawful purpose(s) at issue.

106.     The claim of the Plaintiffs were wrongfully denied pursuant to Defendants' Katrina –specific "top down" scheme of fraudulent and deceptive claims practices.

107.     State Farm Fire, acting in concert with State Farm Mutual, in effect re-wrote its contract and its claims procedures for substantial damage cases where the property may have been contacted by storm surge during the Hurricane and embarked on an intentional course of pre-litigation and post-litigation conduct, fraudulently concealed from Plaintiffs and others,

deliberately designed to deny legitimate claims covered under the State Farm Fire contract and Mississippi law.

108.     The actions of State Farm Fire and State Farm Mutual constitute a deliberate course of company-wide fraudulent and/or improper post-Hurricane Katrina claims handling practices by which State Farm Fire and State Farm Mutual intentionally undertook to defraud and/or mistreat the Plaintiffs and other similarly situated State Farm insured homeowners, as well as others.

109.     The scheme included post-Katrina modification of policy coverage provisions and employment by State Farm Mutual and State Farm Fire of improper or absent procedures fraudulently concealed from Plaintiffs and other homeowners who were expecting and relying on good faith handling of their claims by State Farm.

110.     Said actions by the State Farm Defendants constitute civil conspiracy, fraud, fraudulent concealment, and fraudulent inducement, as well as bad faith claims handling on an institutional basis in the handling by State Farm Mutual and State Farm Fire of Katrina substantial damage claims.  The actions by Defendants were intended to, and did, result in the intentional and fraudulent denial of the claims of the Plaintiffs and others whose homes were significantly damaged by Hurricane Katrina.

111.     State Farm Mutual aided and abetted State Farm Fire's fraud by (a) ordering or inducing State Farm Fire's conduct knowing of the conditions under which State Farm Fire's conduct was done and/or intending the consequences of said conduct, or (b) knowing that State Farm Fire's conduct constituted a tortious breach of duty and giving substantial assistance or encouragement to State Farm Fire, or (c) giving substantial assistance to State Farm Fire in

accomplishing a tortious result, and State Farm Mutual's conduct, separately considered, constitutes a breach of duty to Plaintiffs.

112.    The actions of State Farm Fire and State Farm Mutual caused or contributed to the damages of the Plaintiffs.

113.    State Farm Fire conspired with State Farm Mutual to wrongfully, fraudulently and/or unlawfully: impose extra-contractual requirements for coverage on Hurricane Katrina claims, including the Plaintiffs'; abandon State Farm Fire's, and State Farm Mutual's, as co-principal, duty to conduct full and thorough investigations on Hurricane Katrina claims, including the Plaintiffs'; formulate and utilize fraudulent claims practices on Hurricane Katrina claims, including the Plaintiffs'; and to wrongfully deny Hurricane Katrina claims, including the Plaintiffs'.

## DAMAGES

114.    As the proximate result of the aforesaid wrongful conduct of Defendants, and each of them, as set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiffs have suffered actual damages in the amount of the full inflation adjusted contract damages under all coverage parts of the subject policies of insurance, including but not limited to coverage for the O'Keefe's dwelling; additional structures; contents at their home; additional living expenses incurred for having to live outside of their substantially destroyed home; and coverage for damage to the business premises located at the insured property on Rodriguez street, and for loss of business income from the necessary interruption of business operations conducted from said premises, including the business operations of Dancel, for the time period encompassing the date of the Hurricane, August 29, 2005, through the present.

115.     As a further proximate result of Defendants', and each of their, acts and omissions, as set forth above,  the Plaintiffs suffered the damages discussed throughout this Complaint, and those set forth herein, including but not limited to loss of insurance premiums, severe mental and emotional distress, anxiety, worry, personal financial expenses, and other incidental damages all to the Plaintiffs' general damage, all of which were foreseeable to Defendants at the time of, and in the event of the acts and omissions discussed in the preceding paragraphs.

