**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DANIEL B. O'KEEFE and**
**CELESTE A. FOSTER O'KEEFE,**
**Individually and d/b/a THE DANCEL GROUP, INC.;**                    **PLAINTIFFS**
**and THE DANCEL GROUP, INC.**

                                                    **Civil Action No.:  1:08cv600-HSO-LRA**

**VS.**

**STATE FARM FIRE AND CASUALTY COMPANY;**
**MARSHALL J. ELEUTERIUS; And John and Jane**                    **DEFENDANTS**
**Doe Defendants A-H**


**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR PROTECTIVE ORDER TO LIMIT DISCOVERY RE:  USE OF**
**ENGINEERS, CLAIMS BY OTHER POLICYHOLDERS, STATE FARM'S HURRICANE**
**DEDUCTIBLE, "WINDSTORM" COVERAGE/DAMAGE, MISSISSIPPI DEPARTMENT OF**
**INSURANCE BULLETINS, AND "INFLATION PROTECTION" PROVISIONS**


**(EXPEDITED BRIEFING AND HEARING REQUESTED)**

## TABLE OF CONTENTS

**PAGE**

I.     Introduction ................................................................................................1

II.    Pertinent Factual Background ......................................................................2

III.   Law And Argument .....................................................................................2

      A.     Examination Regarding State Farm's Use of Engineers Should Be Barred ............3

      B.     Examination Relating To Claims Made By Other Insureds Should Be Barred.......4

      C.     Examination Relating To The Hurricane Deductible In Plaintiffs' Homeowners' Policy Should Be Barred................................................................................7

      D.     Examination Relating To Whether Plaintiffs' Home, Business or Personal Property was Damaged By A "Windstorm" Should Be Barred..............................9

      E.     Examination Relating To Mississippi Department of Insurance Bulletins Should Be Strictly Limited......................................................................................11

      F.     Examination Relating To The "Inflation Protection" Provisions of State Farm's Policies Should Be Barred ......................................................................13

IV.    Conclusion ...................................................................................................14

Comes now STATE FARM FIRE AND CASUALTY COMPANY ("State Farm") and files this memorandum in support of its Motion For Protective Order To Limit Discovery Re: Use Of Engineers, Claims By Other Policyholders, State Farm's Hurricane Deductible, "Windstorm" Coverage/Damage, Mississippi Department Of Insurance Bulletins, And "Inflation Protection" Provisions, and for cause would show unto the Court as follows, to wit:

## I.  INTRODUCTION

State Farm respectfully submits this memorandum in support of its motion for a protective order, pursuant to Fed. R. Civ. P. 26(c)(1)(A), (D),[1] to forbid requests for discovery – particularly examination during depositions – concerning State Farm's procedures and practices regarding the use of engineers in handling claims under its homeowners and other property policies, or State Farm's handling of any individual claims other than those filed by Plaintiffs.  Requests for discovery concerning the Hurricane Deductible in State Farm's policies, whether Plaintiffs' home, business or personal property was damaged by "windstorm," Mississippi Department of Insurance bulletins, and the "inflation protection" provisions of State Farm's policies should also be forbidden or restricted as set forth below.

Indeed, through documents produced by Plaintiffs, informal and formal communications between counsel, it has become clear to counsel for State Farm that Plaintiffs intend to confront State Farm witnesses at deposition[2] with totally irrelevant documents relating to these subjects and to examine the witnesses thereon.

Accordingly, State Farm seeks a protective order from this Court prohibiting Plaintiffs' counsel from questioning State Farm witnesses at deposition regarding the aforementioned topics.

---

[1] All references herein to "Rules" are to the Federal Rules of Civil Procedure unless otherwise expressly noted.

[2] Pursuant to Local R. 7.2(H), State Farm respectfully requests that this Court set expedited briefing and ruling on this motion, prior to October 30, 2009, the currently scheduled date of Lecky King's deposition and because the parties are currently exchanging dates for other depositions as well.

