**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **DANIEL B. O'KEEFE and<br>CELESTE A. FOSTER O'KEEFE,<br>Individually and d/b/a THE DANCEL GROUP, INC.;<br>and THE DANCEL GROUP, INC.** | **PLAINTIFFS** |
| **VS.** | **Civil Action No. 1:08cv600 HSO-LRA** |
| **STATE FARM FIRE AND CASUALTY<br>COMPANY; MARSHALL J. ELEUTERIUS;<br>And John and Jane Doe Defendants A-H** | **DEFENDANTS** |

**SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFFS'**

**[273] RESPONSE IN OPPOSITON TO STATE FARM'S [255] [256]
MOTION FOR PROTECTIVE ORDER TO LIMIT DISCOVERY**

**AND**

**[279] RESPONSE IN OPPOSITON TO STATE FARM'S [254]
MOTION FOR PROTECTIVE ORDER RE [CERTAIN] DEPOSITIONS**

COME NOW the Plaintiffs by and through their counsel of record and, pursuant to the Docket Text Entry of the Court dated October 14, 2009, submit supplemental authority, as follows:

1. During the telephonic conference addressing the subject State Farm Motions to limit discovery, the Court directed the parties to provide the Court with supplemental authority in the limited form of other Katrina related opinions from the United States District Court for the Southern District of Mississippi – to the extent the parties feel such materials are relevant to the matters presently before the Court. At the outset, Plaintiffs respectfully submit that rulings from *other* Katrina cases regarding the scope of discovery in *those* cases are **not** relevant to the discovery issues presently before this Court. Rather, the scope of discovery the Plaintiffs are

permitted to explore – and more specifically State Farm's entitlement to a protective order from this Court limiting the scope thereof, are governed by the Federal Rules of Civil Procedure. As addressed in Plaintiffs' prior responses, F.R.C.P. 26(b)(1) (and the applicable case law interpreting same) limit the scope of discovery only to "any non-privileged matter that is relevant to any party's claim or defense;" and provides that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Although the Rules also permit the Court to limit the scope of discovery under certain circumstances, Plaintiffs' prior pleadings clearly provide that a protective order such as that sought by State Farm may <u>only</u> be granted upon a showing of "good cause" by State Farm – and that State Farm may only demonstrate the requisite "good cause" by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). As set forth in Plaintiffs' prior pleadings, State Farm failed to provide the Court with *any* "good cause" that meets the requisite standard.

2. To the extent that other Southern District opinions in Katrina cases may be deemed relevant by this Court, however, Plaintiffs direct the Court to Judge Senter's opinion in *Guice II*, 2007 WL9 912120 (cited on pages 7-8 in State Farm's [256] Memorandum) wherein Judge Senter denied class certification based upon his conclusion that the facts and discovery in each Katrina case will be *unique to the claims in that specific case*. Plaintiffs' [273] [279] Responses to State Farm's Motions go into great detail about the specific content of the claims in Plaintiffs' [145] Amended Complaint – which was filed pursuant to *leave of this Court*, and the Affirmative Defenses asserted in State Farm's Answer thereto. Contrary to State Farm's argument that these claims and defenses amount to nothing more than "needless clutter" (pg. 2 of State Farm's [283]

Reply), it is the nature of these claims and defenses that govern, as mandated by no less authority than the Federal Rules of Civil Procedure, the scope of discovery in this case. As previously argued by Plaintiffs, the claims and defenses in *this* case include claims of institutional fraud and a scheme of fraudulent claims practices, and related claims. These claims are easily distinguishable from the claims at issue in the *Gagne* case relied upon so heavily by State Farm – as the Court can see from a cursory review thereof.[1] As set forth in Plaintiffs' [273] [279] Responses, imposing the limitations on discovery sought by State Farm would prohibit the Plaintiffs from being able to develop the claims they have been granted leave by this Court to file, and inhibit development of their responses to the defenses asserted by State Farm in this litigation – and thereby would violate Plaintiffs' right to due process of law guaranteed by the Constitution.

