**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DANIEL B. O'KEEFE and
CELESTE A. FOSTER O'KEEFE,
Individually and d/b/a THE DANCEL GROUP, INC.;
and THE DANCEL GROUP, INC.**                                    **PLAINTIFFS**

**VS.**                                    **Civil Action No. 1:08cv600 HSO-LRA**

**STATE FARM FIRE AND CASUALTY
COMPANY; MARSHALL J. ELEUTERIUS;
And John and Jane Doe Defendants A-H**                    **DEFENDANTS**

**STATE FARM FIRE AND CASUALTY COMPANY'S SUPPLEMENTAL JOINT BRIEF IN
SUPPORT OF ITS MOTIONS [254 & 255/256] FOR PROTECTIVE ORDERS TO LIMIT THE
<u>SCOPE OF DISCOVERY AND DEPOSITIONS OF CERTAIN STATE FARM PERSONNEL</u>**

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ..................................................................................................... 1

II.   LAW AND ARGUMENT ........................................................................................ 2

      A.    The Allegations Made In Plaintiffs' Amended Complaint Are Typical Of Allegations Made In Other Hurricane Katrina Cases......................................................................... 2

      B.    Plaintiffs Should Be Barred From Using Any Documents At Upcoming Depositions That Have Not Been Specifically Identified In Plaintiffs' Discovery Responses............ 8

      C.    Plaintiffs' Supplemental Memorandum [289/290] Is Unavailing ................................... 11

III.  CONCLUSION....................................................................................................... 13

Comes now STATE FARM FIRE AND CASUALTY COMPANY ("State Farm") and files this Supplemental Joint Brief In Support Of Its Motions [254 & 255/256] For Protective Orders To Limit Discovery (hereinafter referred to collectively as the "Motions"), and for cause would show unto the Court as follows, to wit:

## I.  INTRODUCTION

There is nothing new or different about the allegations in Plaintiffs' recently filed Amended Complaint.  To the contrary, as set forth in Exhibit A hereto, the allegations in the Amended Complaint regarding a "top-down," company-wide conspiracy to wrongfully deny claims made by State Farm's policyholders in the wake of Hurricane Katrina are almost identical to allegations made in many other Hurricane Katrina cases – cases in which this Court limited the scope of discovery in a manner consistent with the requests made by State Farm in the pending Motions.  The result should be no different here; the Motions should be granted in their entirety.

Further, while the Motions were pending, Plaintiffs' counsel disobeyed this Court's September 25, 2009 Order [250] (the "Order") by failing to "fully respond" to State Farm's interrogatories that requested Plaintiffs identify each document they plan to use at depositions in this case.  Plaintiffs' failure to comply with a discovery order is sanctionable conduct under Federal Rule of Civil Procedure 37(b)(2)(A) and provides an independent basis for restricting discovery in this case.  Indeed, on this basis alone, Plaintiffs should be barred from using any documents that have not been properly identified at upcoming depositions of State Farm personnel.

Finally, the argument made by Plaintiffs' counsel at the October 14th hearing on the Motions that this is a "slab" case is simply wrong.  Rather, as shown by the attached photographs and the report of Plaintiffs' own expert, Neil Hall, most of Plaintiffs' home remained intact after Hurricane Katrina.

Accordingly, because the allegations contained in the Amended Complaint are typical of allegations in other Hurricane Katrina cases, and the Motions do not seek any substantial deviation from

this Court's prior orders limiting the scope of discovery in Hurricane Katrina litigation to focus on *Plaintiffs' own claim*, the Motions should be granted and the protective orders issued.

