**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DANIEL B. O'KEEFE and
CELESTE A. FOSTER O'KEEFE,
Individually and d/b/a THE DANCEL GROUP, INC.;
and THE DANCEL GROUP, INC.**                          **PLAINTIFFS**

**VS.**                                    **Civil Action No. 1:08cv600 HSO-LRA**

**STATE FARM FIRE AND CASUALTY
COMPANY; MARSHALL J. ELEUTERIUS;
And John and Jane Doe Defendants A-H**                          **DEFENDANTS**


**MARSHALL J. ELEUTERIUS'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**


WEBB, SANDERS & WILLIAMS, PLLC
363 North Broadway
Post Office Box 496
Tupelo, Mississippi 38802
(662) 844-2137


*Attorneys for Defendant
Marshall J. Eleuterius*

## TABLE OF CONTENTS

I.      Introduction ......................................................................................................................1

II.     Factual Background ...........................................................................................................3

III.    Summary Judgment Standard ............................................................................................5

IV.     Plaintiffs' Claims Are Barred by the Statute of Limitations ............................................6

        A.      Plaintiffs' Claims Are Governed by a Three-Year Statute of Limitations ........6

        B.      Plaintiffs' Claims Accrued when the Policies First Issued ...............................6

                1.      Plaintiffs' Negligence-Based Claims Accrued when the Policies First
                        Issued ....................................................................................................7

                2.      Plaintiffs' Misrepresentation-Based Claims Accrued when the Policies
                        First Issued ............................................................................................8

        C.      Plaintiffs' Claims Are Time-Barred ..................................................................9

V.      Plaintiffs' Negligence-Based Claims Fail as a Matter of Law .......................................10

VI.     Plaintiffs' Misrepresentation-Based Claims Have Multiple Dispositive Defects ...........12

        A.      No Reliance Upon Alleged Misrepresentations Arising from  the Purchase of the
                Homeowners or Business Policies ....................................................................13

        B.      Plaintiffs' Misrepresentation-Based Claims Arising from the Purchase of the
                Flood Policy Suffer from Numerous Dispositive Defects ................................17

        C.      No Reliance Arising from the Adjustment of Plaintiffs' Insurance Claims.......19

VII.    Conclusion ......................................................................................................................20

# I.    INTRODUCTION

Marshall J. Eleuterius respectfully submits this memorandum of law in support of his motion for summary judgment pursuant to Fed. R. Civ. P. 56.[1]  Plaintiffs' claims against Eleuterius all arise from the sale of State Farm Fire and Casualty Company ("State Farm") insurance policies many years ago. Plaintiffs allege, in their negligence-based claims, that Eleuterius improperly procured their insurance, and Plaintiffs allege, in their misrepresentation-based claims, that he misrepresented the policies to Plaintiffs when he sold them.  *See, e.g.*, Third Am. Compl. ("TAC") [245] ¶¶ 8, 15-22, 61-75.  For all of Plaintiffs' claims against Eleuterius, Mississippi imposes a three-year statute of limitations.  Miss. Code Ann. § 15-1-49(1); *Leonard v. Nationwide Mut.*, 499 F.3d 419, 438 (5th Cir. 2007); *Citifinancial Mortgage Co., Inc. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007).  Yet, as shown below, more than *four* years passed (at the least) since Plaintiffs' negligence-based and misrepresentation-based claims accrued prior to suit being filed.  Therefore, Plaintiffs' claims are time-barred, and summary judgment for Eleuterius is proper as a matter of law.

In addition to being time-barred, Plaintiffs' negligence-based claims are substantively unsound. Eleuterius obtained a homeowners, business, and flood policy, and Plaintiffs cannot show that different insurance was requested or was available.  For the homeowners policy, the O'Keefes allege they sought "adequate" and "appropriate" insurance, TAC ¶¶ 61, 63, but those requests fail as a matter of law to create a legal duty in Eleuterius.  *See, e.g.*, *Lafleur v. State Farm Fire & Cas. Co.*, Co. A2301-2007-0082, slip op. at 9 (Miss. Cir. Ct. Jun 15, 2009) (attached as Ex. R) ("A request for adequate coverage is too broad to create a duty to obtain specific amounts of insurance").  For the business policy, The Dancel Group, Inc.'s corporate representative testified that the company did not ask to be insured by the business policy.  The Dancel Group, Inc. Dep. (attached as Ex. S) at 105:2-14.  In fact, The Dancel

---

[1] Eleuterius previously moved for summary judgment on all the claims against him, and that motion was fully briefed.  [115], [116], [140], [157], [158], [163], [188], [213].  On September 3, 2009, the Court granted Plaintiffs' motion for leave to file a Third Amended Complaint, [214], and by Text Order on the same day, the Court denied Eleuterius' motion for summary judgment without prejudice and granted him leave to reassert his motion.  Eleuterius hereby reasserts and supplements his motion for summary judgment, [115], [116], and submits the within motion and memorandum of law.

Group, Inc was insured by another company.  For the flood policy, the O'Keefes allege that they asked Eleuterius to procure "excess" flood insurance, *i.e.*, an amount beyond the maximum prescribed under the National Flood Insurance Program ("NFIP").  TAC ¶ 63.  Yet, Plaintiffs judicially admit that Eleuterius was "prohibited from offering excess flood insurance," *id.* ¶ 17, which precludes liability on his part under Mississippi law.  *See, e.g.*, *Haggans v. State Farm Fire & Cas. Co.*, 803 So. 2d 1249, 1252 (Miss. Ct. App. 2002) ("If no insurance could have been obtained, then a duty to procure insurance could not have been breached.").  Therefore, Plaintiffs' negligence-based claims against Eleuterius all fail as a matter of law.

