UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DANIEL B. O'KEEFE and
CELESTE A. FOSTER O'KEEFE,
Individually and d/b/a THE DANCEL GROUP, INC.;
and THE DANCEL GROUP, INC.                                               PLAINTIFFS

VS.                                                     Civil Action No. 1:08cv600 HSO-LRA

STATE FARM FIRE AND CASUALTY
COMPANY; MARSHALL J. ELEUTERIUS;
and John and Jane Doe Defendants A-H                                     DEFENDANTS

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS RELATING TO THE NATIONAL FLOOD INSURANCE PROGRAM**

## **TABLE OF CONTENTS**

                                                           **Page**

Preliminary Statement ..........................................................................................................................1

The National Flood Insurance Program ...............................................................................................3

Factual Background .............................................................................................................................4

Summary Judgment Standard ..............................................................................................................5

     I.     Having Been Paid an Amount Equal to the Coverage Limits of Their SFIP, Plaintiffs Can Have No Contractual Claim for Compensatory Damages ............................................6

     II.    Plaintiffs' Extra-Contractual and Tort Claims and Requests for Relief Fail........................7

            A.    Plaintiffs' Extra-Contractual and Tort Claims Based on State Farm's Adjustment of the O'Keefes' NFIP Policy Are Pre-empted by Federal Law...........9

            B.    State Farm's Purported Lobbying of FEMA as to the Adoption of Amended Claims Handling Procedures Cannot Be the Basis for Imposing Liability Here ..................................................................................................................11

                  1.    Claims Relating to FEMA's Post-Katrina Guidelines are Pre-Empted Because They Too Are Part of the NFIP Regulatory Regime ...................11

                  2.    FEMA's Amended Claims Handling Guidelines Were Not in Effect When the O'Keefes' NFIP Claim Was Paid and Would Not Have Altered the NFIP Claim Payment Even if They Had Been in Effect.........12

                  3.    Lobbying Is Protected by the First Amendment ........................................13

Conclusion ........................................................................................................................................16

**PRELIMINARY STATEMENT**

State Farm Fire and Casualty Company ("State Farm") respectfully submits this memorandum in support of its motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, as to all of Plaintiffs' claims relating to the National Flood Insurance Program ("NFIP").

The O'Keefes had a State Farm homeowners policy and federal flood insurance policy at the time of Hurricane Katrina, both of which covered their residence and personal property. State Farm issued the O'Keefes the federal flood insurance policy for their residence acting in its capacity as a fiscal agent of the federal government under the NFIP.[1] The O'Keefes' property sustained significant damage during Hurricane Katrina, including severe flood damage, and the O'Keefes filed insurance claims under both their homeowners and flood policies. State Farm investigated those claims, paid the O'Keefes $7,705.48 under their homeowners policy for covered wind damage, and paid the O'Keefes $350,000 under their flood insurance policy for flood damage. State Farm's flood insurance payments were the maximum coverage limits available under their federal flood insurance policy. The O'Keefes' accepted and retained these payments.

At its core, this case is a typical Hurricane Katrina insurance dispute involving ordinary issues of the extent of covered wind damage and a homeowners insurance policy. Plaintiffs, however, are attempting to expand this case beyond these core issues and seek to litigate issues arising from State Farm's adjustment and payment of their federal flood insurance policy. Plaintiffs advance various claims, both contractual and extra-contractual (*e.g.*, fraud and negligence), and seek an assortment of different relief, including compensatory damages, extra-contractual damages, punitive damages and attorney fees, that relate to alleged conduct by State Farm relating to the NFIP. The complained-of conduct ranges from State Farm's adjustment of the O'Keefes' NFIP policy to State Farm's purported exercise of its First Amendment right to lobby the Federal Emergency Management Agency ("FEMA")

---

[1] Plaintiff The Dancel Group, Inc. did not have a federal flood insurance policy issued by State Farm.

to adopt amended claims handling guidelines following Hurricane Katrina (which guidelines applied to certain NFIP claims, but not to the O'Keefes'). As demonstrated below, the Fifth Circuit has clearly rejected such federal flood insurance claims as a matter of law.

As an initial matter, any contractual claims based on the O'Keefes' NFIP policy are precluded by the undisputed facts. State Farm paid the O'Keefes the maximum coverage limits under their federal flood insurance policy, and The Dancel Group, Inc. did not have a federal flood insurance policy through State Farm. It is, therefore, axiomatic that no contractual claim can lie against State Farm for compensatory damages related to the flood policy under such circumstances.