116.     As the proximate result of the aforesaid wrongful conduct of Defendants, and each of them, set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiffs have also been forced to retain their own engineers and other experts, at considerable expense, to hire attorneys, and to incur substantial time and expense in pursuing this civil action to compel State Farm Fire, and State Farm Mutual as co-principal to pay the benefits due to the Plaintiffs under the subject policies of insurance.  Delay in payment of claims is an integral, and for Defendants profitable, part of the scheme of fraudulent, tortious, and bad faith claims practices giving rise to this suit. Said delay, intended by Defendants, has exacerbated the extra-contractual damages suffered and incurred by the Plaintiffs, for all of which damages should be awarded in this action.

117.     Some or all of the acts and omissions of Defendants, and each of them, described in all of the preceding paragraphs, which are fully incorporated herein, were grossly negligent; and/or were attended by circumstances of misrepresentations of material facts; malice; willful and wanton conduct; and/or were committed with gross, reckless, and /or callous disregard for the rights of the Plaintiffs. As such, the Plaintiffs are entitled to an award of punitive damages from and against the Defendants, and each of them, in an amount sufficient to punish

Defendants, and each of them, for their wrongdoings, and to deter Defendants, and others similarly situated; from committing similar outrageous acts in the future.

118.    The acts and omissions of Defendants further justify the imposition of consequential damages and attorneys' fees, in addition to punitive damages.

WHEREFORE PREMISES CONSIDERED, Plaintiffs sue and demand judgment from and against the Defendants, and each of them, jointly and severally,  for actual and compensatory damages in the amount of their losses, up to the inflation adjusted limits of all damages available under the subject policies of insurance, additional living expenses from the time of Hurricane Katrina through the present; loss of business income from the time of Hurricane Katrina through the present, and for extra-contractual damages in an amount sufficient to compensate the Plaintiffs for the anxiety, worry, mental and emotional distress, lost time, personal expenses and other incidental and consequential damages they have suffered as a result of Defendants' conduct, plus consequential damages they have suffered as a result of Defendants' conduct, including reasonable attorneys' fees for having to prosecute these claims, and expenses incurred in the prosecution of this claim, plus pre-judgment interest and post-judgment interest in the amount allowed by law, but not less that 10% per annum.

Plaintiffs further pray that punitive damages be assessed against the Defendants, and each of them, in an amount sufficient to punish Defendants for their wrongful conduct, and to deter like conduct in the future, and to serve as an example and a warning to others, so as to deter other insurance companies and consultants from engaging in a similar course of conduct.  Plaintiffs further pray for any and all additional relief, in favor of the Plaintiffs, deemed appropriate by this Honorable Court.

Respectfully submitted, this the 15th day of April, 2009.

**DANIEL B. O'KEEFE, CELESTE A. FOSTER
O'KEEFE, AND THE DANCEL GROUP, INC.,
PLAINTIFFS**


By: */s/ Christopher C. Van Cleave*
    CHRISTOPHER C. VAN CLEAVE (MSB #10796)

CLYDE H. GUNN, III (MSB #5074)
CHRISTOPHER C. VAN CLEAVE (MSB #10796)
W. CORBAN GUNN (MSB #101752)
DAVID N. HARRIS, JR. (MSB #100790)
CORBAN, GUNN & VAN CLEAVE, P.L.L.C.
P.O. Drawer 1916
Biloxi, MS 39533-1916
Telephone: (228) 432-7826
Facsimile: (228) 456-0998
Email: christopher@cgvclaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, undersigned counsel of record, hereby certify that I have this day electronically filed

the foregoing with the Clerk of the Court using the EFC system which sent notification of such

filing to the following:

B. Wayne Williams, Esq.
Dan W. Webb, Esq.
Roechelle R. Morgan
Paige C. Bush, Esq.
Webb, Sanders, & Williams, PLLC
363 North Broadway
Post Office Box 496
Tupelo, Mississippi 38802
(662) 844-2137 (off)
wwilliams@webbsanders.com
RRM@webbsanders.com

**Attorneys for State Farm Fire & Casualty Company
And Marshall J. Eleuterius**


Respectfully submitted, this the 15th day of April, 2009.

DANIEL B. O'KEEFE, CELESTE A. FOSTER
O'KEEFE, AND THE DANCEL GROUP, INC.,
PLAINTIFFS


By:*/s/ Christopher C. Van Cleave*
CHRISTOPHER C. VAN CLEAVE (MSB #10796)