16

## II.  PERTINENT FACTUAL BACKGROUND

The instant case arises out of State Farm's adjustment of claims filed by Plaintiffs Daniel O'Keefe, Celeste Foster O'Keefe and The Dancel Group for business losses and damage to a property located at 12901 Hanover Dr., Ocean Springs, Mississippi, 39564 caused by Hurricane Katrina.  (*See*, *e.g*., Second Amended Complaint ("SAC") ¶¶ 10-15, 19; Third Amended Complaint ("TAC") ¶¶ 1, 13-24, 30-33.)

It is undisputed that State Farm never requested an engineer to assist with the adjustment of any of Plaintiffs' claims and no engineer working on behalf of State Farm ever visited the subject property. (*See*, *e.g*., Homeowners' Claims File (Activity Log) at HO-24-Z204-064-100273-296 attached to the Motion as Exhibit "A")

It is also undisputed that Plaintiffs maintained a flood insurance policy for the 12901 Hanover Dr. property, and that they received a policy limits payment under this policy on September 12, 2005.  (*See* Flood Claims File (Payments Log) at FL-24-Z204-136-100047 attached to the Motion as Exhibit "B")

## III.  LAW AND ARGUMENT

Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  However, the Court has the authority to prohibit a plaintiff from proceeding with a deposition, or to limit a deposition's scope, pursuant to Fed. R. Civ. P. 26(b)(2)(c), which provides in pertinent part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules... ***shall be limited by the court*** if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, ***and the importance of the proposed discovery in resolving the issues***.

(emphases added).  The Rules authorize "for good cause," the Court to "make any order which justice requires to protect a party," including ordering that discovery not be had, or be had only subject to appropriate limitations.  Fed. R. Civ. P. 26(c).  The Fifth Circuit also recognizes that Rule 26(c) gives

courts broad discretion to enter protective orders when appropriate.  *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985).

To determine the relevance of discovery, courts must focus on the parties' "actual claims and defenses."  Fed R. Civ. P. 26(b)(1), advisory committee note.  Irrelevance is grounds for quashing or limiting discovery.  *See Micro Motion Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1323 (Fed. Cir. 1990). Depositions may be disallowed or restricted to certain topics if, among other reasons, they are irrelevant or unduly burdensome.  *Matter of Angeline Refining Co.,* 890 F.2d 1312, 1320-21 (5th Cir. 1989).  Such control is particularly necessary for the large number of Katrina litigation cases that come before this Court.  Thus, discovery in this case should be limited to matters *relevant* to Plaintiffs' actual claims and the property and polices at issue.

### A.    Examination Regarding State Farm's Use of Engineers Should Be Barred

It is anticipated that Plaintiffs will seek to examine State Farm's witnesses regarding the alteration or cancellation of engineering reports related to Hurricane Katrina claims and other matters related to State Farm's use of engineers.  In light of the fact that no engineer ever inspected Plaintiffs' property or was ever requested to do so, such evidence would be completely irrelevant in the instant case and examination relating to such issues unlikely to lead to discovery of admissible evidence.  Indeed, this Court has already found under similar circumstances that such information is not discoverable.

> The Court finds that documents relating to the alteration of engineering reports are irrelevant to this lawsuit and not calculated to lead to the discovery of admissible evidence because there was no engineer assigned to the [Plaintiffs'] property. Hence there was no engineering report, let alone an altered engineering report.

*Marion v. State Farm Fire & Cas. Co.*, 1:06-cv-969-LTS-RHW, at *7 (S.D. Miss. Feb. 13, 2008) (denying motion to compel production of documents); *see also*, *Marion*, Mar. 26, 2008 [231] at 5 (granting protective order to limit scope of examination of Fed. R. Civ. Proc. 30(b)(6) witness; "Plaintiffs seek information regarding policies and procedures for the use of engineers. [I]nformation

3

relating to the alteration of engineering reports is irrelevant to this lawsuit because no engineer was assigned to the Plaintiffs' property claim.")