3.  State Farm also relies heavily on opinions from this Court in *Marion vs. State Farm*, Civil Action No. 1:06CV969-LTS-RHW; and *Lagasse vs. State Farm*, Civil Action No. 1:07CV761-LTS-RHW. In addition to the fact decisions in those cases are not dispositive on the scope of discovery set forth by the Federal Rules, as set forth above, State Farm fails to give the Court a complete and accurate context of those opinions. Specifically, in the *Marion* Court's [200] *Order Granting in Part Plaintiffs' Motion to Compel*, Judge Walker noted on the first page that the discovery rulings in *that case* were governed and formed based on the Court's conclusion that

> as discovery has proceeded in this case, the Fifth Circuit has issued opinions further clarifying and framing some of the issues now in dispute. See *Tuepker v. State Farm,* 507 F.3 346 (5th Cir. 2007); *Leonard v. Nationwide*, 499 F.3d 419 (5th Cir. 2007). Notably, the Fifth Circuit concluded that the water damage exclusion and anti-concurrent causation clause in State Farm's policies are valid, enforceable and unambiguous.

---

[1] See copy of Plaintiffs' [1] Complaint in *Gagne vs. State Farm*, Civil Action No. 1:06cv711LGRRHW, attached as "Exhibit 1". Claims that were dismissed by the Court are so noted in the margins.

(See "Exhibit 5" to State Farm's [283] Memorandum, at page 1). Notably, this conclusion allowed Judge Walker to back away from prior Orders in the same case (that were made in compliance with the Federal Rules of Civil Procedure) – wherein Judge Walker acknowledged the Marions' "case involves more than a simple breach of contract between policyholders and their insurance company," and continued the Trial from the Court's January, 2008 Trial Calendar to enable the Plaintiffs to conduct the "massive scope of discovery involved in developing [the claims set forth in their Complaint]". (The Magistrate Judge's [116] Order is attached as "Exhibit 2" for the Court's convenience). Of course, the referenced conclusions of the Fifth Circuit (and apparently related free pass to State Farm to avoid discovery into claims of institutional, fraudulent claims practices) have now been reversed by the Mississippi Supreme Court in *Corban vs. U.S.A.A.*, No. 2008-IA-00645-SCT. The *Lagasse* Order [232] cited by State Farm, which post-dated the *Marion* Order [200] cited by State Farm by approximately one (1) year, relied almost entirely on the (post-*Leonard* and *Tuepker*) *Marion* rulings cited by State Farm. As such, that discovery Order was likewise based upon a "context" of Katrina decisions that Judge Walker found "framed the issues in dispute" which is <u>no longer valid</u> in light of the *Corban* decision.

    4. Much of what State Farm is *really* seeking to do is to prohibit Plaintiffs from asking deponents in this litigation questions about their knowledge of claims procedures, directives and/or related information reflected in certain documents that were compiled in State Farm training documents and claims procedures, and in files known as "*CAT PL*" files (this is the identifying call number State Farm gave to Hurricane Katrina) that were obtained from certain State Farm personnel by Counsel for these Plaintiffs in other State Farm litigation. For example, Plaintiffs have previously presented this Court with numerous emails by and from Lecky King and others related to State Farm's creation, and unique application for Hurricane Katrina, of

"revised" claims procedures for paying limits on NFIP claims (even before "amended procedures" were formally adopted by the NFIP) – while deferring "investigation into the cause of loss" for the purposes of determining coverage on homeowner's claims. <u>All of those emails (and similar emails and documents related to the other areas in which State Farm is seeking to "limit" the scope of Plaintiffs' discovery, all of which represent Katrina specific claims handling information and directives) came from the "Cat PL files" maintained by Lecky King (a direct participant in denying these Plaintiffs' homeowner's claims) and/or similar "Cat PL files" maintained by State Farm personnel such as David Haddock, Rick Moore, David Randel, Steve Burke, Kirk Angelle, and Joe Caruso, that were obtained by Counsel for these Plaintiffs in other Katrina litigation against State Farm.</u> In the *Marion* case, cited with such frequency by State Farm, Judge Walker ruled that "Plaintiffs **<u>shall be allowed to use during the depositions [of State Farm claims personnel *not limited to Lecky King and David Haddock*] documents from the CAT PL disks of Lecky King and David Haddock that where obtained in conjunction with other litigation</u>**." (See Court's *Order Regarding Discovery and Depositions* [116], attached as "Exhibit 2", pg. 3).