## II.  LAW AND ARGUMENT

### A.  The Allegations Made In Plaintiffs' Amended Complaint Are Typical Of Allegations Made In Other Hurricane Katrina Cases

Contrary to assertions made by Plaintiffs' counsel at the October 14, 2009 hearing on the Motions, the allegations of a "top-down," company wide conspiracy to wrongfully deny claims made by State Farm's policyholders in the wake of Hurricane Katrina are typical of those made in many other Hurricane Katrina cases.  Indeed, as set forth in Exhibit A hereto, Plaintiffs' allegations in the Amended Complaint are similar, if not identical, to the allegations made in *Gagne v. State Farm*, *Marion v. State Farm*, *Lagasse v. State Farm*, and *McIntosh v. State Farm*, to name just a few.  (*See* Exhibit A (quoting allegations relating to an alleged corporate-wide fraudulent conspiracy involving misuse of engineers and modifications to federal flood insurance claim handling guidelines from complaints in *Gagne*, *Marion*, *Lagasse* and *McIntosh*).)[1]

For example, in *Gagne*, the plaintiff alleged that "[a]t its highest level of internal management . . . State Farm adopted a *per se* bad faith corporate policy[,]" and that "the top officials in State Farm made a conscious and *ultra vires* corporate decision to defraud the Plaintiff and similarly situated homeowners in the State of Mississippi."  (Exhibit A at 1–2.)  Further, according to the plaintiff in *Gagne*, "[t]he systemic scheme [that] was conceived, adopted, acquiesced to and implemented by the State Farm Board of Directors, and their corporate officers" involved "hav[ing] Exponent [(an

---

[1]  *See generally* Complaint, *Gagne v. State Farm Fire & Cas. Co.*, No. 1:06-CV-00711-LTS-RHW (S.D. Miss. July 21, 2006) (Docket Entry No. [1]; First Amended Complaint, *Gagne v. State Farm Fire & Cas. Co.*, No. 1:06-CV-00711-LTS-RHW (S.D. Miss. Oct. 10, 2007) (Docket Entry No [136]); Second Amended Complaint, *Marion v. State Farm Fire & Cas. Co.*, No. 1:06-cv-969-LTS-RHW (S.D. Miss. Dec. 22, 2006) (Docket Entry No. [18]); Third Amended Complaint, *Lagasse v. State Farm Fire & Cas. Co.*, No. 1:07-CV-761-LTS-RHW (S.D. Miss. Sept. 29, 2008) (Docket Entry No. [71]); Complaint, *McIntosh v. State Farm Fire & Cas. Co.*, No.1:06-CV-1080-LTS-RHW (S.D. Miss. Oct. 23, 2006) (Docket Entry No. [1]).

engineering firm)] . . . suppress any evidence of wind damage and issue a report based upon global meteorological conditions that affirmed State Farm's preordained conclusion that they were not responsible for payment."  (*Id*. at 2-3.)  The plaintiff in *Gagne* also alleged that "Defendants State Farm . . . and Exponent conspired to conduct unlawful, predatory, oppressive and/or immoral business activity[,]" including "suppressing . . . relevant evidence" of wind damage in order to "manufacture a false and inaccurate reason to deny Plaintiff's claims."  (*Id*. at 4.)

Similarly, in *Marion*, one of Mr. Van Cleave's other cases, the plaintiffs made allegations nearly identical to those here.  In *Marion*, the plaintiffs alleged "State Farm Fire and State Farm Mutual embarked . . . on a calculated course of corporate conduct designed to deny Plaintiffs' claim."  (*Id*. at 5.) This "course of corporate conduct" allegedly included "a top-down policy, adopted by State Farm post-Katrina" whereby State Farm "canceled its adjusters' requests for engineering reports; failed to obtain engineers reports; replaced unfavorable engineer reports with favorable engineer reports; ignored engineer reports that proved homes in the community were destroyed by hurricane force winds before the storm surge arrived" and similar wrongdoing.  (*Id*. at 7-8.)  Indeed, using language identical to that used in the Amended Complaint filed here, the plaintiffs in *Marion* alleged that their "slab" claim was "wrongfully denied pursuant to Defendants' Katrina-specific 'top down' scheme of fraudulent and deceptive claims practices" which "constitute[d] a deliberate course of company-wide fraudulent post-Hurricane Katrina claims handling practices."  (*Id*. at 10.)