Plaintiffs' misrepresentation-based claims, in addition to being time-barred, are also substantively unsound.  Plaintiffs allege two kinds of misrepresentation-based claims:  arising from (i) the sale of the insurance policies and (ii) the adjustment of Plaintiffs' claims.  Both kinds of claims fail for lack of reliance.  Plaintiffs cannot show that, when purchasing the insurance policies, they reasonably relied on any alleged representations that were contrary to the policies, *see, e.g.*, *Leonard*, 499 F.3d at 438, nor can The Dancel Group, Inc. show detrimental reliance because it owned separate insurance.  Moreover, as discussed below, the O'Keefes' misrepresentation-based claim regarding the availability of excess flood insurance suffers from several dispositive defects.  Furthermore, Plaintiffs' misrepresentation-based claims arising from the adjustment of the insurance claims fails because, as several courts have held, "plaintiffs have brought this lawsuit" to challenge the adjustment of their insurance claims and, therefore, cannot show detrimental reliance.  *McIntosh v. State Farm Fire & Cas. Co.*, 2008 WL 1850094, at *3 (S.D. Miss. Apr. 21, 2008) (Senter, J.); *accord Fowler v. State Farm Fire & Cas. Co.*, No. 1:06CV489-HSO-RHW, Hr'g Tr. at 84:18-85:25 (S.D. Miss. May 30, 2008) (Ozerden, J.) (attached as Ex. A).[2]

Accordingly, for these reasons and those discussed below, this Court should grant Eleuterius'

---

[2] This Court entered judgment "[f]or the reasons more fully stated on the record at the conclusion of the hearing on May 30, 2008." *Fowler v. State Farm Fire & Cas. Co.*, 2008 WL 2312467, at *1 (S.D. Miss. June 2, 2008) (Ozerden, J.).

motion for summary judgment in its entirety and dismiss all claims against him with prejudice. Granting Eleuterius' motion would also create complete diversity of citizenship in this case and establish that Eleuterius was improperly joined in an attempt to prevent removal.

## II.    FACTUAL BACKGROUND

The O'Keefes purchased three insurance policies through Eleuterius to insure their house and business facility. Plaintiffs have judicially admitted that Eleuterius began providing the O'Keefes insurance in 1995. TAC ¶¶ 8, 61; Second Am. Compl. ("SAC") [1-4] ¶¶ 9, 21.[3] By November 2001, all the subject insurance policies had issued. In particular, **the O'Keefes** applied for and obtained:

> (i) a homeowners policy for their house by October 2001, Homeowners Policy (attached as Ex. B); Excerpts from Homeowners Underwriting File (attached as Ex. C) at 100001, 100029, 100043;

> (ii) a business policy for their business facility by August 1999, Business Policy (attached as Ex. D); Excerpts from Business Underwriting File (attached as Ex. E) at 100009, 100018; *accord* Apr. 9, 2009 O'Keefe Aff. (attached as Ex. P) ¶¶ 14, 17, 20-21; and

> (iii) a federal flood insurance policy for their house by November 2001, *see* Flood Policy (attached as Ex. F); Flood Underwriting File Excerpts (attached as Ex. G) at 100024, 100032-33.

Plaintiffs admit that they received complete copies of all policies. Pls. Admissions (attached as Ex. H) at Nos. 11-13. Mrs. O'Keefe, on behalf of The Dancel Group, Inc., further admitted in a letter to State Farm "that I have a Business policy booklet that was provided to me when I purchased this policy." Mar. 20, 2006 letter from O'Keefe to State Farm (attached as Ex. I); *accord* Ex. S at 105:2-10.

The Dancel Group, Inc. did not apply to State Farm for a business policy and no such policy issued. Nor did The Dancel Group, Inc. ask "[a]t any time" to be added as a named insured under the O'Keefes' business policy. Ex. S at 105:2-10. The declared insureds on the O'Keefes' business policy are Daniel O'Keefe and Celeste A. Foster, both individuals. Ex. D at 100001. The Dancel Group, Inc. is not named as an insured, nor does the policy name Daniel O'Keefe and Celeste A. Foster in their capacity as corporate officers, directors, or shareholders. *See id.* Rather, The Dancel Group, Inc.

---

[3] Admissions made in superseded pleadings "still operate as adverse evidentiary admissions properly before the district court in its resolution of the factual issue." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 & n.5 (5th Cir. 1983).

insured its business income, extra expenses, business personal property, and other interests from another insurer, United States Fidelity and Guarantee Company ("USFG"). Ex. H at 17; Excerpts of The Dancel Group, Inc.'s USFG Policy and Claim File (attached as Ex. J) at 100348, 100358.[4] Following Hurricane Katrina, The Dancel Group, Inc. submitted a claim to USFG under its business policy. *See, e.g., id.* at 100148-51. During the adjustment, The Dancel Group, Inc. made clear to USFG that it was "submitting our business interruption claim resulting from Hurricane Katrina." *Id.* at 100249. USFG paid The Dancel Group, Inc. at least $425,239.25 for covered losses, including $227,326.00 for business income, $187,913.25 for business personal property, and $10,000.00 for loss data preparation. *Id.* at 100139-40, 100325, 100343. During the adjustment by USFG, Mrs. O'Keefe admitted to a USFG representative that "she know[s] she did not have enough coverage and that is her loss." *Id.* at 100148-49.