In addition, to the extent that Plaintiffs assert extra-contractual or tort claims based on State Farm's adjustment of the O'Keefes' NFIP policy, it is well-established in the Fifth Circuit that such claims are pre-empted by federal law. In creating the NFIP, Congress implemented a comprehensive regulatory regime that governs, *inter alia*, an NFIP insurer's adjustment of claims under a federal flood insurance policy. The Fifth Circuit has rejected extra-contractual or tort claims against NFIP insurers, such as State Farm here, as precluded by that regulatory network. Likewise, recovery of punitive damages and attorney fees have also been disallowed. Thus, any extra-contractual claims or requests for relief predicated on State Farm's adjustment of the O'Keefes' federal flood insurance policy fail as a matter of law.

To the extent that Plaintiffs' extra-contractual or tort claims purport to be based on State Farm's lobbying of FEMA to adopt amended guidelines for handling NFIP claims in the aftermath of Hurricane Katrina, those, too, fail for at least three independent reasons. First, whether the result of State Farm's lobbying or not, the amended claims handling guidelines that were adopted by FEMA became part of the NFIP's regulatory regime, and, as discussed herein, claims against NFIP insurers based on their administration of such regulations are pre-empted. Plaintiffs cannot make an end-run around pre-emption by attempting to disguise an attack on NFIP regulations themselves as a challenge to lobbying

2

conduct. Second, even if federal law permitted Plaintiffs to challenge NFIP regulations through tort claims against an NFIP insurer (which it does not), the amended guidelines about which Plaintiffs complain were not adopted by FEMA until **after** the O'Keefes' claim had been paid in full by State Farm. Moreover, even if the amended guidelines had been in effect before the O'Keefes' claim was paid, under such guidelines, the O'Keefes' claim would have been handled according to State Farm's normal claim procedures, *i.e.*, no differently than it was actually handled, prior to the effective date of those guidelines. Thus, Plaintiffs cannot show that State Farm's purported lobbying activities had any effect on them, much less a tortious one. Third, State Farm's lobbying of FEMA – even if it had resulted in guidelines that impacted Plaintiffs (which it did not) – is protected conduct under the First Amendment of the United States Constitution and cannot provide the basis for imposing liability against State Farm here.

For these reasons, and based on the arguments and authorities set forth below, all of Plaintiffs' claims relating to the NFIP should be dismissed as a matter of law.

## THE NATIONAL FLOOD INSURANCE PROGRAM

In 1968, Congress enacted the National Flood Insurance Act to create a "unified national program" for flood insurance – the NFIP. 42 U.S.C. § 4001. Under the NFIP, FEMA is authorized to enter into arrangements with "Write Your Own" ("WYO") companies, such as State Farm, to write and adjust federal flood insurance policies, called the Standard Flood Insurance Policy ("SFIP"). *See* 42 U.S.C. §§ 4071(a)(1), 4081(a). Federal regulations define the WYO arrangements and control the marketing and sale of flood insurance. *See* 44 C.F.R. § 62.23 (2008); 44 C.F.R. pt. 62, app. A, art. II(G)(2) (2008). The Federal Insurance Administration ("FIA") also "extensively regulate[s] the participating companies' activities when selling or administrating the Standard Flood Insurance Policies." 44 C.F.R. pt. 62, app. A, art. I, para. 5 (2008); *see, e.g.*, 44 C.F.R. pt. 62, app. A, art. II(G)(1)-(2) (2008). FEMA funds the NFIP by extending letters of credit to WYO companies that draw from the

federal treasury to pay flood claims and expenses, including the costs of litigation. 44 C.F.R. § 62.23(i)(6), (9) (2008); 44 C.F.R. pt. 62, app. A, arts. III(D), IV (2008). As a WYO insurer under the NFIP, State Farm has no discretion to deviate from governing federal regulations without a prior written waiver from the FIA Administrator. *See* 44 C.F.R. pt. 62, app. A, art. II(G)(1)-(2) (2008); 44 C.F.R. § 61.13(d) (2008).

### FACTUAL BACKGROUND

Through their agent, Defendant Marshall J. Eleuterius, the O'Keefes sought, *inter alia*, flood insurance coverage for their residence at 12901 Hanover Drive, Ocean Springs, Mississippi. *See* Third Am. Compl. [245] ¶¶ 13, 15-18.[2] Pursuant to the NFIP and in its capacity as a WYO company, State Farm issued the O'Keefes a SFIP, policy number 24-RC-0482-5, which was effective from November 30, 2004 to November 30, 2005. *See* Ex. 1 (O'Keefes' NFIP policy (policy number 24-RC-0482-5), bearing bates numbers FL-CP-24-Z204-136 100000 through 100025).[3] The O'Keefes' federal flood insurance policy expressly provides that it is "[i]ssued pursuant to the National Flood Insurance Act of 1968 as amended and so administered by the Federal Emergency Management Agency." Ex. 1 (100001). As to governing law, the policy provides the following:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.) and Federal common law.