Moreover, to the extent this Court has allowed discovery into State Farm's procedures and directives relating to use of engineers in Hurricane Katrina cases, it has strictly limited the scope of such discovery to procedures "that would have been available to [the adjuster] or others directly involved in the adjustment of the [Plaintiffs'] claim." *Marion*, Feb. 13, 2008 at 7. For example, in denying a motion to compel production of emails relating to use of engineers, this Court observed "[u]nless these communications relate specifically to the [Plaintiffs'] claim, the Court finds they need not be produced. The mere fact that [a State Farm employee] was involved in discussions with other State Farm personnel about claims handling procedures, does not make the emails discoverable in this case." *Id*. at 9 & 10; *see also*, *Marion*, Mar. 26, 2008 [231] at 5 ("This allowance does not include a detailed exploration of the drafting or editing of such policies and procedures [related to the use of engineers]. . . .").

Here, as in *Marion*, no engineer was ever assigned to Plaintiffs' property claim. (*See*, *e.g*., Homeowners' Claims File (Activity Log) at HO-24-Z204-064-100271-283.) Indeed, the record in this case is devoid of any evidence that use of an engineer in conjunction with adjusting Plaintiffs' claims was even contemplated. Accordingly, discovery into State Farm's procedures relating to use of engineers in the claims handling process is irrelevant to this case, not likely to lead to the discovery to admissible evidence, and should not be permitted. Instead, discovery related to engineering issues should be limited to one question: why the adjuster handling Plaintiffs' claims did not feel an engineer was necessary.

### B.    <u>Examination Relating To Claims Made By Other Insureds Should Be Barred</u>

State Farm anticipates that Plaintiffs will seek to examine State Farm witnesses regarding claims filed by other State Farm insureds, including but not limited to flood claims, State Farm's use of

engineers and the general policies and procedures State Farm used in adjusting such claims.  Any such

inquiry, however, is beyond the scope of discovery permissible in this case.

This Court has long recognized that the losses and claims resulting from Hurricane Katrina are

unique.  Specifically, in the context of denying class certification in several other Katrina cases, this

Court has held "claims were handled by [State Farm] in a variety of ways" and despite superficial

similarity between claims, evidence of other claims is nonetheless irrelevant and inadmissible.  *See

Guice v. State Farm Fire & Cas. Co.*, No. 1:06CV001 LTS-RHW, 2007 WL 912120, at *1 (S.D. Miss.

Mar. 22, 2007) ("*Guice II*"); *Guice v. State Farm Fire & Cas. Co.*, No. 1:06CV1-LTS-RHW, 2006 WL

2359474 (S.D. Miss. Aug. 14, 2006) ("*Guice I*"); *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05 CV 436

LTD RHW, 2006 WL 1066645 (S.D. Miss. Feb. 23, 2006).

> For example, in *sua sponte* denying class certification in *Comer* this Court found:
>
> Each property owner in Mississippi who had real and personal property damaged in
> Hurricane Katrina is *uniquely situated*.  No two property owners will have experienced
> the same losses.  The nature and extent of the property damage the owners sustain from
> the common cause, Hurricane Katrina, will vary greatly in its particulars, depending on
> the location and condition of the property before the storm struck and depending also on
> what combination of forces caused the damage.  Thus, at least with respect to the issue of
> damages, each individual claim will require particular evidence to establish the cause of
> and the extent of the loss.

*Comer*, 2006 WL 1066645*,* at *2 (emphasis added).  The decisions in *Comer* and *Guice I* were rendered

prior to the trial of any Hurricane Katrina action against State Farm.  Following three trials, this Court

again denied class certification in *Guice II*, reaffirming its earlier conclusions.  *Guice II*, 2007 WL

912120, at *1.  As the Court observed in rejecting Ms. Guice's motion for reconsideration of class

certification:

> Three "slab cases" have now been tried to verdict, and I have learned some important
> lessons from these trials, lessons that are relevant to the merits of this motion: 1) the
> forces exerted by Hurricane Katrina varied substantially from one location along the
> Mississippi Gulf Coast to another; 2) the forces exerted against a particular building
> varied substantially depending on the building's proximity to the shore line; 3) the
> damage any given building may have sustained varied substantially depending on its age,

quality of construction, and even its design (e.g. gable roof compared with hip roof) and orientation to the forces exerted by the storm, particularly the wind; and 4) claims were handled by Defendant in a variety of ways.  These lessons confirm the reasoning of my decisions on the plaintiff's previous motions [103][104] for class certification and inevitably lead me to the conclusion that there are as many differences between the "slab cases" as there are similarities in terms of the evidence available to ascertain the cause of the destruction and damage to these properties.  For this reason, I do not believe there is any procedural advantage in creating a class of State Farm "slab cases" that would not be offset by the factors that will ultimately require the individual treatment of these claims.