5. Clearly, in order to "use" the whole of those documents in depositions, Plaintiffs must have been allowed (and Counsel herein, who were also Counsel of Record in *Marion* certifies Plaintiffs *were* allowed) to ask deponents in the *Marion* case questions about their knowledge and/or application of those documents and the procedures and other information contained within the CAT PL files, as well as claims procedures produced during discovery, obtained in *other* State Farm related Katrina litigation. Of course, there is nothing "unique" about the King and Haddock documents – the same logic mandates that Plaintiffs in this case should be allowed to

ask State Farm deponents in this case about documents obtained from other State Farm documents in addition to those contained within the Haddock and King Cat Pl files.

6. Indeed, such was the basis of numerous protective orders entered in Katrina cases in which Counsel for these Plaintiffs were Counsel of Record. For example, the ***Consent Protective Order*** [43] in *Lagasse* (and similar Orders in numerous other State Farm cases) expressly provided that "Confidential Information" produced during that litigation could be used for the purposes of that litigation "and/or the purposes of any other action, in which Counsel for these Plaintiffs are Counsel of Record, against State Farm Fire and Casualty Company . . . for losses arising out of Hurricane Katrina . . . ." (See *Consent Protective Order* [43] attached as "Exhibit 3", ¶ 3). Obviously, Counsel for Plaintiffs cannot carry out the dictate or intent of that (or similar) [43] Order(s), and "use" information produced by State Farm in one case in the prosecution of other Katrina related cases – unless Counsel for Plaintiffs are permitted to question State Farm representatives and claims personnel about their knowledge and/or use of information, policies, procedures and/or directives set forth therein. Plaintiffs have produced all such documents (obtained from State Farm in other litigation) to State Farm in this case as part of their Disclosures.

7. In conclusion, State Farm's [254] [255] [256] Motions are nothing more than improper attempts to deny the Plaintiffs their Constitutionally guaranteed due process of law, and an adequate opportunity to develop their claims (and responses to State Farm's defenses) for trial. State Farm's Motions are not supported by the Federal Rules of Civil Procedure or legal precedent interpreting those Rules, nor are they even supported by an accurate reading (in context of pre-*Corban* rulings relying upon erroneous conclusions of the Fifth Circuit regarding

application of Mississippi law) of prior decisions of this Court on Katrina related discovery issues.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the Court enter an Order DENYING State Farm's [254] [255] [256] Motions for Protective Order, and granting any and all relief in favor of the Plaintiffs, including but not limited to an Order that State Farm shall pay Plaintiffs' costs and expenses, including reasonable attorneys' fees, for having to respond to these improper Motions.

Respectfully submitted, this the 20th day of October, 2009.

**DANIEL B. O'KEEFE, CELESTE A. FOSTER O'KEEFE, AND THE DANCEL GROUP, INC., PLAINTIFFS**

By: */s/ Christopher C. Van Cleave*
     CHRISTOPHER C. VAN CLEAVE (MSB #10796)

CLYDE H. GUNN, III (MSB #5074)
CHRISTOPHER C. VAN CLEAVE (MSB #10796)
W. CORBAN GUNN (MSB #101752)
DAVID N. HARRIS, JR. (MSB #100790)
CORBAN, GUNN & VAN CLEAVE, P.L.L.C.
P.O. Drawer 1916
Biloxi, MS 39533-1916
Telephone: (228) 432-7826
Facsimile: (228) 456-0998
Email: christopher@cgvclaw.com

## **CERTIFICATE OF SERVICE**

I, undersigned counsel of record, hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the EFC system which sent notification of such filing to the following:

B. Wayne Williams, Esq.
Dan W. Webb, Esq.
Roechelle R. Morgan
Paige C. Bush, Esq.
Webb, Sanders, & Williams, PLLC
363 North Broadway
Post Office Box 496
Tupelo, Mississippi 38802
(662) 844-2137 (off)
wwilliams@webbsanders.com
RRM@webbsanders.com

**Attorneys for State Farm Fire & Casualty Company
And Marshall J. Eleuterius**

Respectfully submitted, this the 20th day of October, 2009.

          DANIEL B. O'KEEFE, CELESTE A. FOSTER
          O'KEEFE, AND THE DANCEL GROUP, INC.,
          PLAINTIFFS


      By:*/s/ Christopher C. Van Cleave*
        CHRISTOPHER C. VAN CLEAVE (MSB #10796)