Likewise, the plaintiffs in *Lagasse* – who were also represented by Mr. Van Cleave – alleged "State Farm Fire and State Farm Mutual embarked . . . on a calculated course of corporate conduct designed to deny Plaintiffs' claim."  (*Id*. at 11.)  As in *Marion* and the instant case, the *Lagasse* plaintiffs also alleged there was "a top-down policy, devised by State Farm Mutual and State Farm Fire post-Katrina," whereby State Farm "canceled its adjusters' requests for engineer reports; failed to timely obtain engineers reports; replaced unfavorable engineer reports with favorable engineer reports and/or

3

used engineers who were willing to fabricate reports; ignored engineer reports . . . that proved homes in the community were destroyed by hurricane force winds before the storm surge arrived" and engaged in similar wrongdoing.  (*Id*. at 12-13.)  Moreover, as in *Marion* and the instant case, the *Lagasse* plaintiffs alleged their claim was "wrongfully denied pursuant to Defendants' Katrina-specific 'top down' scheme of fraudulent and deceptive claims practices" which "constitute[d] a deliberate course of company-wide fraudulent post-Hurricane Katrina claims handling practices."  (*Id*. at 10 & 14.)  Comparable allegations were also made in the *McIntosh* case, among others.  (*See*, *e.g*., *id*. at 16-20.)

Yet, despite these broad allegations of a company-wide conspiracy to wrongfully deny the claims of State Farm's policyholders, this Court has consistently ruled that discovery must be kept narrow and must focus on the adjustment of a plaintiff's ***individual*** claim.  For example, in *Gagne*, this Court refused to allow the deposition of Alexis "Lecky" King to go forward and simultaneously denied a request by the plaintiff to take five additional dispositions of fact witnesses and a supplemental Rule 30(b)(6) deposition, stating that "[t]he Court does not find anything unique about Plaintiff's case that would warrant a departure from the Court's general practice[s]" regarding discovery in Katrina cases. *See Gagne v. State Farm Fire & Cas. Co*., No. 1:06CV711-LTS-RHW, Order on Discovery at 1-2, 4 (S.D. Miss. Nov. 14, 2008) (Docket Entry No. [402]) (granting State Farm's motion to quash; "Plaintiff argues . . . that there is conflicting testimony on whether engineering assignments on slab claims were canceled as part of a scheme to force policyholders to conduct their own investigations.  Without citing any supporting evidence, Plaintiff then speculates that State Farm is holding back objective evidence of a 'one size fits all' scheme[,]" but this was not enough to justify the broad discovery plaintiff sought), *affrm'd*, *Gagne v. State Farm Fire & Cas. Co*., No. 1:06CV711-LTS-RHW, 1-2 (S.D. Miss. Dec. 12, 2008) (Docket Entry No. [469]) (Senter, J. ) ("[T]his cause of action . . . appear[s] to be no different from any other typical Hurricane Katrina lawsuit . . . The Plaintiff does not have *carte blanc* in the

discovery process. It is not enough for Plaintiff to charge State Farm with sinister conduct or motives . . . and the Court is not going to allow Plaintiff to pursue a never-ending story backed by speculation.").

Magistrate Judge Walker repeatedly reached similar results in *Gagne*. For example, in restricting the scope of examination permissible at the deposition of State Farm employee Rick Moore, Judge Walker stated:

> Rick Moore had at least some involvement in the Gagne claim; therefore, the deposition should be allowed to proceed . . . However, the Court finds . . . testimony should be limited to Moore's involvement in and knowledge of the Gagne claim. To the extent that he does have specific knowledge of the Gagne claim, Plaintiff is permitted to ask him about his general practices for issues relevant to the Gagne claim. Moore is not required to answer any questions about State Farm's corporate policies and practices . . . . Nor is Moore required to testify to his 'personal knowledge' of State Farm's corporate policies and practices."

*Gagne v. State Farm Fire & Cas. Co.*, No. 1:06cv711, Order Granting in Part Motion for Protective Order at 1 (S.D. Miss. Oct. 27, 2008) (Walker, J.) (Docket Entry No. [363]); *see also id.* [Docket Entry Nos. 232, 340, 343] (reaching identical results with regard to depositions of other State Farm personnel).