While The Dancel Group, Inc. held its business policy with USFG, the O'Keefes held a business policy with State Farm. Ex. D. The O'Keefes' business policy application to State Farm was signed by Celeste A. Foster O'Keefe and, as reflected on the top, was submitted for an "individual" – not a "corporation." Business Policy Application (attached as Ex. K) at 1. "Dancel" does not appear in the application. *See id.* The "d/b/a" field was empty. *Id.* Indeed, when a USFG representative asked Mrs. O'Keefe if The Dancel Group, Inc.'s business policy was "a DBA," Mrs. O'Keefe stated "[t]he company listed on my policy is Dancel *Inc*." Ex. J at 100177 (emphasis added). The Dancel Group, Inc. is a Mississippi corporation and is not a named insured on any State Farm insurance policy. *See* Ex. B at 100001; Ex. D at 100001; Ex. F at 100001; *see also* TAC ¶ 2; SAC ¶ 2.[5] The Dancel Group, Inc. alleges that it paid "[a]ll premiums" for the O'Keefes' business policy. TAC ¶ 13; SAC ¶ 13; *see also* Ex. P ¶ 24. Because Mrs. O'Keefe has been the Chief Executive Officer for Dancel during all material times all

---

[4] The policy states "Your Insurance Company is:  United States Fidelity and Guaranty Company" and also bears the logo for St. Paul Travelers. *See, e.g.*, Ex. J at 100358 (emphasis omitted).

[5] State Farm has separately moved for summary judgment for claims by The Dancel Group, Inc. because The Dancel Group, Inc. was not insured by any State Farm policy. *See, e.g.*, [68]; [69]; [74]; [79]; [88]; [231]; [238]; [252]. Eleuterius joins in State Farm's motion and reasserts the same grounds here, as applicable. Eleuterius' reference to "Plaintiffs" does not intend to diminish or waive any such arguments against The Dancel Group, Inc., whether by State Farm or by Eleuterius.

knowledge learned as a matter of fact and constructively is also knowledge of Dancel. This includes years of being provided specific factual information that the business policy did not insure Dancel and at least constructively as a result that the terms of the policy did not insure the O'Keefes for Dancel's losses and did not insure Dancel for its losses, if any.  As noted Dancel maintained its coverage with another carrier.

Plaintiffs alleged their properties were damaged on or about August 29, 2005 during Hurricane Katrina, and the O'Keefes submitted claims for coverage under their homeowners, flood, and business policies shortly thereafter.  TAC ¶¶ 30-33; Flood Claim Activity Log (attached as Ex. L) at 100042. Following the adjustment and payment of those claims, Plaintiffs filed suit against Eleuterius on August 28, 2006.  Compl. [1-1] at 1, 13.

### III.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  To support a motion for summary judgment, the moving party carries the initial "burden of showing the absence of a genuine issue as to any material fact."  *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 589 (5th Cir. 2004) (citation omitted).  As the United States Supreme Court has "explained, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant satisfies its initial burden, the burden shifts back to the non-moving party to produce evidence showing that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ.

P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## IV.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

### A.    Plaintiffs' Claims Are Governed by a Three-Year Statute of Limitations

Plaintiffs' claims against Eleuterius arise from the sale of insurance many years ago and sound in negligence and misrepresentation.    Plaintiffs' negligence-based claims include failure to procure, negligence, and malpractice, and Plaintiffs' misrepresentation-based claims include misrepresentation, fraud, fraudulent misrepresentation, and fraudulent inducement.  *See, e.g.*, TAC ¶¶ 20, 61-75.  Although no specific statute of limitations governs such claims, Mississippi imposes a three-year limitation period by default.    Miss. Code Ann. § 15-1-49(1).    It is well established that negligence-based and misrepresentation-based claims are governed by this three-year default statute of limitations.  *See, e.g.*, *Leonard*, 499 F.3d at 440-41 (holding misrepresentation claims are time barred under Miss. Code Ann. § 15-1-49(1)); *Citifinancial Mortgage Co., Inc. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007) (reversing denial of summary judgment; dismissing claims, including negligence, all arising from sale of insurance policy under the three-year statute of limitations); *Carter v. Citigroup Inc.*, 938 So. 2d 809, 811, 818 (Miss. 2006) (same for negligent supervision claim; claim accrued at the time insurance documents were executed).  The same three-year period governs all of Plaintiffs' claims against Eleuterius.

Under Mississippi public policy, limitation statutes are designed "'to protect parties against stale demands,'" *M.T. Reed. Construction Co. v. Jackson Plating Co.*, 222 So. 2d 838, 840 (Miss. 1969) (citation omitted), and "'to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial.'"  *Conerly v. State*, 607 So. 2d 1153, 1157 (Miss. 1992) (citation omitted).    These public policy concerns are particularly important here, where the transactions took place many years ago, leaving memories and evidence to grow exceedingly stale.

### B.    Plaintiffs' Claims Accrued when the Policies First Issued

Plaintiffs' claims against Eleuterius arise from the sale of insurance many years ago, and that is

when the claims accrued.  "For nearly a century, the Mississippi Supreme Court has held that '[t]he statute of limitations begins to run, whenever the cause of action accrues.'"  *State Ind. Prod. Corp. v. Beta Tech.*, 2008 WL 2477477, at *3 (S.D. Miss. June 17, 2008) (quoting *Central Trust Co. v. Meridian Light & Ry. Co.*, 63 So. 575, 576 (Miss. 1913)) (alteration in original).  Thus, the applicable statute of limitations is "'computed from the day upon which the plaintiff might have commenced an action for the recovery of his demand.'"  *Id.*; *see FDIC v. Belli*, 981 F.2d 838, 840 (5th Cir. 1993) ("a cause of action 'accrues' when 'it comes into existence'") (citation omitted).  As the Fifth Circuit has held, "in Mississippi, the statute runs from the time of the injury, not from its discovery."  *Commercial Serv. Perry, Inc. v. FDIC*, 199 F.3d 778, 780 & n.1 (5th Cir. 2000) (citing *Central Trust*, 63 So. at 576); *accord Vidrine v. Enger*, 752 F.2d 107, 108 (5th Cir. 1984) ("In most cases, the Mississippi statute commences to run on the date of the wrongful act; the date injury was or should have been discovered is the date the cause of action 'accrues' only in exceptional cases . . . .").  Here, Plaintiffs' alleged negligence-based and misrepresentation-based claims arising from the sale of the policies all accrued when the transactions were complete and policies issued many years ago.