*Id.* at (100023). The policy reflects coverage limits of $250,000 for the O'Keefes' house and $100,000 for their personal property. *Id.* at (100001).

On August 29, 2005 (during the coverage period of the O'Keefes' NFIP policy), Hurricane

---

[2] Under the NFIP, an insurance agent acts as an agent **for the insured** when procuring a SFIP, not for the insurer, who acts as a fiscal agent of the United States. *See Demouy v. Allstate Ins. Co.*, No. 06-9629, 2008 WL 3851594, at *3 (E.D. La. Aug. 12, 2008). Mr. Eleuterius has separately moved for summary judgment on all claims against him. [314], [315].

[3] The exhibits referenced herein (cited as "Ex.") are attached to State Farm's Motion for Partial Summary Judgment as to Plaintiffs' Claims Relating to the National Flood Insurance Program, which is filed herewith.

Katrina struck the Gulf Coast and significantly damaged the O'Keefes' house and personal property. *See* Third Am. Compl. [245] ¶ 30. As much of such damage was due to flooding, shortly thereafter, State Farm issued three separate payments to the O'Keefes under their federal flood insurance policy – one on September 7, 2005 in the amount of $10,000 and two on September 12, 2005 in the amounts of $250,000 and $90,000. *See* Ex. 2 (excerpts of claim file relating to O'Keefes' NFIP policy, bearing bates numbers FL-24- Z204-136 100000-100035B, 100047, 100070-74, 100081); *id.* (1000047, 100070-74). The total of the payments was $350,000, an amount equal to the coverage limits under the O'Keefes' NFIP policy. The O'Keefes accepted and retained these payments.

On September 21, 2005, nine days after State Farm had fully settled the O'Keefes' claims under their SFIP, FEMA adopted amended claims handling guidelines regarding the adjustment of certain flood claims. Ex. 3 (FEMA Mem. re: Hurricane Katrina – Flood Claim Handling Standards, (Sept. 21, 2005), *available at* http://www.nfipbureau.fema.gov/pdf/bulletin/w-05054.pdf). The guidelines set forth three processes. *Id.* at 1. Process No. 1 applied to "structures that have or have had standing water in them for an extended period of time," such as properties in New Orleans, with "a reliable square foot measurement." *Id.* Process No. 2 applied where "it has been determined that the structure has been washed off its foundation by flood water and the square foot measurements are known," *i.e.*, a "slab" claim. *Id.* Process No. 3 applied to "[a]ll other claims," which were to "be handled using the company's **normal claim procedures**." *Id.* (emphasis added).

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* To support a motion for summary judgment, the moving party carries the initial "'burden of showing the absence of a genuine issue as to any material fact,'" *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 589 (5th

Cir. 2004) (citation omitted), and once the movant satisfies its initial burden, the burden shifts back to the non-moving party to produce evidence showing that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," and "it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

I. **HAVING BEEN PAID AN AMOUNT EQUAL TO THE COVERAGE LIMITS OF THEIR SFIP, PLAINTIFFS CAN HAVE NO CONTRACTUAL CLAIM FOR COMPENSATORY DAMAGES**

As a matter of law, Plaintiffs are not entitled to any compensatory damages arising out of State Farm's adjustment of the O'Keefes' claims under their federal flood insurance policy.[4] As the policy demonstrates, State Farm, acting pursuant to the NFIP, issued the O'Keefes a federal flood insurance policy providing coverage limits of $250,000 for the O'Keefes' house and $100,000 for their personal property. Ex. 1 (100001). Further, the undisputed evidence shows that, following the significant damage to the O'Keefes' house and personal property caused by Hurricane Katrina, including by flood, State Farm paid the O'Keefes a total of $350,000 in three installments of $10,000, $250,000 and $90,000. Ex. 2 (100047, 100070-74). The O'Keefes accepted and retained the payments made on their NFIP claim. *See* Ex. 4 (Pl. Resp. to State Farm's Interrog. & Req. for Prod., dated October 2, 2009) at 31 ("Plaintiffs s[t]ate they received a total of $350,000 under their NFIP policy."). Thus, there can be no dispute that the O'Keefes received from State Farm the full extent of their bargained-for benefits under their federal flood insurance policy. *See* 44 C.F.R. 61.6(a) (establishing maximum amounts of coverage