*Id*. at *1.  The Court also went on to state that "[t]he proof available in any particular 'slab case' will vary greatly from the evidence in other 'slab cases.'  Location along the coast, proximity to the shore line, the quality of construction, and the way the claims were handled are only four of the many possible variations that may exist."  *Id.* at * 2.  Other district court judges within the Fifth Circuit have followed this Court in making similar rulings on Hurricane Katrina cases.  *See, e.g., Aguilar v. Allstate Fire & Cas. Ins. Co.,* No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007); *Spiers v. Liberty Mut. Fire Ins. Co.*, No. 06-4493, 2006 WL 4764430 at *1 (E.D. La. Nov. 21, 2006); *Chetta v. State Farm & Cas. Co.,*  No. 06-4662, 2007 WL 1233546 at *1 (E.D. La. Apr. 25, 2007).

Indeed, in ruling on various discovery motions in *Marion,* this Court consistently emphasized that discovery would only be permissible to the extent that it directly related to Plaintiffs' individual claim.  *See generally*, *Marion*, Feb. 13, 2008 [200], *and id*. at 5 (citing *Muller v. State Farm*, No.  1:06-cv-95 [44]) ("In prior cases, the Court has been very specific in what it has required State Farm to produce with respect to the claim files of other insureds.");  *see also*, *Leonard v. Nationwide Ins. Co.*, Civil Action No. 1:05-cv-00475 (S.D. Miss. June 27, 2006) (evidence of handling of other claims may be probative if the other property is within a "reasonably close physical proximity" and the adjustment process includes adjusters who handled the claim at issue.").[3]  There is no reason for this Court to deviate from this approach here.

---

[3] The Fifth Circuit has also recognized the risks and limited value of evidence relating to "other claims."  In affirming a district court's exclusion of evidence of other litigation, the Fifth Circuit noted: "The [evidence of other lawsuits] would be

*(cont'd)*

Moreover, allowing discovery into claims handling practices for polices other than those at issue raises serious due process concerns. It is constitutionally impermissible for this case to be "used as a platform to expose, and punish, the perceived deficiencies of State Farm's [other] operations" rather than focusing on "the conduct directed toward the [Plaintiffs]." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 420 (2003). Thus, allowing Plaintiffs to use this case as a spring board for launching a broad ranging inquiry into various State Farm policies and procedures in the hope that enough information might be gleaned to create the general appearance of impropriety and subsequently portray State Farm as a "bad actor," implicates not only the limitations on discovery imposed by Rule 26, but also constitutional issues of due process.

Accordingly, Plaintiffs should not be permitted to examine State Farm witnesses regarding claims filed by other State Farm insureds or, at a minimum, the scope of any such examination should be tightly limited.

### C.      Examination Relating To The Hurricane Deductible In Plaintiffs' Homeowners' Policy Should Be Barred

State Farm anticipates that Plaintiffs will seek to examine State Farm witnesses regarding State Farm's hurricane deductible. Any such inquiry, however, is beyond the scope of discovery permissible in this case.

Citing State Farm's hurricane deductible endorsement, Plaintiffs' argue in the TAC that "[b]ased upon representations of coverage made by State Farm Fire . . . and its agents, and the express and implicit policy coverages, Plaintiffs reasonably relied upon said representations and purchased the subject policy . . . with a reasonable expectation that State Farm Fire, and State Farm Mutual as co-

_____
*(cont'd from previous page)*
relevant to [plaintiff's] 'motive' theory. However, the district court concluded that [plaintiff's] true reason for seeking to introduce the evidence was to paint [defendant] as a 'bad' company. The court did not abuse its discretion by concluding that any probative value the [other lawsuit] evidence might hold was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation." *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004).