Likewise, in *Marion*, the Court limited the scope of numerous depositions to the witness' knowledge of the plaintiffs' ***own*** claims and refused to allow discovery into the National Flood Insurance Program's ("NFIP") revised flood claims handling guidelines or communications between State Farm and the Mississippi DOI. *See, e.g.*, *Marion v. State Farm Fire & Cas. Co.*, No. 1:06cv969, Order at 1-4 (S.D. Miss. Mar. 28, 2008) (Docket Entry No. [232]) (denying in part plaintiffs' motion to compel); *id.* at 3-6 (S.D. Miss. Feb. 13, 2008) (Docket Entry No. [200]) (denying in part plaintiffs' motion to compel and granting in part State Farm's motion for protective order); *id.* at 1 (S.D. Miss. Feb. 14, 2008) (Docket Entry No. [201]); *id.*, Order Granting Motion to Quash Deposition of Susan Hood at 2 (S.D. Miss. Jan. 30, 2008) (Docket Entry No. [189]).

In *Marion*, Judge Senter also affirmed a series of rulings by Judge Walker denying plaintiffs' motions to compel discovery responses and granting State Farm's motions to quash the depositions of several high-ranking corporate officers:

> What might be called error arises from the Plaintiffs' being afforded more latitude than necessary to develop the theory of their case.
>
> ***
>
> As for the motions to compel and for sanctions, it appears that Plaintiffs would be satisfied with nothing less than a full-blown search warrant for State Farm offices and personnel. [As t]he magistrate . . . state[d]: "***The central dispute does not differ to any great degree from hundreds of other Katrina cases that have been filed in this Court*** . . . . What has made this case particularly challenging for the Court with respect to discovery is Plaintiffs' attempt to construct a broad-ranging conspiracy theory that reaches to the uppermost levels of State Farm and involves virtually all of State Farm's formulation of policies, guidelines, and other responses to Hurricane Katrina." ***[Yet, i]n the end, the Court finds that this case is about the Marions' claim, the denial of that claim, and how it relates to the terms of the Marions' insurance policy.'*** Likewise, the Court will not tolerate Plaintiffs' engaging in harassment or annoyance. In short, Plaintiffs will be controlled by the limitation that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2). ***All of these factors weigh the same in all other cases on this Court's Hurricane Katrina docket***.

*Marion v. State Farm Fire & Cas. Co.*, No. 1:06cv969, 2008 WL 723976, at *1, 2-4 (S.D. Miss. Mar. 17, 2008) (Senter, J.) (emphasis added).

The result should be no different here. Indeed, as pointed out by State Farm in the Motions, conclusory allegations in a complaint are not enough to support the sort of sweeping discovery sought by Plaintiffs. Rather, courts have often held that a party cannot "unilaterally alter the scope of discovery merely by including extraneous allegations in the complaint." *Vives v. City of New York*, No. 02 Civ. 6646, 2003 U.S. Dist. LEXIS 1833, at *2 (S.D.N.Y. Feb. 4, 2003), *vacated on other grounds*, 524 F.3d 346 (2d Cir. 2008); *see also In re Harmonic, Inc. Sec. Litig.*, No. C 00-2287, 2006 U.S. Dist. LEXIS 90450, at *57 (N.D. Cal. Dec. 11, 2006) ("given the fact that these allegations are irrelevant to the

[plaintiffs'] claims, the court finds that defendants would be prejudiced if they were compelled to respond to these allegations, or to any discovery propounded by plaintiffs" related to those allegations).

This Court has the discretion to prohibit a plaintiff from proceeding with a deposition, or to limit a deposition's scope, pursuant to Fed. R. Civ. P. 26(b)(2)(C), which provides in pertinent part:

> [T]he frequency or extent of discovery otherwise allowed by these rules... [***shall be limited by the court***] if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, ***and the importance of the [proposed] discovery in resolving the issues***.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). The Rules authorize this Court to make any order which justice requires to protect a party, including ordering that discovery not be had, or be had only subject to appropriate limitations. *See* Fed. R. Civ. P. 26(c); *see also Harris v. Amoco Prod. Co.,* 768 F.2d 669, 685 (5th Cir. 1985) (affirming order granting protective order).