### 1.    Plaintiffs' Negligence-Based Claims Accrued when the Policies First Issued

Plaintiffs contend that Eleuterius improperly procured the homeowners, business, and flood insurance policies.  The O'Keefes obtained their homeowners policy by October 2001, the business policy by August 1999, and the flood policy by November 2001.  *See* Ex. C at 100001, 100029, 100043; Ex. G at 100024, 100032-33; Ex. E at 100009, 100018.  Likewise, The Dancel Group, Inc. alleges that a business policy issued for its operations in 1999 and that it paid all the premiums for such a policy.  TAC ¶ 21; SAC ¶¶ 9, 13; *see also* Ex. P ¶¶ 8, 17, 24.  Accordingly, any alleged claims against Eleuterius for negligently procuring the policies accrued when they first issued many years ago.

Sounding in negligence, such claims come into existence when an insurance agent undertakes to procure insurance according to the insured's specific instructions and negligently fails to do so.  *See, e.g.*,

*McKinnon v. Batte*, 485 So. 2d 295, 297-98 (Miss. 1986).  To maintain a negligence-based claim arising from the procurement of a policy, Plaintiffs "must prove duty, breach of that duty, damages and causation by a preponderance of evidence."  *Haggans*, 803 So. 2d at 1252; *accord Gibson v. Market Int'l, Ltd.*, 2008 WL 3842977, at *5 (S.D. Miss. Aug. 14, 2008) (Ozerden, J.) ("A claim for an agent's failure to procure insurance sounds in negligence.").  If an agent negligently procures a policy and the insured pays a premium, a cause of action has accrued.  For over thirty years, the Mississippi Supreme Court has recognized that if an agent negligently procures a policy, the policyholder sustains damages when the premium is paid, even "'where no loss occurs.'"  *Simpson v. M-P Enter., Inc.*, 252 So. 2d 202, 207 (Miss. 1971) (quoting A.L.R.).

Here, Plaintiffs paid the premiums for the subject policies when the policies first issued, thereby sustaining damages and fully ripening their causes of action, if any.  It is not disputed that the O'Keefes paid the premiums for their homeowners and flood insurance policies from the beginning, and The Dancel Group, Inc. alleges that it paid premiums from the first instance the business policy issued.  TAC ¶ 13; SAC ¶ 13; *see also* Ex. P ¶ 24.  While The Dancel Group, Inc. was not covered by the O'Keefes' business policy, The Dancel Group, Inc.'s negligence-based claims against Eleuterius would still have accrued, if at all, when Plaintiffs allege it first paid the premium in 1999.  Accordingly, when the policies first issued, all the elements ripened for any negligence-based claim arising from the procurement of insurance, and the statute of limitations began to run.

## 2.    Plaintiffs' Misrepresentation-Based Claims Accrued when the Policies First Issued

Plaintiffs' misrepresentation-based claims against Eleuterius arising from the procurement of insurance also accrued when the policies first issued many years ago.  By that time, all the elements for Plaintiffs' misrepresentation-based claims would have been present, if at all.  Plaintiffs' misrepresentation-based claims against Eleuterius "began to run at the time he made the representations, and any claim based on allegations that those representations were negligent misrepresentations became

time-barred three years later . . . under Miss. Code Ann § 15-1-49." *Goodfellow v. State Farm Fire & Cas. Co.*, 2008 WL 619405, at *1 (S.D. Miss. Mar. 3, 2008) (Senter, J.).  This Court has also ruled that "[w]here the alleged misconduct occurs during contract formation, the limitations period begins to run upon the purchase of the policy." *Poole v. Colonial Life & Accident Ins. Co.*, 2007 WL 4287534, at *4 (S.D. Miss. Dec. 3, 2007) (Ozerden, J.)  The Fifth Circuit agrees:  "Because the policy terms are unambiguous, the [plaintiffs'] claims accrued at the time the misrepresentation was made." *Leonard*, 499 F.3d at 440; *accord Agnew v. Wash. Mut. Fin. Group*, 244 F. Supp. 2d 672, 676 (N.D. Miss. 2003) (holding "the statute of limitations began to run on the dates on which the various agreements were signed"); *Oaks v. Sellers*, 953 So. 2d 1077, 1083 (Miss. 2007) (action for misrepresentation of policy terms accrues at the issuance of the policy).  Accordingly, Plaintiffs' misrepresentation-based claims against Eleuterius related to the sale of the insurance policies accrued when Plaintiffs allegedly relied on misrepresentations by paying premiums to buy the policies.

### C.    Plaintiffs' Claims Are Time-Barred

Plaintiffs judicially admit that they began obtaining insurance coverage through Eleuterius in 1995, about *eleven years* before they filed suit. TAC ¶¶ 8, 61; SAC ¶¶ 9, 21.  The homeowners policy issued in October 2001, the business policy in August 1999, and the flood policy in November 2001 – in each case, the insurance applications were complete, premiums paid, and policies issued.  Ex. C at 100001, 100029, 100043; Ex. E at 100009, 100018; Ex. G at 100024, 100032-33.  But by the time Plaintiffs filed suit on August 28, 2006, more than five years lapsed since the homeowners policy issued, more than seven years for the business policy, and more than four years for the flood policy.  Yet Plaintiffs had only three years to file suit.  Miss. Code Ann. § 15-1-49(1).  Having failed to bring suit within the prescribed statute of limitations, Plaintiffs' claims are time-barred as a matter of law.  *Id.*; *see Leonard*, 499 F.3d at 440; *Chester v. State Farm Fire & Cas. Co.*, 2008 WL 660440, at *3 (S.D. Miss. Mar. 6, 2008) (Senter, J.); *Goodfellow*, 2008 WL 619405, at *1.  Accordingly, this Court should enter

summary judgment for Eleuterius and dismiss all Plaintiffs' claims against him with prejudice.