---

[4] Plaintiff The Dancel Group, Inc. did not have a federal flood insurance policy issued by State Farm.

available under statute of $250,000 for single family residential dwellings and $100,000 for a residential dwelling's contents).[5] Indeed, Plaintiffs have expressly conceded as much in their sworn answers to interrogatories: "State Farm paid the Plaintiffs policy limits under the NFIP policy . . . ." *See* Ex. 4 at 5; *see also* Pl. Mot. to Compel [189] at 3 (Plaintiffs "are not contesting the manner in which their NFIP claims were handled").

Accordingly, summary judgment should be granted in favor of State Farm as to any contractual claims under Plaintiffs' federal flood insurance policy.

## II.   PLAINTIFFS' EXTRA-CONTRACTUAL AND TORT CLAIMS AND REQUESTS FOR RELIEF FAIL

Any extra-contractual or tort claims predicated on allegations relating to the NFIP are similarly defective as a matter of law. Plaintiffs allege that State Farm overpaid claimants like the O'Keefes' under their NFIP policies as part of a scheme to improperly avoid and/or limit coverage under the homeowner's policies it underwrote for Gulf Coast residents. *See* Third Am. Compl. [245] ¶¶ 42-44. Purportedly, such overpayment under NFIP policies was intended to permit State Farm to assert later that such insureds had admitted their losses were caused by flood (covered by an NFIP policy) rather than wind (typically covered by a homeowner's policy). *Id.* According to Plaintiffs' theory, State Farm's purported lobbying of FEMA to adopt amended claims handling guidelines – which guidelines supposedly provided the vehicle for State Farm's overpayments to federal flood insurance claimants – was a key component of the scheme. *See id.* ¶¶ 40-42. To the extent that the foregoing allegations relating to the NFIP provide the basis for Plaintiffs' various claims sounding in tort, those claims should be dismissed as a matter of law.

Plaintiffs assert claims for, *inter alia*, fraud and negligence, and seek, among other relief,

---

[5]   The undisputed evidence shows that the flood damage to the O'Keefes' house and personal property exceeded the maximum coverage limits for a federal flood insurance policy under federal law. *See, e.g.*, Ex. 5 (Mar. 30, 2006 Proposal for Storm Damage Repair, prepared for the O'Keefes) at HO-24-Z204-064 100132-34 (estimating $538,000 in repair costs for first floor of O'Keefes' house alone); *see also* Ex. 6 (Nov. 24, 2009 report of State Farm expert Gary Dailey) at 100019 (estimating damages to Plaintiffs' house at $486,370.21).

compensatory damages, extra-contractual damages, punitive damages, and attorney fees. *See, e.g.*, Third Am. Compl. [245] ¶¶ 77-85, 87-92, 96, 99-108, 109-13. While Plaintiffs do not specifically identify policy number 24-RC-0482-5 as one of the "subject policies" in their complaint (*see id.* ¶ 7) and have contended that they are not contesting the adjustment of their NFIP claims, other aspects of their complaint, as well as Plaintiffs' statements in discovery, suggest that Plaintiffs do challenge State Farm's handling of the O'Keefes' NFIP claims. *See, e.g.*, *id.* ¶ 42 (alleging that State Farm "mis-use[d]" the amended procedures for adjusting NFIP Katrina claims); Ex. 4 at 46 (characterizing State Farm's application of claims handling guidelines for NFIP claims as "fraudulent"). Indeed, under Plaintiffs' theory, State Farm's purported "overpayment" of government flood monies directly furthered its scheme to limit its exposure under the O'Keefes' homeowner's policy. *See* Third Am. Compl. [245] ¶¶ 42-44; *id.* ¶ 53 (defendant sought to "shift liability for a large portion of the enormous Katrina losses from State Farm's Homeowners Policies to NFIP flood program policies and/or the policyholders"). Thus, notwithstanding their protestations to the contrary, Plaintiffs' extra-contractual and tort claims appear to be founded on allegations relating to the NFIP and the O'Keefes' federal flood policy, and, as demonstrated below, therefore should be dismissed as a matter of law.