principal, would pay for all losses caused by hurricanes." (TAC ¶ 29; *see also, Id.* ¶¶ 27-28.) However, the argument that State Farm's hurricane deductible endorsement somehow suggests that State Farm's homeowners' policy provides coverage for all damage caused by a hurricane has already been decisively rejected by the Fifth Circuit. *See Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346, 351-52, 355 (2007); *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438-40 (2007). As the Fifth Circuit held in *Tuepker*, "[t]he Hurricane Deductible Endorsement clearly states that a higher deductible percentage will apply for losses attributable to hurricane occurrences. There is nothing in the language of the endorsement, even when read in conjunction with the loss exclusion provisions, that ***expands or changes any other aspect of the policy***." *Tuepker*, 507 F.3d at 355 (emphasis added).

Indeed, the Fifth Circuit has already held that State Farm's homeowners' policy "unambiguously" excludes coverage for damage caused by Hurricane Katrina's storm surge. *Tuepker*, 507 F.3d at 353 ("We conclude that under Mississippi law, the Water Damage Exclusion is valid and that the storm surge that damaged [plaintiffs'] home is a peril that is unambiguously excluded from coverage under State Farm's policy."). The Fifth Circuit has also rejected efforts to side-step these rulings regarding the clear language of the insurance policy merely by alleging "reliance" on other representations, such as those made by insurance agents:

> Under Mississippi law, a party's reliance on representations by an insurance agent that contradict the policy language is unreasonable. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 464 (5th Cir.2003). The insured has an affirmative duty to read the policy. *Smith v. Union Nat'l Life Ins. Co.*, 286 F.Supp.2d 782, 788 (S.D.Miss.2003); *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 922 (Miss.1980). Whether the policy was read or not, however, constructive knowledge of its contents is imputed to the policyholder. *Ross*, 344 F.3d at 464 (quoting *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.*, 584 So.2d 1254, 1257 (Miss.1991)). An agent's oral representations can modify the policy only if it is ambiguous; when the contractual language is plain, there can be no modification.
>
> ***
>
> [R]eliance on [the agent's] statements was objectively unreasonable in light of the policy language clearly excluding water damage, including damages caused by a flood.

*Leonard*, 499 F.3d at 438, 440; *accord Payment v. State Farm Fire & Casualty Co.*, 2008 WL 5381925, at *2 (S.D. Miss. Dec. 18, 2008).

Accordingly, there can be no genuine issue in this case as to whether State Farm's hurricane deductible endorsement caused Plaintiffs to have a "reasonable expectation . . . that State Farm Fire, and State Farm Mutual as co-principal, would pay for all losses caused by hurricanes,"[4] since such a belief would be "objectively unreasonable" as a matter of law.  Therefore, discovery regarding the hurricane deductible endorsement is irrelevant to the matters at issue, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of permissible discovery in this case.

D.    **Examination Relating To Whether Plaintiffs' Home, Business or Personal Property was Damaged By A "Windstorm" Should Be Barred**

State Farm anticipates that Plaintiffs will seek to examine State Farm witnesses regarding whether damage to Plaintiffs' home, business or personal property resulted from a "windstorm," and whether coverage is available for such damage under State Farm's policies.  (*See*, *e.g.*, TAC ¶¶ 32-33.) Any such inquiry, however, is beyond the scope of discovery permissible in this case.

The Mississippi Supreme Court and Fifth Circuit have already determined the meaning of the term "windstorm" as used in property insurance policies.  Under these decisions, damage is caused by the covered peril "windstorm" if it is directly caused by *wind.  See, e.g., Lunday v. Lititz Mut. Ins. Co.*, 276 So. 2d 696, 699 (Miss. 1973) (under specified peril coverage for "windstorm," plaintiffs had burden to prove that their personal property was actually damaged "by direct action of the *wind*") (emphasis added); *Lititz Mut. Ins. Co. v. Boatner*, 254 So. 2d 765, 767 (Miss. 1971) (in Hurricane Camille case, holding that to establish "windstorm damage," it is "sufficient to show that *wind* was the proximate or efficient cause of loss or damage") (emphasis added); *Kemp v. Am. Universal Ins. Co.*, 391 F.2d 533, 535 (5th Cir. 1968) (defining policy term "windstorm" as "'any *wind* . . . of such extraordinary force and