Here, Plaintiffs' counsel has made clear that he plans to subject State Farm personnel at deposition to time consuming examination regarding a host of irrelevant topics that are unlikely to result in the discovery of admissible evidence, including questioning State Farm personnel about an undetermined number of some 15,000+ documents Plaintiffs' counsel has obtained from other Hurricane Katrina cases that have nothing whatsoever to do with Plaintiffs' own claim.

Under such circumstances, this Court would be well within its discretion to limit the scope of discovery consistent with the prior discovery orders in Hurricane Katrina litigation cited above and as requested by State Farm in the Motions.[2]

---

[2]     It also bears mentioning that, contrary to the assertions made by Plaintiffs' counsel at the October 14 hearing, this is, unlike *Marion* for instance, not a "slab" case. Instead, as is clear from the attached photographs of Plaintiffs' home (Exhibit B hereto), and the report of Plaintiffs' expert Mr. Hall (Exhibit C hereto at 100002-4), Plaintiffs' home remained largely intact after Hurricane Katrina.

**B.**    **Plaintiffs Should Be Barred From Using Any Documents At Upcoming Depositions That Have Not Been Specifically Identified In Plaintiffs' Discovery Responses**

Pursuant to this Court's authority under Rule 37(b)(2)(A), State Farm requests that Plaintiffs be barred from using any document that has not been specifically identified in Plaintiffs' responses to State Farm's Interrogatories Numbers 29 (directed to The Dencel, Inc.) and 23 (directed to the O'Keefes) at the upcoming depositions of Bill Saari, Alexis "Lecky" King, Brian Llewellyn, Arthur Leotis, and Rachel Fisher.  Such relief pursuant to Rule 37(b)(2)(A) is proper because Plaintiffs have disobeyed Judge Anderson's September 25, 2009 Order. [3]

On August 24, 2009,[4] State Farm separately propounded forty-five (45) interrogatories on the O'Keefe's and forty-five (45) interrogatories on The Dancel Group, Inc., consistent with this Court's orders of July 10, 2009 and August 24, 2009.  (*See* 7/10/2009 Order [147] at 4-5 & 8/24/2009 Order [200] at 1-2.)  These interrogatories made the following request:

**Interrogatory 23 (to the O'Keefe's)**
*For every document* which you contend supports or is related to your claims against State Farm *which you intend to use at any deposition in this matter* or during the trial of this matter, including but not limited to deposition or trial transcripts, copies of correspondence, electronic mail messages, reports, guidelines, standards, books, videos, treatises, photographs, digital media, transcribed statements, pleadings, articles, or any other documents or tangible evidence or demonstrative exhibits, whether prepared by any third party, please describe said document and identify the source of the document including the identification of whom (or from what entity) you received said documents and when you first received said documents, including any bates number or other appropriate description of said documents.

**Interrogatory 29 (to The Dancel Group, Inc.)**
*For every document* which you contend supports or is related to your claims against State Farm *which you intend to use at any deposition in this matter* or during the trial of this matter, including but not limited to deposition or trial transcripts, copies of correspondence, electronic mail messages, reports, guidelines, standards, books, videos, treatises, photographs, digital media, transcribed statements, pleadings, articles, or any other documents or tangible evidence or demonstrative exhibits, whether prepared by

---

[3] State Farm will also move separately for this relief.

[4] These interrogatories were previously propounded on Plaintiffs in State court on August 21, 2009.

you or prepared by any third party, please describe said document and identify the source of the document including the identification of whom (or from what entity) you received said documents and when you first received said documents, including any bates number or other appropriate description of said documents.

(Exhibit D at 54 (emphasis added); Exhibit E at 38 (emphasis added).)

Just six days prior to the date Plaintiffs' responses were due, however, Plaintiffs filed a motion to quash the interrogatories.  (*See* 9/23/2009 Pls.' Emergency Mot. to Quash [244].)  State Farm responded by filing a combined response in opposition and motion to compel.  (*See* State Farm's 9/24/2009 Response in Opposition re Emergency Mot. to Quash & Motion to Compel [246/247].)