## V.    PLAINTIFFS' NEGLIGENCE-BASED CLAIMS FAIL AS A MATTER OF LAW

In addition to being time-barred, Plaintiffs' negligence-based claims against Eleuterius are all substantively defective.  To measure an insurance agent's duty to a prospective insured, Mississippi courts analyze the scope of the prospective insured's request for insurance.  As this Court held, "[u]nder applicable Mississippi law, an insurance agent or broker who undertakes to procure insurance for a customer is under a duty to prospective purchaser to exercise reasonable care, and this includes the duty to *procure the coverage requested*."  *Gibson*, 2008 WL 3842977, at *5 (citation omitted; emphasis added); *see, e.g.*, *Lafleur*, slip op. at 5; *Smith v. Nationwide Ins. Co.*, 2009 WL 736199, at *6 (S.D. Miss. Mar. 18, 2009) (Senter, J.); *Rhodes v. State Farm Fire & Cas. Co.*, 2009 WL 563876, at *5 (S.D. Miss. Mar. 4, 2009) (Ozerden, J.).  Mississippi "cases that recognize this tort involve allegations that the agent either failed altogether to procure coverage or the policy procured by the agent did not provide the coverage *requested by the insured*."  *Curry v. State Farm Mut. Auto. Ins. Co.*, 599 F. Supp. 2d 734, 738-39 (S.D. Miss. Jan. 29, 2009) (Lee, J.) (citing cases; emphasis added).  Plaintiffs, here, cannot as a matter of law and fact demonstrate that Eleuterius failed to procure the requested coverage.

For the O'Keefe's house, Eleuterius procured a homeowners policy and flood policy.  Ex. B; Ex. F.  The O'Keefes claim that Eleuterius was asked to procure "adequate" and "appropriate" insurance for their house and did not do so.  TAC ¶¶ 61, 63.  Those claims, however, fail as a matter of law to create a duty in Eleuterius to procure such insurance.  As a recent Mississippi court has held, "[a] request for adequate coverage is too broad to create a duty to obtain specific amounts of insurance."  *Lafleur*, slip op. at 9.  "Such a request by an insured is too general to give the agent notice of any special need beyond the desires of any insured for appropriate coverage" and "would require an agent to be prescient with regard to how much loss any insured might sustain in every potential situation."  *Id.* at 9-10.  Nor was Eleuterius asked to increase the amount of coverage on the O'Keefes' homeowners policy.  C. O'Keefe

Dep. (attached as Ex. T) at 83:14-17, 91:23-93-15, 124:17-126:20.  Thus, the O'Keefes' negligence-based claims against Eleuterius fail as a matter of law.

The Dancel Group, Inc.'s negligence-based claims against Eleutierus also fail.  The Dancel Group, Inc. claims that Eleuterius negligently failed to procure a business policy for the corporation. TAC ¶¶ 62-64, 69.  Yet, The Dancel Group, Inc. corporate representative testified in deposition that The Dancel Group, Inc. did not ask to be insured by the business policy:

> Q.  I'm going to hand you that.  Do you recall receiving a yearly renewal certificate with State Farm for that business policy from the date that you applied and first obtained that coverage up through the date of Hurricane Katrina.?
>
> A.  I do.  And if I didn't, I would usually ask for a copy of the policy in case it was updated.
>
> Q.  At any time did you ask to have Dancel added as a named insured under that policy?
>
> A.  No.

Ex. S at 105:2-14; *accord* Ex. T at 138:14-17 (regarding the business building, "I did not ask specific for any specific insurance").  In fact, as discussed above, *see supra* Point II, The Dancel Group, Inc was insured by another company, USFG.  Without requesting that it be insured, The Dancel Group, Inc. cannot sustain its negligence-based claims against Eleuterius.

For the flood policy, the O'Keefes claim they asked Eleuterius to procure "excess" flood insurance, *i.e.*, an amount beyond the maximum prescribed under the NFIP.  TAC ¶ 63.  Yet, Plaintiffs judicially admit in their Third Amended Complaint that Eleuterius was "prohibited from offering excess flood insurance to State Farm insureds through the private market."  *Id.* ¶ 17.  Plaintiffs' factual assertions in their complaint are binding and incontrovertible by Plaintiffs.  *See, e.g., Johnson v. Houston's Restaurant, Inc.*, 167 F. App'x 393, 395 (5th Cir. 2006) ("This court's precedent makes clear that '[f]actual assertions in pleadings are judicial admissions conclusively binding on the party that made them.  [F]acts admitted in pleadings 'are no longer at issue . . . .'") (citing cases; citation omitted).  Plaintiffs' factual admission that Eleuterius was prohibited from offering excess flood insurance

undermines their negligence-based claims because Mississippi law does not hold an insurance agent liable for not procuring insurance that he could not procure. As the Mississippi Court of Appeals held, "[i]f no insurance could have been obtained, then a duty to procure insurance could not have been breached." *Haggans*, 803 So. 2d at 1252 (agent could not have obtained insurance for vacant property). Accordingly, Plaintiffs' negligence-based claims against Eleuterius should be dismissed with prejudice.

## VI.    PLAINTIFFS' MISREPRESENTATION-BASED CLAIMS HAVE MULTIPLE DISPOSITIVE DEFECTS

In addition to being time-barred, Plaintiffs' misrepresentation-based claims are substantially defective. Plaintiffs' misrepresentation-based claims, including misrepresentation, fraud, fraudulent misrepresentation, and fraudulent inducement, arise from (1) the language, scope, and availability of insurance, and (2) the adjustment of their insurance claims following Hurricane Katrina, *see, e.g.*, TAC ¶¶ 61-75. As discussed below, all of Plaintiffs' misrepresentation-based claims have multiple defects that are each individually dispositive.