Plaintiffs cannot recover for these claims because federal law forecloses any equitable or extra-contractual remedies or damages arising out of an NFIP insurer's adjustment of a federal flood insurance policy claim. *See, e.g.*, *Demouy v. Allstate Ins. Co.*, No. 06-9629, 2008 WL 3851594, at *3 (E.D. La. Aug. 12, 2008); *see also Eddins v. Omega Ins. Co.*, 825 F. Supp. 752, 753-54 (N.D. Miss. 1993) (Senter, C.J.) (granting partial summary judgment as to punitive damages as "[t]here is no authorization within the statutes or the regulations of the National Flood Insurance Act which allow the recovery of punitive damages"). The Fifth Circuit has held that the federal regulations governing the NFIP must be "strictly construed and enforced," *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998), because the NFIP is a comprehensive program, "a child of Congress, conceived to achieve policies which are national in

scope" in which "the federal government participates extensively," both in "a supervisory capacity and financially." *West v. Harris*, 573 F.2d 873, 881-82 (5th Cir. 1978). In creating the NFIP, Congress did not assent to equitable remedies, and Congress's regulatory regime displaces any extra-contractual claims. Indeed, were such remedies available, it "would simply defeat the philosophy behind the program." *Eddins*, 825 F. Supp. at 754. Likewise, any claims and requests for relief based on State Farm's lobbying relating to the NFIP are pre-empted and infirm for other reasons discussed below.

    A.    **Plaintiffs' Extra-Contractual and Tort Claims Based on State Farm's Adjustment of the O'Keefes' NFIP Policy Are Pre-empted by Federal Law**

As to any extra-contractual or tort claims predicated on State Farm's adjustment of the O'Keefes' claims under their NFIP policy, "the law is clear": Plaintiffs cannot recover under "state law for any extra-contractual claims against [State Farm] **in its capacity as a WYO program carrier**." *Demouy*, 2008 WL 3851594, at *3 (emphasis added); *accord Paulsen v. State Farm Ins. Co.*, No. 06-9546, 2008 WL 417738, at *4 n.33 (E.D. La. Feb. 13, 2008) (same). Indeed, the Fifth Circuit has joined other circuits "in holding that state tort claims arising from claims handling by a WYO are preempted by federal law." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) ("*Wright I*"). Not only are state tort claims brought against WYO carriers pre-empted under the NFIP, but the Fifth Circuit has also held that federal tort claims "are neither explicitly nor implicitly authorized by the NFIA." *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 398 (5th Cir. 2007) ("*Wright II*"); *cf. Eddins*, 825 F. Supp. at 753 ("There is no authorization within the statutes or the regulations of the [NFIA] which allow the recovery of punitive damages."). Either way, Plaintiffs' tort claims against State Farm in its capacity as a WYO company should be dismissed.

More particularly, the NFIP pre-empts these claims because they conflict with controlling federal regulations that govern State Farm's adjustment and payment of SFIP claims. *See, e.g.*, 44 C.F.R. § 62.21 (2008). "Federal regulations have no less pre-emptive effect than federal statutes." *Wright I*, 415 F.3d at 390 (quoting *In re Cajun Elec. Power Coop., Inc.*, 109 F.3d 248, 254 (5th Cir. 1997)). State

9

Farm cannot somehow be liable in tort for paying Plaintiffs the coverage limits under the policy. Such tort claims are pre-empted as a matter of law, lest "a WYO insurer . . . be unable to comply both with state law and with the federal guidelines that it is bound to follow." *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 270 (3d Cir. 2004); *accord Wright I*, 415 F.3d at 390 (adopting *C.E.R. 1988*); *see also Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947, 949-50 (6th Cir. 2002). The NFIP "is sufficiently comprehensive to preempt a state tort suit arising from conduct related to the Program's administration." *C.E.R. 1988*, 386 F.3d at 265.

Indeed, under a comprehensive national program, the overriding interest in the "[u]niformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject." *Gibson*, 289 F.3d at 949. In the NFIP, Congress established "a comprehensive flood insurance program . . . to achieve policies national in scope." *West*, 573 F.2d at 881-82; *accord* 42 U.S.C. § 4001(a)-(c). Thus, "the interest in uniformity of decisions compels the application of federal law" to the exclusion of conflicting state law. *West*, 573 F.2d at 881-82 (pre-empting state tort law); *see also Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 185-87 (2d Cir. 2006). "'Indisputably, a central purpose of the Program is to reduce fiscal pressure on federal flood relief efforts. State tort suits against WYO companies, which are usually expensive, undermine this goal,'" *C.E.R. 1998*, 386 F.3d at 270 (citation omitted); *see Wright I*, 415 F.3d at 390, since successful "extra-contractual claims against WYO insurers . . . would likely be paid with government funds." *Wright II*, 500 F.3d at 394; *see id.* at 394 n.9; *C.E.R. 1998*, 386 F.3d at 270-71 & n.10; 44 C.F.R. § 62.23(i)(6), (9) (2008); 44 C.F.R. pt. 62, app. A, art. III(D)(2) (2008).