---

[4] (*See* Plaintiffs' TAC ¶¶ 27-29.)

violence as to thereby injuriously disturb the ordinary condition of things insured'") (emphasis added; citation omitted).[5]  As the Mississippi Supreme Court made clear in *Lunday*, a Hurricane Camille case addressing damage under a "specified peril" policy affording coverage for "Direct Loss by Windstorm,"[6] it was not enough for the plaintiff to show that the damage to his business – a rooming house – occurred as a result of the hurricane.  Instead:

> [T]he burden of proof was on the plaintiff to prove that the damages sustained were covered by the peril insured against, that is, by direct action of the wind.  . . . [W]hen plaintiff proves that, he negatives the proposition that the damages were caused by tidal or surface water.

*Lunday*, 276 So. 2d at 699.

State Farm knows of no case in Mississippi (or any other jurisdiction) that even suggests, much less holds, that an insured can meet his burden simply by establishing that his loss was caused by a hurricane and therefore *ipso facto* by "windstorm."  Stated otherwise, the fact that a hurricane may be called a "windstorm" does not mean that water damage sustained during a hurricane is covered windstorm damage.

Significantly, the Fifth Circuit rejected nearly the same argument made by Plaintiffs here in *Broussard v. State Farm Fire & Casualty Co.*, 523 F.3d 618 (5th Cir. 2008), relying upon the Mississippi case law cited above.  Specifically, the Fifth Circuit held that "[t]he district court erred when it found that the destruction of the Broussards' personal property by Hurricane Katrina was sufficient to establish the separate assertion that the property was destroyed by 'windstorm,' a 'named peril' under the Broussards' personal property coverage." *Id.* at 624.  The Fifth Circuit noted that in *Lunday*, "[a]lthough there was no question that the insured property was destroyed during Hurricane Camille, the *Lunday*

---

[5]    *See also Firemen's Ins. Co. v. Schulte*, 200 So. 2d 440, 442 (Miss. 1967) (in Hurricane Betsy case involving "Windstorm" policy, question for jury was "whether the loss was caused directly by reason of windstorm, or whether water, even if driven by wind, either caused or contributed to, or aggravated the plaintiff's loss").

[6]    *Lunday*, 276 So. 2d at 697.  Similarly, Plaintiff's State Farm policy provides specified peril coverage for personal property for "accidental direct physical loss . . .  caused by . . . Windstorm."

10

court did not find that this automatically established that it was damaged by wind." *Id.*  The Fifth Circuit concluded that likewise in *Broussard* "a stipulation that the Broussards' personal property was destroyed by Hurricane Katrina is insufficient to establish that it was destroyed by a windstorm, since Hurricane Katrina unleashed both wind and water forces." *Id.* at 624-25.

In short, the Fifth Circuit has already disposed of the argument that Plaintiffs' losses were "caused by Hurricane Katrina, a 'windstorm', [thereby] triggering all coverages under Plaintiffs'" policy.  (TAC ¶ 32.)  The fact that Plaintiffs' here allege such "windstorm" coverage was also available under their business insurance policy is of no moment, since there is no difference between the language in State Farm's business policy and the State Farm homeowners' policy at issue in *Broussard* that would alter the result or reasoning in *Broussard*.  There is simply no genuine issue in this case as to whether the "windstorm" language in Plaintiffs' policies resulted in coverage for losses caused by Hurricane Katrina. Thus, discovery regarding whether Hurricane Katrina was a "windstorm" within the meaning of Plaintiffs' policies and/or meaning of this language in Plaintiffs' policies is irrelevant to the matters at issue, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of permissible discovery, and should not be permitted.