On September 25, 2009, Magistrate Judge Anderson ruled on these motions and ordered Plaintiffs to "fully respond" to these and other interrogatories propounded by State Farm no later than October 2, 2009.  (*See* 9/25/2009 Order [250] at 1.)  Instead of complying, however, Plaintiffs merely "responded" by raising further objections to the Interrogatories.  (*See* Exhibits D and E hereto (copies of Plaintiffs "Responses" to State Farm's Interrogatories).)  As a result, Plaintiffs have failed to comply with the Order and State Farm will be unfairly prejudiced if its personnel are forced to sit for deposition without some limitation being placed on the scope of examination.

Indeed, Plaintiffs have produced over 15,000 documents (containing many more pages) in discovery from *Marion v. State Farm* and indicated their intention to use many, but not identified, of these documents during depositions in the instant case despite the fact that *Marion* involved totally different plaintiffs and a totally different property located well beyond one-half mile from Plaintiffs' home.  Permitting Plaintiffs to utilize these documents despite their failure to comply with discovery obligations and Judge Anderson's order will simply result in a waste of time and needless expense to State Farm.  It will also give Plaintiffs an unfair advantage by allowing them to ambush and harass State Farm witnesses with documents that have no connection to this case and were not disclosed in response to State Farm's timely Interrogatories as they should have been and as required by this Court's order.

No doubt Plaintiffs hope to bombard State Farm personnel with these irrelevant documents during deposition in the hope that Plaintiffs can create the appearance of impropriety where there is none simply by eliciting enough "I don't knows" and "I've never seen that document before." Plaintiffs should not be permitted to benefit from disobeying a Court order in this manner.

By the plain language of Fed. R. Civ. P. 37(b)(2)(A), this Court has broad discretion to fashion "further just orders" when a party does not comply with a discovery order. The Fifth Circuit has recognized that the Court has at its disposal a "broad spectrum" of remedies under Fed. R. Civ. P. 37(b)(2) and that the Court's discretion is "quite broad." *Chilcutt v. United States*, 4 F.3d 1313, 1320, 1322 n.23 (5th Cir. 1993) (non-compliant interrogatory answers); *accord Societe Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 208, 213 (1958) (Harlan, J.) (holding Fed. R. Civ. P. 37(b)(2) "allows a court all the flexibility it might need in framing an order appropriate to a particular situation"; "On remand, the District Court possesses wide discretion to proceed in whatever manner it deems most effective."). Further, the reasonableness of the relief requested by State Farm is confirmed by the fact that the Fifth Circuit has noted one of the "least harsh" remedies listed in Fed. R. Civ. P. 37(b) is to treat certain facts as established – a result far more severe than the one State Farm suggests is appropriate here. *Chilcutt*, 4 F.3d at 1320 n.17

Accordingly, as a pursuant to this Court's broad discretion under Rule 37(b)(2)(A), State Farm requests that Plaintiffs be barred from using any of the documents they have produced from *Marion v. State Farm* or any other document not produced by State Farm ***in this case***, unless the document has been previously identified in response to Interrogatory Number 23 (propounded on the O'Keefe's) or Interrogatory Number 29 (propounded on The Dancel Group, Inc.) as required by the Order.

**C.    Plaintiffs' Supplemental Memorandums [289/290] Are Unavailing**

The Memorandum of Supplemental "Authority" filed today by Plaintiffs (hereinafter referred to as the "Memorandum")[5] does not help their cause and merely mischaracterizes the cases and orders cited therein.

First, Plaintiffs now concede, as they must, that in Hurricane Katrina litigation courts have held that each case is about the particular plaintiff's relationship with State Farm and how each plaintiff's claim was adjusted, not what did or did not happen to other State Farm insureds.  (*See* Pl's Memo. ¶ 2 (citing *Guice v. State Farm*, 2007 WL 912120 (S.D. Miss.).))  As demonstrated above, this has been the case regardless of whether or not the complaints in other Katrina cases contained sweeping allegations such as those at issue here and in other cases.