Under Mississippi law, Plaintiffs must demonstrate *every* element of a claim for misrepresentation, including "(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." *Johnston v. Palmer*, 963 So. 2d 586, 595 (Miss. Ct. App. 2007). For their fraud-based claims, including fraud, fraudulent misrepresentation, and fraudulent inducement, Plaintiffs must put forth clear and convincing evidence for *every* element. *See id.*[6] Where, as here, there is "a complete failure of proof on an essential element of the nonmoving party's case[, that] necessarily renders *all* other facts immaterial," entitling the moving party to summary judgment. *Celotex Corp.*, 477 U.S. at 322-23 (emphasis added). As shown below,

---

[6] Plaintiffs must present clear and convincing evidence in response to a motion for summary judgment just as they are required to do at trial. *See, e.g.*, *Anderson*, 477 U.S. at 254 (holding the same clear and convincing evidentiary standard governs at the summary judgment stage that would govern at trial: "We are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.").

Plaintiffs' misrepresentation-based claims suffer from multiple fatal defects, any one of which is sufficient to enter summary judgment for Eleuterius on those claims.

### A.    No Reliance Upon Alleged Misrepresentations Arising from the Purchase of the Homeowners or Business Policies

Plaintiffs cannot demonstrate that they reasonably and detrimentally relied on any alleged misrepresentations by Eleuterius regarding the scope of coverage under the homeowners or business policies. Plaintiffs could not have reasonably relied on any alleged representation that contradicted the policy, including any representation that the homeowners policy insured against all causes of loss or that The Dancel Group, Inc. was insured by the O'Keefes' business policy. Nor can The Dancel Group, Inc. show that it detrimentally relied on any misrepresentation regarding the O'Keefes' business policy because The Dancel Group, Inc. separately owned insurance. Accordingly, Plaintiffs' misrepresentation-based claims arising from the purchase of the homeowners and business policy fail as a matter of law.

Plaintiffs allege that Eleuterius made broad representations about the homeowners and business policies themselves, including that the policies would pay for *any* and *all* damage. In particular, Plaintiffs claims that Eleuterius said the homeowners policy paid for "*any* damage" the O'Keefes' property may sustain. Pls. Answers to Interrogs. (attached as Ex. M) at No. 8 (emphasis added); *accord id.* at No. 9 (alleging the policy would cover "*any and all* damages") (emphasis added); TAC ¶¶ 16, 18, 63, 73 (same; "any and all losses caused by a Hurricane"; "comprehensive coverage for Hurricanes"). Similarly, for the business policy, Mrs. O'Keefe alleges that Eleuterius said the policy would cover "*any and all* actual loss of business income sustained by Dancel." Ex. P ¶ 10 (emphasis added); *accord* July 2, 2009 O'Keefe Aff. (attached as Ex. Q) ¶ 8; *see also* TAC ¶¶ 21-22, 63, 69, 73 (alleging Eleuterius said the O'Keefes' business policy insured The Dancel Group, Inc.).

Those misrepresentation-based claims against Eleuterius fail because Plaintiffs cannot show that they reasonably relied upon them. Any reliance by Plaintiffs upon alleged misrepresentations regarding the scope of coverage contrary to the policies is unreasonable as a matter of law. As Judge Senter

recently held, the Fifth Circuit has rejected misrepresentation arguments, like Plaintiffs', that State

Farm's policy would cover any damage related to a hurricane:

> The Court is all too familiar with the inadequate insurance coverage to which Plaintiff refers – that in requesting 'hurricane coverage,' he was not covered for everything related to a hurricane, although the policy issued to him contains a valid and unambiguous flood exclusion . . . .  The United States Court of Appeals for the Fifth Circuit has made its position well known on the subject of blanket hurricane coverage.  *Leonard v. Nationwide Mutual Insurance Co.,* 499 F.3d 419 (5th Cir. 2007), recognized that an 'insured has an affirmative duty to read the policy,' and '[w]hether the policy was read or not . . . constructive knowledge of its contents is imputed to the policyholder.' *Id.* at 438.

*Payment v. State Farm Fire & Cas. Co.*, 2008 WL 5381925, at *2 (S.D. Miss. Dec. 18, 2008)(Senter, J.).

The Fifth Circuit has held that the same allegations that Plaintiffs make here about exclusion-free

coverage is "objectively unreasonable in light of the policy language clearly excluding water damage,

including damage caused by a flood," *Leonard*, 499 F.3d at 440, in part because knowledge of the

insurance policies is imputed to Plaintiffs as a matter of law, "[w]hether the policy was read or not." *Id.*

at 438; *accord Ross v. Citifinancial Inc.*, 344 F.3d 458, 464 (5th Cir. 2003); *see also Gulf Guar. Life Ins.*

*Co. v. Kelley*, 389 So. 2d 920, 922 (Miss. 1980) (an insured "may not neglect or purposely omit

acquainting himself with the terms and conditions of the insurance policy and then complain of his

ignorance of them"); *see also Guideone Mut. Ins. Co. v. Rock*, 2009 WL 2195047, at *2-4 (N.D. Miss.

July 22, 2009) (entering summary judgment and dismissing misrepresentation-based claims arising from

the sale of the policy; "'[i]n the face of an insurance contract, a party's reliance upon contrary

representations by the agent is unreasonable'") (citation omitted).  This Court, too, has applied these

principles and dismissed misrepresentation-based claims arising from the purchase of insurance as a

matter of law:  "the plaintiff has an affirmative duty to read the policy in question and whether it is read

or not, constructive knowledge of its content is imputed to the policy holder," making the plaintiffs

"charged with the knowledge of the policy's contents" as a matter of law.  *Fowler*, Hr'g Tr. at 80:10-21.

"And reliance by the plaintiffs on such purported representations . . . which contradict the clear policy

language would not be reasonable as a matter of law, pursuant to *Leonard*." *Id.* at 21-25.