Accordingly, summary judgment should issue for State Farm as to Plaintiffs' extra-contractual and tort claims arising out of the adjustment of the O'Keefes' federal flood insurance policy.

### B. State Farm's Purported Lobbying of FEMA as to the Adoption of Amended Claims Handling Procedures Cannot Be the Basis for Imposing Liability Here

Plaintiffs allege that State Farm and another State Farm company ("State Farm Mutual"[6]) successfully lobbied FEMA regarding the NFIP. *See, e.g.*, Third Am. Compl. [245] ¶ 40 (State Farm and State Farm Mutual "drafted 'amended', 'streamlined' claims handling procedures for handling Hurricane Katrina NFIP claims, and urged the Federal Government to accept and implement those guidelines"); *id.* ¶ 44 (State Farm and State Farm Mutual "convinced the Federal Government to adopt, and the Federal Government did adopt, amended guidelines for handling Hurricane Katrina NFIP claims that were nearly identical to the proposed plans submitted by State Farm"). To the extent that any of Plaintiffs' extra-contractual or tort claims purport to be based on such lobbying allegations, as discussed below, they fail for three independent reasons: (i) such claims constitute improper collateral attacks on the amended guidelines and therefore the NFIP itself, which are pre-empted by the federal regulatory regime; (ii) the amended guidelines did not apply to Plaintiffs' NFIP claim in particular; and (iii) lobbying is protected conduct under the First Amendment and cannot subject State Farm to the imposition of liability.

#### 1. Claims Relating to FEMA's Post-Katrina Guidelines are Pre-Empted Because They Too Are Part of the NFIP Regulatory Regime

Plaintiffs allege that, following its successful lobbying of FEMA, State Farm "manipulated [the amended claims guidelines] to pay [NFIP] claims such as the Plaintiffs'" without, *inter alia*, proving whether the loss was due to flood or wind. *See* Third Am. Compl. [245] ¶ 44. Stated another way, Plaintiffs contend that State Farm's lobbying had an effect on the adjustment of the O'Keefes' NFIP claim, which purportedly caused them injury. As demonstrated below, Plaintiffs' contention is factually incorrect (*see* Section II.B.2 *infra*). However, even if it were true, Plaintiffs should not be permitted to

---

[6]   Plaintiffs appear to refer to State Farm Mutual Automobile Insurance Company, which has been dismissed from this action.

11

do indirectly – through their lobbying allegations – what the Fifth Circuit has already ruled they may not do directly: seek extra-contractual and tort damages against an NFIP insurer relating to adjustment of a federal flood insurance policy. *Wright I*, 415 F.3d at 390; *Wright II*, 500 F.3d at 398. By FEMA's adoption, the amended claims handling guidelines that were purportedly the subject of State Farm's lobbying became part of the comprehensive regulatory framework of the NFIP. As shown above (*see* Section II.A. *infra*), such regulatory regime pre-empts all state and federal tort or other extra-contractual claims arising out of an NFIP insurer's adjustment of claims pursuant to NFIP regulations. Accordingly, Plaintiffs' claims in this regard fail as a matter of law.

### 2. FEMA's Amended Claims Handling Guidelines Were Not in Effect When the O'Keefes' NFIP Claim Was Paid and Would Not Have Altered the NFIP Claim Payment Even if They Had Been in Effect

Plaintiffs' claims based on allegations that State Farm's lobbying of FEMA caused it to adopt amended claims handling guidelines would fail even if they were not pre-empted because Plaintiffs cannot show any nexus between State Farm's purported lobbying conduct and State Farm's payment of the O'Keefes' NFIP claims.