E.    **Examination Relating To Mississippi Department of Insurance Bulletins Should Be Strictly Limited**

State Farm anticipates that Plaintiffs will seek to examine witnesses regarding certain bulletins issued by the Mississippi Department of Insurance ("MDI") relating to the MDI's views as to insurers' handling of Hurricane Katrina claims and insurers' obligations under their homeowners insurance policies.  (*See*, *e.g.*, TAC ¶¶ 35, 37-38.)  Any such inquiry, however, should be barred, or, at a minimum, strictly limited as described below, since failure to limit such discovery will result in waste of time, exploration of irrelevant issues and is not likely to lead to the discovery of admissible evidence.

Mississippi courts have already ruled in numerous cases that MDI bulletins and related correspondence are generally inadmissible.  For example, in *Huynh v. State Farm Fire & Casualty Co.*, this Court held that such documents were admissible only for purposes of impeachment or if State Farm put them at issue by raising reliance on the bulletins as a defense:

> [T]he MDI bulletins and related correspondence are not admissible unless State Farm responded to them in one manner and acted in another, or unless State Farm raises reliance on the MDI bulletins for other purposes.

No. 1:06CV1061-LTS-RHW, 2008 WL 80759, at *1 (S.D. Miss. Jan. 7, 2008); *accord Payment v. State Farm Fire & Cas. Co.*, No. 1:07CV1003-LTS-RHW, 2008 WL 5381925, at *1 (S.D. Miss. Dec. 18, 2008); *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06CV489-HSO-RHW, 2008 WL 3050417 at *4 (S.D. Miss. July 25, 2008); *McIntosh v. State Farm Fire & Cas. Co.* , No. 1:06CV1080-LTS-RHW, 2008 WL 1776409 at *2, (S.D. Miss. April 14, 2008).

Indeed, any claim handling guidelines or procedures that State Farm may have used in adjusting or handling Plaintiffs' claim have no relevance whatsoever to whether Plaintiffs' loss is covered under the terms of State Farm's homeowners policy and, if so, the extent of the covered damages.[7]  The same is true of any documents or correspondence in which State Farm or the MDI may have described or referred to such guidelines or procedures.  Rather, MDI bulletins and correspondence will be admissible, if at all, on Plaintiffs' extra-contractual and punitive damages claims and then only for impeachment

---

[7] As the Supreme Court of Mississippi unambiguously held in *Hartford Underwriters v. Williams*, Mississippi law does not permit the jury to hear allegations or evidence regarding any alleged mishandling of an insurance claim before first deciding whether the plaintiff is entitled to coverage.  *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 897 (Miss. 2006) (trial court's erroneous failure to bifurcate trial gave plaintiff "the benefit of introducing evidence of the manner in which [the insurer] handled her claim instead of focusing on the simple issue of whether [the insurer] breached the parties' insurance contract.").  In *Hartford*, the Supreme Court reversed and ordered a new trial because "testimony regarding the close issue of fault most likely was confused with testimony concerning the issue of how [the insurer] investigated fault."  *Id.*  Because "the jury was allowed to consider evidence as to the way [the insurer] conducted its investigation of the accident and ultimately ignored the needs of its insured," a new trial was necessary as a matter of law.  *Id.*; *see also Bridges v. Enter. Prods. Co.*, No. 3:05cv786-WHB-LRA, 2007 WL 571074, at *3 (S.D. Miss. Feb. 20, 2007) (excluding evidence relevant only to punitive damages from liability and compensatory damages portion of trial); *Beck v. Koppers, Inc.*, Nos. 3:03CV60-P-D, 3:04CV160-P-D, 2006 WL 2228876, at *1 (N.D. Miss. Apr. 3, 2006) (noting that "the court will not admit evidence during the first stage of the trial that is only relevant to punitive damages.").

purposes to show that State Farm responded to MDI bulletins or correspondence in one manner, but acted in another.

Accordingly, because MDI bulletins and related correspondence will generally be inadmissible at trial, discovery into such matters should be strictly limited to determining whether "State Farm responded to them in one manner and acted in another" as set forth in *Huynh*, *Fowler*, and *McIntosh*. Moreover, to avoid unnecessary waste of resources, harassment, and delay, ***no discovery*** should be allowed into this subject until, at a minimum, Plaintiffs have made a threshold showing that the bulletins are in issue in this case.