Second, Plaintiffs also now concede that decisions on substantive issues, such as those adjudicated in *Leonard*, *Tuepker* and *Corban* are properly taken into account when courts consider the appropriate scope of discovery in a given case, and further, that such decisions have in fact provided the basis for past discovery rulings in Katrina litigation.  (*See* Pl's Memo. ¶ 3.)  This is precisely why State Farm cited these decisions in the Motions.  There is simply not a genuine issue to explore in discovery when state and federal courts in Mississippi have already disposed of the basis for Plaintiffs' claims as a matter of law.  Plaintiffs also badly mischaracterize the Mississippi Supreme Court's recent decision in *Corban v. United Services Automobile Ass'n*, No. 2008-IA-00645-SCT, 2009 WL 3208704 (Miss. Oct. 8, 2009) (to be reported at -- So. 3d --). (*See* Pl's Memo. ¶ 3.) In *Corban*, the Mississippi Supreme Court did not address the portions of *Tuepker* or *Leonard* cited in State Farm's Motions.  Nor does any portion of the opinion in *Corban* call into question the Fifth Circuit's findings regarding the effect of State Farm's hurricane deductible endorsement on coverage for damage caused by storm surge.  *Corban* does

---

[5] Plaintiffs filed two identical memorandums.

not address State Farm's hurricane deductible. *See Corban*, 2009 WL 3208704, slip op at 8. Indeed, as State Farm has already pointed out, the Mississippi Supreme Court in *Corban* **confirmed that damage caused by Hurricane Katrina's storm surge was clearly excluded from coverage under the terms of a policy similar to the one at issue here**. *See Corban*, 2009 WL 3208704, slip op. at 11-14. Thus, contrary to Plaintiffs' desperate effort to mischaracterize *Corban*, in reality, *Corban* is the death knell for Plaintiffs' specious claims regarding State Farm's hurricane deductible (*see*, *e.g*., Am. Compl. ¶¶ 27-29), and the availability of "Windstorm" coverage (*see*, *e.g*., Am. Compl. ¶¶ 32-33), along with any discovery based upon such claims.

Third, whatever can said of the Court's order [116] in *Marion* regarding use of documents from CAT PL files, at the time of this ruling in *Marion*, the plaintiffs were not guilty of failing to comply with a discovery order that required them to identify each of the specific documents they wished to use at deposition like the Plaintiffs are in the instant case. (*See* Section B, *supra*.) Indeed, the October 10, 2007 order cited by Plaintiffs in the Memorandum actually required that the plaintiffs in *Marion* provide the particular documents they wanted to use at deposition to State Farm in advance of the depositions. *See Marion*, 1:06cv969, Order Regarding Discovery and Depositions (S.D. Miss. Oct. 03, 2008) (Docket Entry No. [116]) at 3.) Here that was effectively ordered and that order ignored. Moreover, unlike the instant case, *Marion* actually was a "slab" case.

Plaintiffs are also mistaken when they assert that Alexis "Lecky" King was "a direct participant in denying" their homeowners' claim. As the claims files produced in this case demonstrate, State Farm did not "deny" Plaintiffs homeowners' claim at all, but instead, tender to them $4,280.48 for wind damage to their home and $72,571.96 for wind damage to their business property. (*See* Exhibits F & G, hereto.) Further, as demonstrated by the claims files, Ms. King was only involved in adjusting Plaintiffs' claim under their federal flood insurance policy for which they received the policy limits. (*See Id.*)

Moreover, as previously demonstrated, Plaintiffs have conceded that they have no quarrel with the way that their flood claim was adjusted. [Doc. 189, p.3].

Finally, Plaintiffs' Memorandum is misleading because it continues to assert that Plaintiffs' claims in this case are somehow unique merely because of conclusory allegations in the Amended Complaint regarding a "top-down" "company-wide" conspiracy to defraud State Farm policyholders. Yet, as demonstrated in Exhibit A hereto, these claims are anything but unique and this Court has had no difficulty in the past restricting the scope of discovery accordingly.