14

These principles apply with equal force here. Plaintiffs held their homeowners and business insurance policies for many years before Hurricane Katrina. Those policies unambiguously disclosed the scope of coverage and the named insureds. The O'Keefes' homeowners and business policies clearly and unambiguously excluded flood damage. Ex. B at 100016; O'Keefes' 2001 Homeowners Policy (attached as Ex. N) at 100013 (same); Ex. D at 100011; O'Keefe 1999 Business Policy (attached as Ex. O) at 100011. The Fifth Circuit has held that State Farm's water damage exclusion clearly excludes damage from storm surge flooding: "'storm surge' is 'little more than a synonym for a tidal wave or wind-driven flood,' both of which are perils excluded by the State Farm policy." *Tuepker v. State Farm Fire & Cas. Co.*, 547 F.3d 346, 353 (5th Cir. 2007) (quoting *Leonard*, 499 F.3d at 437); *accord Corban v. United Servs. Auto. Ass'n*, – So. 3d –, 2009 WL 3208704, at *7 (Miss. Oct. 8, 2009) (en banc) ("This Court finds that 'storm surge' is plainly encompassed within the 'flood' or 'overflow of a body of water' portions of the 'water damage' definition, and no other 'logical interpretation' exists.") Any reliance on contrary representations by the O'Keefes is, therefore, unreasonable. Accordingly, summary judgment for Eleuterius is proper on Plaintiffs' misrepresentation-based claims arising from the homeowners and business policies.

Moreover, Plaintiffs' misrepresentation-based claims arising from the business policy fail for several additional reasons. First, Plaintiffs cannot show that The Dancel Group, Inc. detrimentally relied on any representation that it was insured by the O'Keefes' business policy. In fact, The Dancel Group, Inc. purchased its own business insurance from another company. *See supra* Part II. Second, Plaintiffs could not have reasonably relied upon any representation that The Dancel Group, Inc. was insured. Contrary to any alleged representations otherwise, the O'Keefes are the declared insureds on the face of the business policy, not The Dancel Group, Inc. Ex. D at 100001 (declaring "FOSTER, CELESTE A & O'KEEFE, DANIEL" as insureds); *accord* Ex. O at 100001 (same). The Court need look no further than the plain language of the insurance policy to reach the conclusion. Courts "are bound to enforce

15

contract language as written and give it its plain and ordinary meaning." *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002) (en banc); *accord Wiley v. State Farm Fire & Cas. Co.*, – F.3d –, 2009 WL 3233528, at *3 (5th Cir. Oct. 9, 2009). "Where the contract is unambiguous, the 'parties are bound by the language of the instrument.'" *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997) (citation omitted).

Third, in addition to Plaintiffs' constructive notice that The Dancel Group, Inc. was not insured by the O'Keefes' policy, Plaintiffs had actual notice. The Dancel Group, Inc.'s 30(b)(6) representative testified that "yearly renewal certificate[s]" were all received and that The Dancel Group, Inc. did not ask to be a named insured under the business policy "[a]t any time." Ex. S at 105:2-10. Moreover, The Dancel Group, Inc. purchased a business policy for its business operations, personal property, and other interests from USFG. Ex. H at 17. The "**Named Insured**" on the USFG business policy is "DANCEL, INC." Ex. J at 100348 (emphasis in original). Furthermore, The Dancel Group, Inc. filed insurance claims with USFG for loss to its business income, personal property, and other losses. *Id.* at 100148-51. During the adjustment, Mrs. O'Keefe stated, "[w]e are struggling to reestablish our business and your process and payment of our loss of income would make this much easier, this is why I purchased business interruption from your company." *Id.* at 100306. The Dancel Group, Inc. made clear to USFG that it was "submitting our business interruption claim resulting from Hurricane Katrina." *Id.* at 100249. USFG paid The Dancel Group, Inc. at least $425,239.25 from USFG for covered losses, including $227,326.00 for business income and $187,913.25 for business personal property. *Id.* at 100139-40, 100325, 100343. Therefore, Plaintiffs had actual knowledge that The Dancel Group, Inc. was insured by USFG, not State Farm. Plaintiffs could not have reasonably relied on any contrary representations.

Plaintiffs' actual notice that The Dancel Group, Inc. was not insured under the O'Keefes' business policy is reinforced by the O'Keefes' insurance application. Mrs. O'Keefe signed the application, and, as reflected on the top, it was submitted for an "individual" – not a "corporation." Ex. K at 1. "Dancel"

does not appear anywhere in the application. *See id.* The "d/b/a" field was empty, *id.*, and during USFG's adjustment of The Dancel Group, Inc.'s business interruption claims, Mrs. O'Keefe made clear that The Dancel Group, Inc. was not a d/b/a. Ex. J at 100177.

Accordingly, Plaintiffs are unable to demonstrate that they relied upon any alleged misrepresentations by Eleuterius regarding the homeowners or business policies. This Court should, therefore, enter summary judgment for Eleuterius on all such claims.

### B.    Plaintiffs' Misrepresentation-Based Claims Arising from the Purchase of the Flood Policy Suffer from Numerous Dispositive Defects

Plaintiffs' alleged claims arising from the sale of the flood insurance policy fare even worse. Although Plaintiffs' failure of proof on one essential element defeats a claim, *see, e.g.*, *Celotex*, 477 U.S. at 322-23, Plaintiffs' misrepresentation-based claims arising from the sale of the flood policy suffer multiple dispositive defects.

The O'Keefes allege that Eleuterius advised against purchasing flood insurance at all, but the O'Keefes admittedly disregarded Eleuterius' purported advice and purchased flood insurance. TAC ¶¶ 15, 18, 73. Therefore, the O'Keefes did not detrimentally rely on any purported misrepresentation regarding the purchase of federal flood insurance. The O'Keefes further allege that Eleuterius represented that "excess" flood insurance beyond the amount prescribed under the NFIP was not available "from any source," and the O'Keefes did not purchase excess flood insurance for their house. TAC ¶¶ 16-18, 73. This claim, too, fails as a matter of law.