As shown above, the facts unmistakably establish that State Farm had paid the O'Keefes' federal flood insurance claim in full by September 12, 2005. Further, the amended claims handling guidelines that were purportedly the result of State Farm's lobbying were not adopted by FEMA until September 21, 2005, **nine days after** the O'Keefes were paid the coverage limits (a total of $350,000) under their NFIP policy. Such guidelines could not have been used by State Farm to adjust the O'Keefes' claims under their NFIP policy when they were not yet in effect.[7]

---

[7] Plaintiffs contend that State Farm "began utilizing [its] form of adopted guidelines for responding to Hurricane Katrina NFIP claims before they were even formally approved by the Federal Government." Third Am Compl. [245] ¶ 42. However, no record evidence supports Plaintiffs' contention. Thus, this bare allegation is insufficient to withstand summary judgment. *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 249-50 (plaintiffs may not rely on mere allegations to defeat summary judgment). Moreover, under the NFIP, State Farm does not have the discretion to depart from federal regulations governing the adjustment of a federal flood insurance policy absent obtaining a prior written waiver, which did not occur here. *See* 44 C.F.R. pt. 62, app. A, art. II(G)(1)-(2) (2008); 44 C.F.R. § 61.13(d) (2008). Thus, contrary to Plaintiffs' unsupported suggestion, State Farm could not have unilaterally altered the requirements for
*(cont'd)*

Moreover, even if they had been in effect, Plaintiffs cannot establish that the amended guidelines would have altered the manner in which the O'Keefes' NFIP claim was adjusted or the amount that the O'Keefes were paid under their NFIP policy. The amended claims handling guidelines set forth three processes. The first process applied to structures that "have or have had standing water in them for an extended period of time," while the second process applied to so-called "slab" claims.[8] Uncontroverted photographic evidence establishes that the O'Keefes' property did not have standing water for an extended period of time, and further establishes that it was not a slab claim. *See* Ex. 7 (Post-Storm Photographs of the O'Keefes' Property); *see also* Ex. 2 (100001-35B). Thus, neither of the first two processes would have applied to the O'Keefes' NFIP claim in any event. The third process under the amended guidelines applied to "[a]ll other claims" and provided that they should be handled according to the "[NFIP insurer's] normal claim procedures." Thus, even under the amended guidelines, the O'Keefes' NFIP claim would have been handled according to State Farm's normal claim procedures, which is exactly how it actually was handled.

Accordingly, Plaintiffs cannot show that State Farm's purported lobbying had any tortious effect on the adjustment of the O'Keefes' NFIP policy, and their claims based on such allegations should be dismissed as a matter of law.

### 3. Lobbying Is Protected by the First Amendment

Even assuming that (i) State Farm's purported lobbying caused FEMA to adopt amended claims handling guidelines after Katrina and (ii) such guidelines were in effect and should have applied to Plaintiffs' NFIP claim (neither of which can be established by Plaintiffs, as shown above), Plaintiffs'

---

*(cont'd from previous page)*
adjusting the O'Keefes' flood claim by applying not-yet-adopted guidelines. *Cf. Gowland*, 143 F.3d at 953-54 (substantial compliance with federal requirement of proof of loss is insufficient; "[t]he terms and conditions of all federal flood insurance policies . . . are fixed by FEMA," "and no provision of the policy can be altered, varied, or waived without the express written consent of the Federal Insurance Administrator").

[8] A "slab" claim refers to a circumstance in which a house is completely washed off its foundation by flood water, leaving only the slab foundation remaining.

claims based on State Farm's purported lobbying are barred by the First Amendment to the United States Constitution. As discussed above, *see* Parts II.B.2-3, the Court need not reach the First Amendment issue to dismiss these claims by Plaintiffs' in their entirety. Yet, even if the Court does reach the First Amendment issue, Plaintiffs' claims still fail as a matter of federal constitutional law.

The First Amendment to the United States Constitution provides that Congress shall make no law "abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. It is well-established that petitioning for legislative action is a protected exercise of one's First Amendment rights. *See, e.g.*, *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) ("[T]he Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint on a monopoly."); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965) ("*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose."). The *Noerr-Pennington* doctrine, as it has come to be known, has been extended to protect lobbying and petitioning administrative agencies, *see California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), and to protect corporations. *See, e.g.*, *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983) ("A company has the full panoply of [First Amendment] protections available to its direct comments on public issues."); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 777 (1978) ("It is the type of speech indispensable to decisionmaking in a democracy, and this is no less true because the speech comes from a corporation rather than an individual.").

Though the *Noerr-Pennington* doctrine originated in the context of antitrust cases, the Fifth Circuit has extended that rationale to "protect first amendment petitioning of the government from claims brought under federal and state laws." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988); *see also Bryant v. Miss. Military Dep't*, 569 F. Supp. 2d 680,

14

683 (S.D. Miss. 2008) (applying *Noerr-Pennington* as generic rule protecting First Amendment right to petition and dismissing claims based on allegedly retaliatory slander lawsuits).[9] The Fifth Circuit held that "[t]here is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust." *Video Int'l Prod.*, 858 F.2d at 1084.  Thus, the Fifth Circuit affirmed dismissal of antitrust, tortious interference with contract, and Section 1983 claims against a defendant arising out of the defendant's petitioning of a local government for particular zoning laws that allegedly injured a competitor. *See id.* at 1082-84.