F.    <u>Examination Relating To The "Inflation Protection" Provisions of State Farm's Policies Should Be Barred</u>

As this Court is no doubt aware, Plaintiffs have already moved for declaratory relief and partial summary judgment on the issue of "inflation protection" provisions in State Farm's homeowners' policy. (*See* Docket Nos. 55, 56.)  Moreover, in the TAC, Plaintiffs allege that "State Farm Fire, and State Farm Mutual, are . . . seeking to deny substantial contractual rights to the Plaintiffs" that they claim were due them through "inflation protection" provisions in State Farm's homeowners' policy. (*See*, *e.g*., TAC ¶ 92; *see also, Id*. ¶ 93.)  Accordingly, State Farm anticipates that Plaintiffs will seek to examine State Farm witnesses regarding the "inflation protection" provisions in State Farm's policies.  Any such inquiry, however, is beyond the scope of discovery permissible in this case.

First, as pointed out by State Farm in its Opposition to Plaintiffs' motions for declaratory relief and partial summary judgment, Plaintiffs' legal arguments concerning the construction of State Farm's policies and the effect thereon of the "inflation protection" provision are fatally flawed. (*See* Defendant State Farm's Consolidated Memorandum of Law in Opp'n to Plaintiffs' Motions for Declaratory Judgment And Partial Summary Judgment re: Inflation Coverage Provision at 13-19 [Docket No. 65.)  Plaintiffs have also failed to establish that there is any genuine dispute in this case implicating the

13

"inflation protection" provisions, since Plaintiffs have failed to establish that they sustained covered losses of their personal property beyond the limit of their coverage, which is a necessary prerequisite for triggering the inflation adjustment provision in the first instance. (*See Id.* at 7-13.)

Second, as demonstrated by the fact that Plaintiffs have already moved for declaratory relief and partial summary on this issue, Plaintiffs do not need to take special discovery regarding the inflation protection provisions of State Farm's policy. Rather, the only potentially relevant evidence on this topic is the language of State Farm's policy and matters that are already subject to discovery, i.e. information directly bearing on the alleged cause of Plaintiffs' losses or the total value of such losses.

Accordingly, discovery regarding policies, procedures or practices related to the "inflation protection" provision in State Farm's homeowners' policy is irrelevant to the matters at issue in this case and unlikely to lead to the discovery of admissible evidence. At a minimum, if this Court is not inclined at this time to bar further discovery regarding the inflation protection provisions in State Farm's homeowners' policy, State Farm respectfully requests that this Court stay discovery on this topic until Plaintiffs' motions for declaratory relief and partial summary judgment have been resolved.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown, the Motion should be granted. As revealed by the correspondence attached to the Motion as Exhibit "C", State Farm attempted to resolve these issues with Plaintiffs albeit without avail. Thus, State Farm respectfully requests this Court issue an order limiting discovery – particularly the scope of examination at future depositions of current and former State Farm personnel – as described above.

**RESPECTFULLY SUBMITTED**, this <u>28th</u> day of September, 2009.

**WEBB, SANDERS & WILLIAMS, P.L.L.C.**
363 NORTH BROADWAY
POST OFFICE BOX 496
TUPELO, MISSISSIPPI 38802
(662) 844-2137
DAN W. WEBB, MSB # 7051
B. WAYNE WILLIAMS, MSB #9769
J. DOUGLAS FOSTER, MSB #100641


BY:     <u>/s/ Dan W. Webb</u>
        **DAN W. WEBB**

15

**<u>CERTIFICATE OF SERVICE</u>**

I, Dan W. Webb, one of the attorneys for Defendant, State Farm Fire and Casualty Company, do hereby certify that on September 28, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF which will send a notice of electronic filing to the following:

**Christopher C. Van Cleave, Esq.**
**CORBAN, GUNN & VAN CLEAVE, PLLC.**
**146 Porter Avenue (39530)**
**Post Office Drawer 1916**
**Biloxi, Mississippi 39533-1916**

**THIS** the <u>28</u>th day of September, 2009.

<u>/s/ Dan W. Webb</u>
**DAN W. WEBB**

16