### III. CONCLUSION

For the foregoing reasons, and for good cause shown, the Motions should be granted and protective orders issued: (1) prohibiting and/or limiting discovery and deposition inquiry regarding use of engineers, claims by other policyholders, State Farm's hurricane deductible, "windstorm" coverage/damage, Mississippi Department of Insurance ("DOI") bulletins, and the "inflation protection" provisions of State Farm's policies as requested in State Farm's Motion for Protective Order [255/256]; and, (2) limiting the scope of examination at the depositions of Bill Saari, Alexis "Lecky" King, Brian Llewellyn, Arthur Leotis, and Rachel Fisher as requested in State Farm's Motion for Protective Order [254] to no more than their involvement in the claim file as allowed in the Gagne case. In Gagne, the plaintiff was limited to file specific involvement and knowledge and before getting into any general way of doing things was required to establish that the witness performed a particular action or duty in the claim in suit. If the witness was first established to have performed a particular duty or action and also testified that she could not recall performing such duty or action then, and only then, was the plaintiff permitted to question the witness regarding how the witness would typically or generally perform the action or duty. The court cautioned the scope of the questioning was narrow and that plaintiff must first establish the foundation that the witness performed a particular duty or took a particular action in the claim before proceeding to question the witness regarding how the witness would typically perform such

duty or action.  See Exhibit "H".  That same limitation is instructive in this case involving similar allegations and should be implemented here.  Moreover, as discussed, Plaintiffs have conceded in this case  that they have no issue with how their flood claim was handled [Doc 189 p. 3] and should not be allowed to pursue questioning in this case of any witness in attempt to contradict their affirmed position.  Regardless of the other proper bases to limit the inquiries here, discovery is simply not proper concerning an issue that Plaintiffs concede is not an issue.

Finally, pursuant to Rule 37(b)(2)(A),  and in addition to the other, proper limitations imposed upon Plaintiffs continued attempt at unfounded and costly legal alchemy, this Court should bar Plaintiffs from using any document or other item of evidence in any and all subsequent  depositions that was not disclosed and identified as a document to be so used in their "responses" submitted to  State Farm's interrogatories  number 23 and 29 quoted herein in violation of this Court's  previous Order [250].   As court's have eventually concluding in many contexts over the years, "Somewhere a line must be drawn." Here we are well past that point and Plaintiffs constant unfounded[6] assault should be stopped for the benefit of the Court and the Parties as well.

**RESPECTFULLY SUBMITTED, this <u>20th</u> day of October, 2009.**

---

[6] Another glaring example of the nature of Plaintiffs' refusal to abide by this Court's orders and to limit their allegations in the face of Court orders is the fact that despite orders being entered on two occasions that the unfounded allegations that Plaintiffs wish to make against State Farm Mutual Automobile Insurance Company would not be permitted in this case, Plaintiffs have more than 100 references that company in their Amended Complaint, refused to remove them and they are now the subject of a motion to strike or dismiss.  Doc. Nos. 214, 272, and 291. No doubt Plaintiffs will until this Court says a final "no" continue with this kind of unilateral conduct disapproved by the Court and  further will use their "allegations" to broaden their "discovery " into these areas.  The fact that these allegations that have been disapproved by the Court are so intertwined with any other allegations they now have is frankly another reason that this Court should preclude and/or materially limit Plaintiffs' continued attempt to litigate everything but their claims for more wind payments.

**WEBB, SANDERS & WILLIAMS, P.L.L.C.**
**363 NORTH BROADWAY**
**POST OFFICE BOX 496**
**TUPELO, MISSISSIPPI 38802**
**(662) 844-2137**
**DAN W. WEBB, MSB # 7051**
**B. WAYNE WILLIAMS # 9769**
**ROECHELLE R. MORGAN, MSB # 100621**
**J. DOUGLAS FOSTER # 100641**


BY: /s/ Dan W. Webb
      DAN W. WEBB


## CERTIFICATE OF SERVICE

        I, Dan W. Webb, one of the attorneys for Defendant, State Farm Fire and Casualty Company, do

hereby certify that on October 20, 2009, I electronically filed the foregoing with the Clerk of the Court

by using the CM/ECF which will send a notice of electronic filing to the following:

   Attorney for Plaintiffs

   **Christopher C. Van Cleave, Esq.**
   **CORBIN, GUNN & VAN CLEAVE, PLLC.**
   **146 Porter Avenue (39530)**
   **P.O. Drawn 1916**
   **Biloxi, Mississippi 39533-1916**

   **THIS,** the 20th of October, 2009.


                /s/ Dan W. Webb
                DAN W. WEBB

15