First, the O'Keefes have presented no evidence that so-called "excess" flood insurance was, in fact, available for their house when they did not purchase it in November 2001. To sustain their misrepresentation-based claims, the O'Keefes must show that the purported statement by Eleuterius was, in fact, false. Yet, the O'Keefes have not done so.

Second, the O'Keefes have presented no evidence that Eleuterius knew that excess flood insurance was, in fact, available for the O'Keefes' house in November 2001 when the O'Keefes did not

17

purchase it.  Yet, to sustain their misrepresentation-based claims, the O'Keefes must show that Eleuterius knew his purported statement that no excess flood insurance was available was false.  The O'Keefes' inability to do so undermines their claims.

Third, the O'Keefes cannot establish that they detrimentally relied on the alleged misrepresentation that no excess flood insurance was available.  To the contrary, the O'Keefes have steadfastly maintained throughout this case that they did not purchase excess flood insurance because they believed that their homeowners policy would "kick in" or "pick up" for the flood policy and provide coverage for flood damage.  In the O'Keefes' Second Amended Complaint, this belief was the exclusive reason for which they did not purchase excess flood insurance.  SAC ¶ 12; *accord* Proposed Am. Compls. [85-1] ¶ 74(1), [140-3] ¶¶ 12, 64(1); *see also* Ex. P ¶ 18.  The O'Keefes also admitted in their opposition to Eleuterius' summary judgment motion that they did not purchase excess flood insurance because they believed the homeowners policy "would provide comprehensive coverage over and above the coverage provided by the [flood] policy."  [140] at 22-23.  As discussed above, the O'Keefes' misrepresentation-based claims based upon the belief that the homeowners policy would cover any and all losses is unreasonable as a matter of law.  *See supra* Point V.A.  In none of these representations to the Court did the O'Keefes allege that they did not purchase excess flood insurance based upon the belief that it was not available.

That the O'Keefes' factual admissions appear in superseded pleadings does not change the effect of those admissions.  The Fifth Circuit has held that admissions made in superseded pleadings "still operate as adverse evidentiary admissions properly before the district court in its resolution of the factual issue."  *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 & n.5 (5th Cir. 1983).  The same is true for factual assertions in summary judgment oppositions.  They "'are functionally equivalent to admissions on file'" under Fed. R. Civ. P. 56 and, therefore, "'may be used in determining that there is no genuine issue as to any material fact.'"  *United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253

(7th Cir. 1980) (quoting 10 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2723 (1973)). This Court should regard such admissions as "established" fact. *United States v. Monkey*, 725 F.2d 1007, 1009 (5th Cir. 1984) (citing *One Heckler-Koch Rifle*, 629 F.2d at 1253).

Moreover, in their latest complaint, the O'Keefes reinforce their admission that they declined to purchase excess flood insurance because they believed the homeowners policy would cover all losses. TAC ¶ 18. The O'Keefes also add that an additional reason for not buying excess flood insurance was their belief that "excess flood insurance was not available." *Id.* Yet, the O'Keefes do not allege (and cannot establish) that this additional belief was sufficient, on its own, to control their decision not to buy excess flood insurance, nor do they allege that it was even a significant reason. Nor can that additional allegation paper over their numerous factual admissions that they did not buy excess flood insurance based upon their belief that the homeowners policy would cover their flood damage.

Accordingly, Plaintiffs cannot sustain each element of their misrepresentation-based claims arising from the flood policy, and summary judgment for Eleuterius on all such claims is proper.

## C.    No Reliance Arising from the Adjustment of Plaintiffs' Insurance Claims

Plaintiffs' misrepresentation-based claims arising from the adjustment of their insurance claims fail because they cannot demonstrate that they detrimentally relied on any misrepresentations. *See, e.g.*, TAC ¶ 73. To the contrary, by filing suit to dispute the adjustment of their claims, Plaintiffs have provided "conclusive evidence that [they] did not detrimentally rely on any alleged wrongdoing" during the claims adjustment. *Gagne v. State Farm Fire & Cas. Co.*, 2008 WL 660437, at *1 (S.D. Miss. Feb. 6, 2008) (Senter, J.); *accord Gunn v. Lexington Ins. Co.*, 2008 WL 2039543, at *2 (S.D. Miss. May 12, 2008) (Senter, J.); *McIntosh*, 2008 WL 1850094, at *3. In at least one recent Hurricane Katrina case, this Court has adopted the same reasoning from *McIntosh* and dismissed such misrepresentation claims as a matter of law. *Fowler*, Hr'g Tr. at 84:18-85:25. A similar ruling is warranted here.

19

## VII.  CONCLUSION

Accordingly, for all the foregoing reasons, this Court should grant Eleuterius's motion for

summary judgment in its entirety and dismiss all claims against him with prejudice.

**RESPECTFULLY SUBMITTED**, this 5<u>th</u> day of November, 2009.

> **WEBB, SANDERS & WILLIAMS, P.L.L.C.**
> **363 NORTH BROADWAY**
> **POST OFFICE BOX 496**
> **TUPELO, MISSISSIPPI 38802**
> **(662) 844-2137**
> **DAN W. WEBB, MSB 7051**
> **J. DOUGLAS FOSTER, MSB #100641**
>
> **BY:**    **/s/ Dan W.Webb**
>           **DAN W. WEBB**

## <u>CERTIFICATE OF SERVICE</u>

This will certify that the undersigned attorney for Defendant, Marshall J. Eleuterius, does hereby certify the foregoing has been electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filing to the following ECF participant:

**Christopher C. Van Cleave, Esq.**
**CORBAN, GUNN & VAN CLEAVE, PLLC**
**146 Porter Avenue (39530)**
**Post Office Drawer 1916**
**Biloxi, Mississippi 39533-1916**

**THIS,** the <u>5</u><sup>th</sup> day of November, 2009.

BY:    <u>/s/ Dan Webb</u>
       **DAN W. WEBB**