Other courts have also dismissed attempts to ground various state law theories of liability on corporate advocacy to administrative agencies.  *See, e.g.*, *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1289-90 (3d Cir. 1994) (granting writ of mandamus; vacating order denying partial summary judgment where First Amendment protected lobbying actions taken by industry association); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992) (liability may not be assessed under the *Noerr-Pennington* doctrine "for actions taken when petitioning authorities to take official action, regardless of the motives of the petitioners"); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995) (granting writ of mandamus dismissing civil conspiracy action in part because "petitioning the government for redress on matters of concern to a party is a freedom protected by the Bill of Rights in the federal constitution"). Likewise, the Mississippi Supreme Court has applied the *Noerr-Pennington* doctrine to preclude liability under state tort law for petitioning the government under both the Mississippi and United States Constitutions.  *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163, 171 (Miss. 2001).

Indeed, the protections afforded by the *Noerr-Pennington* doctrine are considered so fundamental that even the self-interested motivation that Plaintiffs incorrectly ascribe to State Farm's purported lobbying cannot undo them.  *Noerr Motor Freight*, 365 U.S. at 137, 139 ("In a representative

---

[9] The Fifth Circuit has observed that outside the antitrust context, the First Amendment protection of petitioning for governmental action ought not be referenced as an application of the *Noerr-Pennington* doctrine but that the label does not change the legal analysis. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 n.7 (5th Cir. 2000).

15

democracy such as this . . . the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives," and this right "cannot properly be made to depend upon their intent in doing so.").[10]  Thus, courts have found that allegations similar to those advanced by Plaintiffs here, *e.g.*, Third Am. Compl. [245] ¶¶ 40-44, do not provide a basis for liability.  For example, in *Senart v. Mobay Chemical Corp.*, 597 F. Supp. 502 (D. Minn. 1984), plaintiffs alleged that they were injured by a civil conspiracy between defendant chemical manufacturers who "worked in concert to persuade OSHA to reject the . . . proposal" to apply a stricter chemical exposure standard which would have affected their business.  *Id.* at 504.  The court dismissed those claims, holding that the "defendants' concerted action sought only permissible ends . . . through permissible means."  *Id.* at 506.  The court held that the defendants' lobbying actions were "clearly permissible as first amendment rights to petition the government include advocating positions before administrative agencies such as OSHA."  *Id.*  The court also noted that even "selfish motivations do not lessen one's right to present views to the government" and that "trying to retain a regulatory standard which defendants preferred" was not a tort and was protected by the First Amendment.  *Id.*

Accordingly, because any of Plaintiffs' claims based on allegations of State Farm's purported lobbying are constitutionally impermissible, they cannot support the imposition of liability against State Farm and therefore should be dismissed as a matter of law.

## CONCLUSION

For all of the foregoing reasons, State Farm respectfully requests that this Court grant its motion for partial summary judgment and dismiss with prejudice all of Plaintiffs' allegations and claims relating to the National Flood Insurance Program, set forth in Plaintiffs' Third Amended Complaint [245] in paragraphs 40-44, 53, 77-85, 87-92, 96, 99-108, 109-13.

---

[10]  State Farm specifically denies Plaintiffs' unsupported ascription of any improper motive to State Farm regarding purported lobbying.

**RESPECTFULLY SUBMITTED**, this 3rd day of December, 2009.

>  WEBB, SANDERS & WILLIAMS, P.L.L.C.
>  363 NORTH BROADWAY
>  POST OFFICE BOX 496
>  TUPELO, MISSISSIPPI 38802
>  (662) 844-2137
>  DAN W. WEBB, MSB # 7051
>  B. WAYNE WILLIAMS, MSB #9769
>  J. DOUGLAS FOSTER, MSB #100641
>
>  BY:   /s/ Dan W. Webb
>         DAN W. Webb

## CERTIFICATE OF SERVICE

I, Dan W. Webb, one of the attorneys for Defendant, State Farm Fire and Casualty Company, do hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following ECF participant:

**Christopher C. Van Cleave, Esq.**
**CORBIN, GUNN & VAN CLEAVE, PLLC.**
**146 Porter Avenue (39530)**
**Post Office Drawer 1916**
**Biloxi, Mississippi 39533-1916**

**THIS** the 3rd day of December, 2009.

>  /s/ Dan W. Webb
>  DAN W. Webb